IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND
FOR HILLSBOROUGH COUNTY,
FLORIDA

CASE NO. 14CA-000646

Div. H

RHONDA WILLIAMS, a single person,

      Plaintiff,

vs.

MOSAIC FERTILIZER, LLC; a Delaware corporation
doing business in Florida,

      Defendant.

_____/

## AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR

## JURY TRIAL

COMES NOW Plaintiff, RHONDA WILLIAMS, ("Plaintiff"), by and through her undersigned attorneys, and hereby sues the Defendant, MOSAIC FERTILIZER, LLC; ("Mosaic Fertilizer") a Delaware corporation doing business in Florida and says:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00 exclusive of interest and costs.

2. Plaintiff, RHONDA WILLIAMS, is a Florida resident who resides at 4810 South 87th Street in Riverview, Hillsborough County, Florida in a neighborhood known as "Progress Village." Progress Village is in close proximity to Defendant Mosaic Fertilizer, LLC's, fertilizer manufacturing facility and related operations, including its phosphogypsum stacks located in and around Riverview, Hillsborough County, Florida (hereinafter, the "Riverview Complex").

3. Defendant, MOSAIC FERTILIZER is a foreign limited liability company, authorized to do business in Florida, with its principal place of business at 3033 Campus Drive, Suite E490, Plymouth, Minnesota, 55441-2651. At all times material hereto, Mosaic Fertilizer has actively conducted business operations in Riverview, Hillsborough County, Florida.

4. Defendant Mosaic Fertilizer is a wholly owned subsidiary of The Mosaic Company, a Delaware corporation that was incorporated in 2004 to serve as the parent company of the business that was formed through the business merger and combination of IMC Global, Inc., with the Cargill Crop Nutrient business of Cargill, Inc., and its subsidiaries.

5. Cargill, Inc., acquired the Riverview Complex in 1985 from Gardinier, Inc., ("Gardinier") the then bankrupt Florida based phosphate-fertilizer mining

and manufacturing company. Cargill continued to process and manufacture phosphoric acid, a fertilizer product at the Riverview Complex at all material times up through the merger and combination with IMC Global.

6.   As a result of the merger and combination between IMC Global and Cargill Crop Nutrient business, Defendant Mosaic Fertilizer was formed.  Mosaic Fertilizer is the successor in interest to the fertilizer and crop nutrient operations at the Riverview Complex.

7.   The Riverview Complex consists of, but is not limited to the chemical complex located at 8813 U.S. Highway 41 South, Riverview, Hillsborough County, Florida, 33569, NPDES #FL0000761, and the facilities and phosphogypsum stacks identified in quadrants 30-19-22, 30-19-15 and 30-19-11 of the 2010 aerial attached as Exhibit "A."

8.   Venue is proper before this Court pursuant to Chapter 47, Florida Statutes, because, among other things, (i) Plaintiff Rhonda Williams is a resident of Hillsborough County, Florida; (ii) Plaintiff Rhonda Williams' causes of action accrued in Hillsborough County, Florida; and (iii) Mosaic Fertilizer maintains offices in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

9. At its Riverview Complex, Mosaic Fertilizer processes and produces among other things, sulfuric acid, phosphoric acid, fluoride products, ammoniate phosphates and animal feed phosphates.

10. Phosphoric acid, a primary fertilizer commodity, is created through a chemical process where phosphate rock is reacted with sulfuric acid.

11. Phosphate rock is a natural resource in Florida that is mined by The Mosaic Company through its subsidiaries, and processed into phosphoric acid by Mosaic Fertilizer at its Riverview Complex.

12. To produce the phosphoric acid, sulfuric acid is reacted with phosphate rock, creating a by-product called phosphogypsum.   Approximately five tons of phosphogypsum is produced for every ton of phosphoric acid product produced.

13. Phosphogypsum waste is then stockpiled into stacks.  These stacks contain a high concentration of radionuclides and other toxic materials that can become airborne.

14. Mosaic Fertilizer stockpiles its phosphogypsum waste by-product at the Riverview Complex, which includes one active and one inactive stack.

15. To support its operations at the Riverview Complex, Mosaic Fertilizer brings in molten sulfur via a sulfur terminal located in Riverview, FL, and ammonia through a terminal located in Port Sutton, Florida.

