UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RHONDA WILLIAMS, a single person,
    Plaintiff,

v.                                                         Case No. 8:14-cv-1748-T-35TGW

MOSIAC FERTILIZER, LLC, a Delaware
Corporation doing business in Florida
    Defendant
_____/

**PLAINTIFF'S RESPONSE TO MOSAIC'S MOTION TO DISMISS AMENDED
COMPLAINT COUNTS II, III AND IV AND MOTION TO STRIKE
<u>ALLEGATIONS OF PUNITIVE DAMAGES</u>**

Plaintiff Rhonda Williams ("Williams") replies to Defendant Mosaic Fertilizer, LLC's ("Mosaic") Motion to Dismiss Amended Complaint Counts II, III and IV and Motion to Strike Allegations of Punitive Damages.

### INTRODUCTION

Ms. Williams has lived all of her 53 years in a community that is literally in the shadow of Mosaic – from its manufacturing processes belching sulphur dioxide to the 350 feet high "stacks" of phosphogypsum waste that emit particulates and toxic air contaminants that uncontroverted science has proven damages lungs, impairs breathing and makes people sick simply by living and breathing in their own community. The Amended Complaint sufficiently pleads facts in Counts II, III and IV to support her contentions that Mosaic has been grossly negligent and strictly liable for its conduct, and that the medical monitoring she needs is a cause of action under Florida law. Moreover,

Eleventh Circuit case law squarely holds that a Florida plaintiff in a diversity action is not bound by Florida procedural statute that requires leave of court for punitive damages.

For these reasons, Mosaic's motion to dismiss Counts II, III and IV, as well as its motion to strike all allegations asserting punitive damages must be denied.

## ARGUMENT

I.  **Ms. Williams has stated a cause of action for gross negligence against Mosaic because she has alleged specific acts and omissions by Mosaic that demonstrate a "clear and present danger" and that Mosaic's acts or omissions demonstrate a conscious disregard of consequences that is far beyond simple carelessness.**

The Federal Rules of Civil Procedure embody the concept of liberalized "notice pleading." Consequently, a complaint need contain only a statement calculated to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, at 47, 78 S.Ct. 99 at 103, 2 L.Ed.2d 80 (1957), see also *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1086 (D.C.Cir.1998) ("[A] plaintiff need not allege all the facts necessary to prove its claim."). The 11th Circuit has observed that the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is "exceedingly low." *See In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir.1995) ("[F]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").

"To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do

not, the plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008). A court makes this determination by a two step process where the court assumes the veracity of well-plead factual allegations and then assesses whether they give rise to an entitlement for relief. *See Peoples Gas System v. Posen Construction, Inc.,* No.2:11-cv-231-FtM-29SPC, 2011 U.S. Dist. LEXIS 131088 (M.D. Fla. Nov.14, 2011), citing *Ashcroft v. Igbal*, 129 S.Ct. 1937 (2009).

Turning now to the gross negligence allegations of Count II, Ms. Williams has clearly pled that she has a right to relief from Mosaic's acts and omissions that go beyond the boundary of ordinary negligence into the realm of gross negligence. Count II pleads Mosaic's duty to Ms. Williams, the breach of that duty and the damages occurring as a direct and proximate cause of Mosaic's actions. These allegations, taken as whole, provide Mosaic with fair notice of Ms.Williams' claims and her basis for those claims in fact and in law. But a further detailed review of Ms. Williams' allegations show detailed pleading that goes beyond the "low threshold" required by the Rule 12(b)(6) and preclude dismissal of Count II.

For example, the elements of a cause of action for gross negligence under Florida law are set forth in *Greathouse v. Ceco Concrete Constr*., No. 5:06cv2-RS-AK, 2007 WL 624550, *4 (N.D. Fla. Feb. 23, 2007). In sum, a motion to dismiss must be denied if Ms. Williams has alleged (1) a "composite of circumstances" which together constitute an "imminent" or "clear and present danger" amounting to "more than normal and usual peril;" (2) a showing that Mosaic had chargeable awareness of the "imminent" or "clear

and present" danger; and (3) Mosaic's acts or omissions that create the peril must "occur in a manner which evinces a 'conscious disregard of consequences.'"