16. The first phosphogypsum stack was constructed near the mouth of the Alafia River in Riverview, Florida, from containment dikes from gypsum placed in the same area prior to the 1950's.  This stack is located in close proximity, approximately two miles, from the Progress Village neighborhood as shown in quadrant 30-19-15 of Exhibit "A."

17. In 1984 Gardinier received permits to construct a new phosphogypsum stack.  This permit was granted with the stipulation that a closure plan be prepared concerning the closure of the first phosphogypsum stack.

18. In 1999 Cargill, Gardinier's successor, applied for a permit to expand its phosphogypsum stack; it was granted by the Florida Department of Environmental Protection in 2000.  This second phosphogypsum stack is located in close proximity, approximately one mile, from the Progress Village neighborhood as shown in quadrant 30-19-11 of Exhibit "A."

19. This second stack is in even closer proximity than the first stack to the Progress Village neighborhood where Rhonda Williams has lived her entire life.

20. The Progress Village neighborhood was planned and chartered in 1958, on the cusp of the Civil Rights Movement, by a group of African American leaders looking to build an African American community for families looking for better living conditions, home ownership and a good investment.

21. Prior to the approval for the second phosphogypsum stack, the African American community of Progress Village was one of only a few communities in the Riverview area and was immediately adjacent to the new phosphogypsum stack's location.   See 1973 Aerial attached as Exhibit "B."

22. In the 1980's and again in 2000, in exchange for cooperation in relation to the permit for the second phosphogypsum stack and its expansion, Gardinier and Cargill offered to perform environmental and community projects for, and increase hiring from the local neighborhood.

23. One such project was the funding of the Progress Village Foundation ("Foundation"); which provides a college scholarship program for Progress Village residents.   The Foundation was established on February 11, 1986; two years after Gardiner's permit application for the second phosphogypsum stack.

24. Since becoming the successor in interest, Mosaic Fertilizer has continued in these efforts by continuing to fund the Foundation's college scholarship program for Progress Village residents.

25. Rob Baker, the Director of Human Resources at The Mosaic Company's headquarters in FishHawk, Hillsborough County, Florida, has sat on the Foundation's Board and has participated in the scholarship program.

26. Plaintiff Rhonda Williams was the first recipient of the Foundation's scholarship in 1986 and graduated from University of South Florida in 1991 with a degree in Engineering.

27. Another project is the Progress Village Community Garden donated by Mosaic Fertilizer's predecessor, Cargill Crop Nutrition in 2000; the year Cargill's 1999 phosphogypsum stack expansion permit was approved. Mosaic Fertilizer continues to financially support this project.

28. Larry Simpson, Mosaic Fertilizer's Riverview Plant Manager, and others from the company were present at the ten-year anniversary celebration of the garden, which supplies food for the Progress Village Residents.

29. Based on information and belief Mosaic Fertilizer and its predecessors have continually taken a special interest in the Progress Village neighborhood, which is in close proximity to the Riverview Complex and particularly the second phosphogypsum stack, due to the foreseeable health risks that its business activities impose upon the neighborhood's residents.

30. Mosaic Fertilizer's interest in the neighborhood is foreseeable since its business includes the processing and storage of toxic pollutants and hazardous contaminants that can become and are air borne.

31. Layers of phosphogypsum dust and particulates regularly blanket the Progress Village neighborhood.   These layers contain dangerously elevated levels of sulfur dioxide and other air toxics and routinely fill the air the residents breathe whenever the wind blows.

32. Mosaic Fertilizer's activities at the Riverview Complex have created an appreciable zone of risk surrounding the Riverview Complex within which Mosaic Fertilizer has been and continues to be obligated to protect those who were exposed to the harm Mosaic Fertilizer has created.

33. Mosaic Fertilizer, individually and as a successor in interest, has engaged in conduct that evidences a duty and foreseeability of risk to Rhonda Williams and residents of the Progress Village neighborhood.

34. Unbeknownst to Rhonda Williams, and other residents of Progress Village, Mosaic Fertilizer's Riverview Complex has been and continues to poison her slowly with air emissions from its processing facilities and stacks.