The Amended Complaint properly alleges a composite of circumstances that constitute a clear and present danger to Ms. Williams. The following specific allegations describe this composite:

- Ms. Williams lives in a neighborhood in Hillsborough County, FL known as Progress Village that is in close proximity to Mosaic's Riverview Complex. This Complex includes active and inactive "stacks" of phosphogypsum waste containing a high concentration of radionuclides and other toxic materials that can become airborne. The stacks of Mosaic's Riverview Complex have been in operation since the 1950's. Amended Complaint, ¶2, 13,14 and 16.

- Mosaic's active stack is located approximately one mile from Progress Village. Amended Complaint, ¶2.

- Layers of phosphogypsum dust and particulates regularly blanket the Progress Village neighborhood and that air contains dangerously high levels of sulphur dioxide and other air toxics that the residents breathe when the wind blows. Amended Complaint, ¶31, 54.

- The air emissions from Mosaic's Riverview Complex have earned that facility the designation as a "major" source of both hazardous air pollutants and sulfur dioxide according to the U.S. Environmental Protection Agency and the State of Florida. Amended Complaint, ¶41.

4

Ms. Williams asserts that layers of dust containing toxic air contaminants from a major source of pollution that have routinely and continuously blanketed a neighborhood over a significant time period unquestionably constitute a peril. Furthermore, the peril is far beyond what any reasonable person would consider "normal or usual." To the contrary, the dust and air pollution from the Riverview Complex have presented and continue to present a clear and present danger to Ms. William's health and she alleges it has caused her to develop severe asthma, other lung and kidney disorders and hypertension. Amended Complaint, ¶62.

The Amended Complaint also successfully pleads that Mosaic has a chargeable awareness of the dangers of the pollutants it emits and the hazards these pollutants present to residents of Progress Village. For example, Ms. Williams alleges that Mosaic's own reports on the pollution it generates show releases of over 23.4 million pounds of sulfur dioxide in the past 5 years. Amended Complaint, ¶43. Mosaic knew or should have know that Progress Village was within a foreseeable zone of risk of exposure to Mosaic's air pollution and breach of its duty will cause injury to Ms. Williams. Amended Complaint, ¶67, 68. Ms. Williams believes that the fact that Mosaic recently located its corporate headquarters twenty three (23) miles away from the Riverview Facility in Lithia, Florida is an implicit recognition that it was more concerned about minimizing its employee's exposure to toxic air quality in Riverview than addressing the fifty plus years of exposure to toxic air quality suffered by residents of Progress Village.

Finally, Ms. Williams has also successfully pled that Mosaic's acts and omissions are done in such a way as to evince a flagrant disregard of consequences. She alleges that

Mosaic's willful and wanton failure to take proper precautions against the release of toxins into the air and soils around the Riverview Complex demonstrated a reckless indifference to her health. Amended Complaint, ¶74. Similarly, Mosaic's willful and wanton failure or refusal to provide accurate and adequate warnings of the health hazards from exposures over a significant and continuous period evince a conscious disregard for the health of Ms. Williams. Amended Complaint, ¶78. Taken as a whole, these specific allegations of failure to warn and failure to protect Progress Village from massive, significant and deadly air pollution over nearly half a century allege more than "careless" disregard for the health of Ms. Williams. The actions demonstrate a decades old strategy by Mosaic designed to keep Ms. Williams clueless about the hazards she has faced on a daily basis living in her community, thereby permitting Mosaic to continue with "business as usual."