35. In 2010 the Environmental Protection Commission for Hillsborough County ("EPC") released its Air Monitoring and Assessments Air Quality Technical Report (hereinafter, "the Report"). That Report compiled air quality data monitored at several monitoring stations, including a station named Gardinier and a station named East Bay, both of which are in close proximity to the Progress Village neighborhood and are geographically situated within or immediately next to the Riverview Complex. See the map of the Report's 2010 Air Monitoring Sites attached as Exhibit "C."

36. The EPC monitored particulate matter, sulfur dioxide, and air toxics, as well as other air contaminants.

37. Concerning sulfur dioxide, the Report found that the national one-hour standard of a maximum 75 parts per billion (ppb) was far exceeded at the East Bay monitoring site - the Gardinier site was not used to monitor sulfur dioxide – and reported, for example, a one-hour high of 119 ppb and a three-hour high of 103 ppb for the year 2010.

38. The sulfur dioxide levels at the East Bay site far exceeded other sites tested in Hillsborough County, all of which reported levels less than the maximum 75 ppb for the same year. Those other sites, including Simmons Park, Causeway and Davis Island, are not in close proximity to the Riverview Complex and the Progress Village neighborhood.

39. Mosaic Fertilizer's Riverview Complex is the primary source or the majority source of the sulfur dioxide emissions at the East Bay site.

40. On February 6, 2013, the Regional Administrator for the United States Environmental Protection Agency wrote to the Honorable Rick Scott, Governor of the State of Florida, concerning the elevated levels of sulfur dioxide in Hillsborough County in violation of the federal Clean Air Act, and designated limited areas in Hillsborough County as non-attainment areas, stating, "Exposure to SO2 can cause a range of adverse health effects, including narrowing of the airways which can cause difficult breathing and increased asthma symptoms."

41. The State of Florida and United States Environmental Protection Agency have designated the Riverview Complex as a major source of hazardous air pollutants and a major source of sulfur dioxide as determined the federal Clean Air Act and Chapter 213, of Florida's Administrative Code.

42. The industrial processes at the Riverview Complex consist of, among other processes, three (3) sulfuric acid plants that are primarily responsible for the Riverview Complex's sulfur dioxide air emissions.  According to Mosaic Fertilizer's current air operation permit No. 0570008-066-AV, the three sulfuric acid plans are designated Plant Numbers 7, 8 and 9.

43. Publically available sulfur dioxide emissions data reported annually by Mosaic Fertilizer to the Florida Department of Environmental Protection shows that the Riverview Complex has emitted over 11,737 tons of sulfur dioxide in the past five years alone (2008 – 2013).   When these tons of emissions are converted to pounds of emissions, Mosaic Fertilizer has released just over 23.4 million pounds of sulfur dioxide in the past five years.

44. Rhonda Williams has suffered from severe asthma, chronic obstructive pulmonary disease ("COPD"), difficulty breathing and other adverse health effects caused by her lifelong exposure to sulfur dioxide in the air in Progress Village.

45. The EPC's Report also included information on test results from 2001 to 2010 for particulate matter.  The maximum national standard for particulate matter with an aerodynamic diameter of 10 microns or less is 150 micrograms per cubic meter per hour.   The highest reported twenty-four hour average level was 156 micrograms per cubic meter per hour at the Gardinier site – no data was reported from the East Bay site.

46. Particulates are highly dangerous because they attach to the interior of one's lungs and absorb and/or adsorb onto other toxic pollutants or contaminants, including sulfur dioxide, particulates, radionuclides and other air toxics (collectively hereinafter, "Air Toxins") and significantly increase health risks.

47. When continually exposed to elevated levels of Air Toxins, the health effects can be severe.

48. Rhonda Williams has been continually exposed to Air Toxins released by the Riverview Complex, and has suffered injury as a result.

49. The Clean Air Act has designated a group of compounds as Hazardous Air Pollutants. These compounds are known to or suspected of causing serious long-term health effects, such as cancer. The EPC has one test site, Sydney, located in east Hillsborough County, where it tests for some but not all Hazardous Air Pollutants

50. In its 2010 Report, the EPC stated that, "there may be smaller areas of Hillsborough County where air toxic levels pose a greater inhalation risk to public health."

51. Based on information and belief, one such area is the area surrounding the Riverview Complex and the Progress Village neighborhood.

52. Based on information and belief the Riverview Complex is also contaminated with elevated levels of radionuclides, uranium and radium, a naturally occurring by-product of the business activities that take place at the Riverview Complex, making the property unsafe for unrestricted uses.