Turning now to its brief, Mosaic's argument for dismissal of Count II conveniently overlooks the specificity of Ms. Williams' pleadings. It relies solely on a conclusion that all of Mosaic's pollution was purportedly the end result of long, historically regulated activity that could not conceivably present an "imminent" or "clear and present danger." Brief in Support, p. 3. This is clearly contrary to the specific allegations cited above by Ms. Williams.

But even more startling than this minimization is Mosaic's argument that its operations - emissions of air pollutants and air toxins in the millions of pounds over a five year period as an example – is a "regionally <u>ordinary</u> activity" (emphasis added) carried on by Mosaic and its predecessors over many decades. The nature and scope of Mosaic's

6

air emissions (air toxics, particulates and radionuclides) and those compounds' severe, adverse effects on Ms. Williams' health demonstrate the emissions from Mosaic operations are anything but ordinary.

According to the notice pleading provisions of the Federal Rules, the Amended Complaint has sufficiently plead the necessary elements of a cause of action for gross negligence. Therefore, the Motion to Dismiss Count II for failure to state a cause of action must be denied.

### II. Ms. Williams has stated a cause of action for strict liability in Court III against Mosaic because her allegations are sufficient to plead a case of strict liability.

Citing *Peoples Gas System*, Mosaic asserts that Ms. Williams must allege a "number of elements" to establish strict liability for an abnormally dangerous activity and lists those elements listed in the opinion. The court in *Peoples Gas System*, however, did not characterize these items as "elements," rather they are listed in the decision as "considerations" to assist the court in determining liability. *Id*. The better description of the essential components of a strict liability claim is found in the Restatement of Torts that states: "The defendant's enterprise, in other words, is required to pay its way by compensating for the harm it causes, because of its special, abnormal and dangerous character." Restatement (Second) of Torts § 519 cmt. d (1977).

Mosaic admits in its brief that Ms. Williams has plead that Mosaic was engaged in "abnormally dangerous activities." The actual allegations in Count III, however, assert much more than Mosaic admits. For example, Ms. Williams claims that the intentional, incidental or accidental release of hazardous substances and toxic air contaminants onto

7

her property impose an "unusual, significant and extraordinary risk of harm" to her now and in the future. Amended Complaint, ¶82. What makes Mosaic's emissions unusual is the fact that they are hidden to Ms. Williams and not readily discernable, yet have significant, serious and adverse affects on her health. Amended Complaint, ¶87.

In addition, contrary to Mosaic's arguments, the other considerations mentioned in *Peoples Gas System* are also incorporated in Count III as follows:

- Paragraphs 53, 54 and 55 allege that there are radionuclides emitted by Mosaic through its phosphogypsum dust that increase one's chances of getting cancer, which is clearly a "harm that from it is great."

- Paragraphs 16 and 18 allege the Riverview Complex's releases of toxic air contaminants in such proximity to Progress Village community so as to demonstrate the inappropriateness of the activity (Riverview Complex and its stacks) to the place where it is carried out (Progress Village).

Consequently, under the liberal pleading rules under Rule 12(b)(6), Ms. Williams has sufficiently pled a cause of action for strict liability. The allegations in Count II unequivocally put Mosaic on notice of what the claim is and the grounds for asserting it. The additional details in the pleadings only serve to bolster Ms. Williams' argument that strict liability has been adequately pled. Mosaic's motion to dismiss Count III must be denied.

    III.    **Williams has pleaded a cause of action for medical monitoring. Mosaic's reliance on <u>Petito v. A.H.Robins Co.</u> to establish the pleading elements in this case is misplaced.**

Mosaic's argument that Count IV of the Amended Complaint must be dismissed is based upon Plaintiff's alleged failure to plead a number of "elements" of a cause of action for medical monitoring set forth by the court in *Petito v. A.H. Robins Co.,* 730 So.2d 103 (Fla. Ct. App. 1999). *Pepito* is one of the so-called class action Phen-Phen cases where plaintiffs claimed that exposure to a weight loss drug put them at increased risk of developing cardiac and circulatory ailments. In those cases, the Third District appellate court held that there is a cause of action in Florida for medical monitoring. *Id*. at 108.