53. Mosaic Fertilizer, individually and as successor in interest, is responsible for the elevated levels of radionuclides, radium and uranium at the Riverview Complex.

54. These radionuclides like other air toxics and particulates can become airborne. For example, the phosphogypsum dust and waste in the stacks are constantly subject to prevailing winds that transport the radionuclides and the toxic phosphogypsum dust to the areas immediately surrounding the phosphogypsum stacks, including the Progress Village neighborhood where Rhonda Williams lives.

55. These radionuclides can cause severe health risks and significantly increase one's chances of contracting cancer.

56. Despite the numerous health risks imposed upon Rhonda Williams and others similarly situated, based on information and belief, The Mosaic Company and Mosaic Fertilizer have knowingly engaged in a continual and expensive public relations campaign to mislead and/or misdirect the public in general and specifically those directly impacted by its business activities, with regards to the serious and detrimental health risks that can occur due to the activities at the Riverview Complex.

57. The Mosaic Company's publicized Environment, Health and Safety Policy states, that it conducts its "business activities in a manner which protects the environment and the health and safety of our employees, contractors, customers and communities." This is an intentional misrepresentation intended to mislead and misdirect for the benefit of Mosaic Fertilizer.

58. Based on information and belief, The Mosaic Company, on behalf of Mosaic Fertilizer, which does not sell any product directly to the local community or have direct contact with personal consumers, spends large amounts of money every year in public relations campaigns in Hillsborough County, and within the Progress Village neighborhood.

59. The Mosaic Company for the benefit of Mosaic Fertilizer publicizes that it is committed to wildlife stewardship and protection in Florida. But the fact remains that the concentrated level of radionuclides and Air Toxins contained in the phosphogypsum stacks and released from the Riverview Complex can take millions if not billions of years to dissipate.

60. The Mosaic Company and Mosaic Fertilizer have actively and continually engaged in a campaign to mislead and defraud the communities most impacted by its phosphate rock processing and disposal of the phosphogypsum waste.

61. As a direct result of Defendant's Riverview Complex, Rhonda Williams' real property has been invaded by, and her person exposed to and caused to suffer damages from, extremely toxic phosphogypsum dust and particulates, radionuclides, sulfur dioxide as well as dangerous air toxicity levels.

62. As a direct result of Mosaic Fertilizer's operations at the Riverview Complex, toxic phosphogypsum dust, particulates, radionuclides, sulfur dioxide and other Air Toxics have been repeatedly released into the area surrounding the Progress Village neighborhood, causing Rhonda Williams to develop severe Asthma, COPD, kidney/renal problems, hypertension and multiple other ailments such as Glucose-6-phosphate dehydrogenase

deficiency, that have been caused or exacerbated by her continued exposure to byproducts of the Riverview Complex.

63. As a direct result of Mosaic Fertilizer's operations at the Riverview Complex, Rhonda Williams has sustained severe physical injury, pain, suffering, mental and emotional damage and distress, loss of enjoyment of life and loss of employment.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

64. Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through sixty-four (64) of this Complaint and said allegations are incorporated herein by reference.

65. Defendant, MOSAIC FERTILIZER, had a duty to exercise reasonable care in the design, operation, and policies implemented to safely produce phosphoric acid, sulfuric acid, fluoride products, ammoniate phosphates and animal feed phosphates and to safely dispose of by-product waste, including phosphogypsum.

66. Defendant breached its duty to Plaintiff by not taking proper precautions against the release of Air Toxins into the air and soils immediately surrounding the proximate areas of the Riverview Complex and the second phosphogypsum stack, including the Progress Village neighborhood, causing

Page | 16

severe health effects upon Rhonda Williams due to the inhalation, ingesting or other exposure to the Air Toxins generated at and released from the Riverview Complex.

67. Defendant knew or should have known that Rhonda Williams, a life long resident of the Progress Village neighborhood, was within a foreseeable zone of risk of exposure to these Air Toxins.

68. Defendant knew or should have known that the breach of its duty might result in injury to Rhonda Williams and/or others similarly situated.

69. Defendant willfully, and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to the Air Toxins to Plaintiff who would reasonably and foreseeably come into contact with or be harmed now or in the future by these Air Toxins.