So turning now to the question of whether Ms. Williams' allegations to substantiate a cause of action for medical monitoring are sufficient, the starting point under Federal Rules 12(b)(6) is liberal, notice pleading. In Court IV she has alleged that Mosaic's acts, omissions and conduct are the proximate cause of her exposure to various hazardous substances and air toxins. Amended Complaint, ¶88. Furthermore, as a result of this exposure, she has alleged a significantly increased risk of more serious injury and latent disease as a result of her treatment, as well as her initial exposure. Amended Complaint, ¶90. Finally, she has alleged the existence of several non-invasive tests that detect the presence of liver failure, respiratory ailments and heart dysfunction even in asymptomatic individuals. Amended Complaint, ¶92. These allegations clearly and unequivocally provide Mosaic with the requirements for pleadings elucidated in *Conley*, that is notice of what the claim is and the grounds on which it rests. Mosaic's motion to dismiss Count IV must be denied.

    IV.    **Williams is entitled to plead a claim for punitive damages under Rule 8(a)(3) without leave of the court.**

Mosaic cites Florida Stat. §768.72(1) for its proposition that Ms. Williams cannot allege punitive damages without seeking leave of court, which she did not do while this case was pending in state court in Hillsborough County. Therefore, according to Mosaic, Ms. Williams' demands for punitive damages must be stricken.

Since Mosaic's motions were filed, this case has been removed to federal court on the alleged basis of diversity jurisdiction. The question now is whether Florida procedural law or Federal Rules of Civil Procedure control how and when punitive damages may be asserted in this tort action. That question has been squared answered by the 11th Circuit in *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Citing with approval its prior opinion in the same case, the court stated:

> "…we held that Florida Statute § 768.72 conflicts with and must yield to the "short and plain statement" rule contained in Federal Rule of Civil Procedure 8(a)(3), and <u>as a result a Florida plaintiff in federal court because of diversity jurisdiction need not obtain leave of court before pleading a request for punitive damages.</u> *Cohen v. Office Depot, Inc.,* 184 F.3d 1292,1295-99 (11th Cir. 1999) (emphasis added).

Therefore, under the express holding of the 11th Circuit in <u>Cohen</u>, Mosaic's Motion to Strike Punitive Damages must be denied.

## CONCLUSION

For the arguments and reasons stated above, Mosaic's Motion to Dismiss Amended Complaint Counts II, III and IV, and Motion to Strike Allegations of Punitive Damages must be denied.

Dated: July 31, 2014

*/s/ Laureen Galeoto*_____
Laureen Galeoto, Trial Counsel
FBN 0194107
Law Office of Laureen Galeoto, PLLC
511 W. Bay Street, Suite 350
Tampa, FL 33611
P. 813.280.9326
Laureen@laureenlaw.com

Mary Ellen Hogan
FBN 0065372
The Green Counselor, PLLC
511 W. Bay Street, Suite 350
Tampa, FL 33606
P. 813.964.6515
Maryellen@thegreencounselor.com

~pending pro hac admission~

William P. Walker
Walker Morgan, LLC
135 E. Main Street
Lexington, SC 29072
P. 803.359.6194
bw@walkermorgan.com

CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing has been furnished to the following by email on July 31, 2014.

David B. Weinstein
Greenberg Traurig, PA
625 E. Twiggs St., Suite 100
Tampa, FL 33602
weinsteind@gtlaw.com

Christopher Torres
Greenberg Traurig, PA
625 E. Twiggs St., Suite 100
Tampa, FL 33602
torresch@gtlaw.com

Chelsae R. Johansen
Greenberg Traurig, PA
625 E. Twiggs St., Suite 100
Tampa, FL 33602
johansenc@gtlaw.com