70. Defendant willfully and negligently failed to study, investigate, ascertain, impose or comply with reasonable standards and regulations for proper disposal of phosphogypsum and limiting the release of Air Toxins in a manner that would protect the health and safety of Plaintiff from coming into contact with the Air Toxins.

71. As a direct and proximate result of the Defendant's acts, omissions, negligence, and recklessness, Rhonda Williams has suffered and will

continue to develop direct and indirect adverse health effects resulting in

significant harm and excess risk of developing diseases including cancer.

## COUNT II – GROSS NEGLIGENCE

72.  Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the

allegations contained in paragraphs one (1) through sixty-four (64) of this

Complaint and said allegations are incorporated herein by reference.

73.  Defendant, MOSAIC FERTILIZER, had a duty to exercise reasonable

care in the design, operation, and policies implemented to safely produce

phosphoric acid, sulfuric acid, fluoride products, ammoniate phosphates and

animal feed phosphates and to safely dispose of by-product waste, including

phosphogypsum.

74.  Defendant acted in gross and careless disregard for the safety and

welfare of Rhonda Williams or with such reckless indifference for her health

and safety that it breached its duty to Plaintiff by willfully and wantonly not

taking proper precautions against the release of Air Toxins into the air and

soils immediately surrounding the proximate areas of the Riverview

Complex and the second phosphogypsum stack, including the Progress

Village neighborhood, causing severe health effect upon Rhonda Williams

due to the inhalation, ingesting or other exposure to the Air Toxins generated

at and released from the Riverview Complex.

75. Defendant knew that Rhonda Williams, a life long resident of the Progress Village neighborhood, was within a foreseeable zone of risk of exposure to these Air Toxins, and that the injury risk to her was clear and present.

76. Defendant knew that the breach of its duty would result in injury to Rhonda Williams.

77. Defendant willfully, wantonly, recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to the Air Toxins to Plaintiff who would reasonably and foreseeably come into contact with or be harmed now or in the future by these Air Toxins.

78. Defendant willfully, wantonly, recklessly and negligently failed to study, investigate, ascertain, impose or comply with reasonable standards and regulations for proper disposal of phosphogypsum and limiting the release of Air Toxins in a manner that would protect the health and safety of Plaintiff from coming into contact with the Air Toxins.

79. As a direct and proximate result of the Defendant's willful and wanton acts, omissions, negligence, and recklessness, Rhonda Williams has suffered and will continue to develop direct and indirect adverse health effects

resulting in significant harm and excess risk of developing diseases including cancer.

## COUNT III – STRICT LIABILITY

80. Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through sixty-four (64) of this Complaint and said allegations are incorporated herein by reference.

81. Defendant MOSAIC FERTILIZER was and is engaged in abnormally dangerous activities by the place and manner in which they have generated, mined, transported, processed, controlled, stored, managed, moved, disposed and/or failed to remove Hazardous Substances and Air Toxins associated with the Riverview Complex.

82. Defendant's activities have resulted in the intentional, incidental or accidental release of Hazardous Substances and Air Toxins at the Riverview Complex and the intentional, incidental, or accidental release and emission of hazardous substances and Air Toxins onto the property of Plaintiff, which imposed an unusual, significant and extraordinary risk of harm to Plaintiff presently and in the future.

83. As a direct and proximate result of Defendant's activities Plaintiff has suffered substantial physical injuries and mental anguish.  Plaintiff also sues

for the physical impairments suffered in the past and which she will suffer in the future.

84. Plaintiff has sustained medical expenses in the past and will continue to incur future medical expenses in order to care for and monitor the numerous problems that she has suffered and will suffer in the future as a result of Defendant's acts and omissions.

85. Plaintiff has suffered economic injury including medical bills and other economic losses.

86. As a direct and proximate result of Defendant's conduct as alleged above, hazardous substances and Air Toxins can be found on Plaintiff's property and Plaintiff has been exposed to Hazardous Substances and Air Toxins. The harm sustained by Plaintiff is of the type which made Defendant's activities abnormally dangerous.

87. Defendant's Hazardous Substances and Air Toxins are hidden and not readily discernible. Defendant's activities, omissions and related conduct have proximately caused and continue to cause damage to Plaintiff in the form of increased risks of diseases and other adverse conditions. Defendant is liable for such damages, including all appropriate medical monitoring.

## COUNT IV – MEDICAL MONITORING AND ENVIRONMENTAL TESTING

88. Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through sixty-four (64) of this Complaint and said allegations are incorporated herein by reference.

89. As a direct and proximate result of Defendant MOSAIC FERTILIZER'S acts, omissions and conduct as set forth above, Plaintiff has been exposed to Hazardous Substances and Air Toxins and as a result, Plaintiff suffers from the injuries as set forth above, including severe asthma, COPD, hypertension, kidney/renal difficulties and exacerbation of other medical conditions.

90. In addition, as a direct and proximate result of Defendant's acts, omissions, and conduct as set forth above, Plaintiff has a significant increased risk of contracting more serious injuries or latent disease directly and indirectly from necessary medical treatment. The increased risk makes periodic diagnostic medical examinations reasonably necessary.

91. Early detection and diagnosis of diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these conditions can often appear asymptomatic absent proper testing.

92. Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of injuries or disease possible and beneficial.  For example, administration of the several readily available non-invasive tests readily diagnoses the presence of liver failure, respiratory ailments and heart dysfunction, even in asymptomatic individuals.  Diagnosis of these diseases and conditions will allow prompt and effective treatment, which will reduce the risk of morbidity, and mortality, which Plaintiff would suffer if treatment were delayed until her conditions became overly symptomatic.

93. The increased susceptibility to injuries and irreparable threat to Plaintiff's health resulting from her exposure to hazardous substances emanating from Defendant's sites can only be minimized, mitigated or addressed by the creation of a medical monitoring fund.

## DAMAGES

94. As a direct and proximate result of Defendant's tortious conduct as alleged above, Plaintiff RHONDA WILLIAMS has been injured by exposure to Air Toxins, and other hazardous and radioactive substances. Plaintiff was damaged in the following particular ways and seeks to recover therefore:

a. Plaintiff has suffered and will continue to suffer great physical pain throughout her lifetime;

b. Plaintiff has incurred hospital, medical, pharmaceutical, and other expenses, and will continue to incur such expenses in the future due to the permanent nature of their injuries resulting from exposure to Air Toxins, hazardous, and radioactive substances, from which injuries she has suffered, now suffers and/or will continue to suffer in the future;

c. Plaintiff has suffered, now suffers and/or will continue to suffer physical impairment due to her injuries resulting from exposure to Air Toxins, hazardous and radioactive substances;

d. Plaintiff suffers disability at this time and may become permanently or totally disabled in the future due to the progressive character of her injuries resulting from exposure to Air Toxins, hazardous and radioactive substances;

e. Plaintiff requires or will require domestic help and nursing care due to her disabilities and has been or will be required to pay for such domestic help and nursing services;

f. Because Defendant's conduct was intentional, malicious, grossly negligent and reckless, Plaintiff seeks compensatory and punitive

damages, and all other damages that may be proven at the trial of this action.

95. The conduct of Defendant, as alleged herein, was a direct and proximate and producing cause of the damages resulting in Plaintiff's injuries, and general and special damages that Plaintiff has sustained.

## **PRAYER FOR RELIEF**

96. Plaintiff RHONDA WILLIAMS requests that she recover of the Defendant herein a sum exceeding $15,000.00; that the costs of this action be taxed to the Defendant; and for a TRIAL BY JURY.

Dated: May 9, 2014

Respectfully submitted,

COUNSEL FOR PLAINTIFF

By

Laureen Galeoto, Esquire
Law Office of Laureen Galeoto, PLLC
511 W. Bay Street,  Suite 350
Tampa, FL 33606
M. 813.280.9323
F. 813.433.5539

PRIMARY laureen@laureenlaw.com
SECONDARY info@laureenlaw.com

~ and ~

Mary Ellen Hogan, Esquire
THE GREEN COUNSELOR, PLLC

511 W. Bay Street, Suite 350
Tampa, FL 33606
M. 813.964.6515
C. 310.991.3146
PRIMARY maryellen@thegreencounselor.com
SECONDARY mehoganlaw@sbcglobal.net

~ and pending pro hac vice admission ~

William P. Walker, Esquire
WALKER MORGAN, LLC
135 E. Main Street
Lexington, SC 29072
M: 803.359.6194
F: 803. 957.4584
E: bw@walkermorgan.com