# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RHONDA WILLIAMS, a single person,

       Plaintiff,

v.                            Case No. 8:14-cv-1748-T-35TGW

MOSAIC FERTILIZER, LLC, a Delaware
Corporation doing business in Florida, and
THE MOSAIC COMPANY, a Delaware
Corporation

       Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES AND
## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, RHONDA WILLIAMS, ("Plaintiff"), by and through her undersigned attorneys, and hereby sues the Defendants, MOSAIC FERTILIZER, LLC; ("Mosaic Fertilizer") a Delaware corporation doing business in Florida, and THE MOSAIC COMPANY, a Delaware corporation doing business in Florida and says:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for damages in excess of $75,000.00 exclusive of interest and costs.

2. Plaintiff, RHONDA WILLIAMS, is a Florida resident who resides at 4810 South 87th Street in Riverview, Hillsborough County, Florida in a neighborhood known as "Progress Village." Progress Village is in close proximity to Defendant Mosaic Fertilizer, LLC's, fertilizer manufacturing facility and related operations, which includes chemical processing and handling, waste and disposal, and phosphogypsum stacks located in and around Riverview, Hillsborough County, Florida (hereinafter, the "Riverview Complex").

3. Defendant, MOSAIC FERTILIZER is a foreign limited liability company, authorized to do business in Florida, with its principal place of business at 3033 Campus Drive, Suite E490, Plymouth, Minnesota, 55441-2651. At all

times material hereto, Mosaic Fertilizer has actively conducted business operations in Riverview, Hillsborough County, Florida.

4. Defendant Mosaic Fertilizer is a wholly owned subsidiary of Defendant THE MOSAIC COMPANY, a Delaware corporation with its principal place of business at 3033 Campus Drive, Suite E490, Plymouth, Minnesota, 55441-265, that was incorporated in 2004 to serve as the parent company of the business that was formed through the business merger and combination of IMC Global, Inc., with the Cargill Crop Nutrient business of Cargill, Inc., and its subsidiaries.

5. Cargill, Inc., acquired the Riverview Complex in 1985 from Gardinier, Inc., ("Gardinier") the then bankrupt Florida based phosphate-fertilizer mining and manufacturing company. Cargill continued to process and manufacture phosphoric acid, a fertilizer product at the Riverview Complex at all material times up through the merger and combination with IMC Global.

6.  As a result of the merger and combination between IMC Global and Cargill Crop Nutrient business, Defendant Mosaic Fertilizer was formed.  Mosaic Fertilizer is the successor in interest to the fertilizer and crop nutrient operations at the Riverview Complex.

7. The Riverview Complex consists of, but is not limited to the chemical complex located at 8813 U.S. Highway 41 South, Riverview, Hillsborough County, Florida, 33569, and the facilities and phosphogypsum stacks identified in quadrants 30-19-22, 30-19-15, 30-19-14 and 30-19-11 of the 2010 aerial attached as Exhibit "A."

8. This action was removed on July 18, 2014 pursuant to Sections 28 USC 1441 and 1446. Further, venue is proper before this Court pursuant, because, among other things, (i) Plaintiff Rhonda Williams is a resident of the Middle District of Florida, Tampa Division; (ii) Plaintiff Rhonda Williams' causes of action accrued in Hillsborough County, Florida; and (iii) The Mosaic Company and Mosaic Fertilizer maintain offices in Hillsborough County, Florida.

# MOSAIC FERTILIZER'S OPERATIONS

9. As part of Mosaic Fertilizer's normal and regular operations at its Riverview Complex it continually emits regulated air pollutants, toxic substances and hazardous air pollutants, and radioactive isotopes as those terms are defined under federal and state environmental laws. These releases include both particulate and gaseous pollutants.

10. These emissions impact and contribute to the pollutant, toxic metal and radioactive burden of the surrounding neighborhoods, including Progress Village.

11. At its Riverview Complex, Mosaic Fertilizer through its manufacturing, chemical processing and handling, and waste disposal, processes and produces among other things, sulfuric acid, phosphoric acid, fluoride products, ammoniate phosphates and animal feed phosphates.

12. Phosphoric acid, a primary fertilizer commodity, is created through a chemical process where phosphate rock is reacted with sulfuric acid.

13. Phosphate rock is a natural resource in Florida that is mined by The Mosaic Company through its subsidiaries, and processed into phosphoric acid by Mosaic Fertilizer at its Riverview Complex.

14. To produce the phosphoric acid, sulfuric acid is reacted with phosphate rock, creating a by-product called phosphogypsum. Approximately five tons of phosphogypsum are produced for every ton of phosphoric acid product produced.

15. Phosphogypsum waste is then stockpiled into stacks. These stacks contain a high concentration of toxic and hazardous substances and radioactive isotopes that can become airborne.

16. Mosaic Fertilizer stockpiles its phosphogypsum waste by-product at the Riverview Complex, which includes one active and one inactive stack.

17. To support its operations at the Riverview Complex, Mosaic Fertilizer brings in molten sulfur via a sulfur terminal located in Riverview, FL, and ammonia through a terminal located in Port Sutton, Florida.

18. The first phosphogypsum stack was constructed near the mouth of the Alafia River in Riverview, Florida, with containment dikes made from gypsum placed in the same area prior to the 1950's.   This stack is located approximately two miles, from the Progress Village neighborhood as shown in quadrants 30-19-1, 30-19-12, 30-19-15 of Exhibit "A."

19. In 1984 Gardinier received permits to construct a new second phosphogypsum stack.  This permit was granted with the stipulation that a closure plan be prepared concerning the closure of the first phosphogypsum stack.

20. In 2000 Cargill, Gardinier's successor was granted a permit to expand what became the second phosphogypsum stack; it was granted by the Florida Department of Environmental Protection.   This second phosphogypsum stack is located adjacent to, less than one mile from the Progress Village neighborhood as shown in quadrants 30-19-1, 30-19-11, 30-19-12, 30-19-14 of Exhibit "A."

21. This second stack is located in even closer proximity than the first stack to the Progress Village neighborhood where Rhonda Williams has lived her entire life.

22. The Progress Village neighborhood was planned and chartered in 1958, on the cusp of the Civil Rights Movement, by a group of local African-American leaders looking to build an African-American community for families looking for better living conditions, home ownership and a good investment.

23. Prior to the proposed second phosphogypsum stack, the African-American community of Progress Village was one of only a few communities in the Riverview area and was immediately adjacent to the newly proposed second phosphogypsum stack's location.   See 1973 Aerial attached as Exhibit "B."

24. In the 1980's and again in 2000, in exchange for cooperation in relation to the permit for the second phosphogypsum stack and its expansion, Gardinier and Cargill offered to perform environmental and community projects for, and increase hiring from the local neighborhood.

25. One such project was the funding of the Progress Village Foundation ("Foundation"); which provides a college scholarship program for Progress Village residents.   The Foundation was established on February 11, 1986; two years after Gardiner's permit application for the second phosphogypsum stack.

26. Since becoming the successor in interest, Mosaic Fertilizer has continued in these efforts by continuing to fund the Foundation's college scholarship program for Progress Village residents.

27. Rob Baker, the Director of Human Resources at The Mosaic Company's headquarters in FishHawk, Hillsborough County, Florida, has sat on the Foundation's Board and has participated in the scholarship program.

28. Plaintiff Rhonda Williams was the first recipient of the Foundation's scholarship in 1986 and graduated from University of South Florida in 1991 with a degree in Computer Engineering Technology.

29. Another project is the Progress Village Community Garden donated by Mosaic Fertilizer's predecessor, Cargill Crop Nutrition in 2000; the year Cargill's 1999 phosphogypsum stack expansion permit was approved. Mosaic Fertilizer continues to financially support this project.

30. Larry Simpson, Mosaic Fertilizer's Riverview Plant Manager, and others from the company were present at the ten-year anniversary celebration of the garden, which supplies food for the Progress Village Residents.

31. Based on information and belief The Mosaic Company, Mosaic Fertilizer and its predecessors have continually taken a special interest in the Progress Village neighborhood, which is adjacent to the Riverview Complex and particularly the second phosphogypsum stack, due to the foreseeable health risks that its business activities impose upon the neighborhood's residents.

32. Defendants' interest in the neighborhood is foreseeable since their business interests include the processing, disposal and storage of toxic and hazardous substances that can become and are air borne and disperse into the Progress Village neighborhood.

33. Layers of phosphogypsum related dust and particulates blanket the Progress Village neighborhood. These layers contain dangerously elevated levels of toxic and hazardous substances, whose fingerprint matches with the constituents in the emissions from the Riverview Complex, and routinely contaminate the ambient air.

34. Mosaic Fertilizer's activities at the Riverview Complex have created an appreciable zone of risk surrounding the Riverview Complex within which Mosaic Fertilizer has been and continues to be obligated to protect those who were, are and will be exposed to the airborne harm Mosaic Fertilizer has created.

35. The Mosaic Company and Mosaic Fertilizer, both individually and as successors in interest, have engaged in conduct that evidences a duty and foreseeability of risk to Rhonda Williams and residents of the Progress Village neighborhood.

36. The Mosaic Company and Mosaic Fertilizer know and have known of the serious health risks to Rhonda Williams and her community at-large resulting from its processing, handling and waste disposal at the Riverview Complex and has failed to warn them of the risks.

37. Unbeknownst to Rhonda Williams, and other residents of Progress Village, Mosaic Fertilizer's Riverview Complex has been and continues to poison them slowly with emissions from its processing facilities and stacks.

## MOSAIC FERTILIZER'S DANGEROUS AND ULTRA HAZARDOUS IMPACT

### A. SULFUR DIOXIDE CONTAMINATION

38.  Both the U.S. Environmental Protection Agency and the Environmental Protection Commission for Hillsborough County have released data demonstrating repeated and continual ambient air levels of sulfur dioxide at levels that far exceed the National Ambient Air Quality Standard of 75 parts per billion or ppb, based on a one-hour average.

39.  This new 75ppb, one-hour standard went into effect in June 2010.   This new standard was promulgated by the U.S. Environmental Protection Agency as a direct result of the known severe health hazards caused by sulfur dioxide emissions that has been demonstrated in the scientific and medical literature.

40. The air in Rhonda Williams' neighborhood and surrounding community is presently in violation of the one-hour 75 ppb National Ambient Air Quality Standard for Sulfur Dioxide.

41. The State of Florida and the U.S. Environmental Protection Agency have identified Mosaic as the "likely major contributor," and "overwhelming source" of the violation of the sulfur dioxide in her neighborhood, with no other major sources near the violating monitor. See The Technical Support Document, Florida, Area Designations for the 2010 SO2 Primary National Ambient Air Quality Standard ("TSD").

42. In addition to violating the one-hour 75 ppb standard, Mosaic Fertilizer has continued to repeatedly violate Florida's unchanged twenty-four hour standard of 100 ppb, which has been in place for well over a decade.

43. Specifically, monitoring data obtained from the U.S. Environmental Protection Agency website for Florida's Air Quality Site, Identification Number 0109, located at the Riverview Complex, demonstrated thirteen violations of Florida's twenty-four hour sulfur dioxide standard in 2008, two violations of the higher federal twenty-four hour standard in 2008, eleven violations of Florida's twenty-four hour standard in 2009, ten violations of Florida's twenty-four hour standard in 2010, seven violations of Florida's twenty-four hour standard in 2011, nine violations of Florida's twenty-four hour standard in 2012 and two violations in 2013.

44. The Environmental Protection Commission for Hillsborough County ("EPC") released Air Monitoring and Assessments Air Quality Technical Reports for 2010 and 2011/2012 (hereinafter, "the Reports"). The Reports compiled air quality data monitored at several monitoring stations, including a station named Gardinier and a station named East Bay, both of which are in close proximity to the Progress Village neighborhood and are geographically situated within or immediately next to the Riverview Complex. See the maps of the Reports' Air Monitoring Sites attached as Exhibit "C."

45. The EPC monitored particulate matter, sulfur dioxide, and air toxics, as well as other air contaminants.

46. Concerning sulfur dioxide, the Reports found that the national one-hour standard of a maximum 75 parts per billion (ppb) was far exceeded the numerical value of the standard at the East Bay monitoring site  – and reported, for example, a one-hour high of 119 ppb in 2010, 105 ppb in 2011, and 146 ppb in 2012, plus a three-hour high of 103 ppb for the year 2010, and 131 ppb for 2012.

47. The sulfur dioxide levels at the East Bay site far exceeded other sites tested in Hillsborough County.

48. Mosaic Fertilizer's Riverview Complex is the primary source of the sulfur dioxide emissions at the East Bay site.

49. The EPC's data is consistent with the air dispersion modeling results and historical wind data contained in the TSD.

50. According to Appendix A of the TSD, from 2008 through 2010 there were multiple instances where the sulfur dioxide concentrations exceeded the public health standard of a maximum exposure of one-hour 75 ppb, and on multiple instances exceeded 100 ppb, and even the 140 ppb, placing children, elderly and people with asthma, like Rhonda Williams, in significant risk of adverse health effects.

51. According to the historical wind rose data, neighborhoods north and east of the Riverview Complex, including Progress Village, are downwind of these exceeding high levels of sulfur dioxide as much as sixteen to twenty percent of the time.

52. Consequently, Progress Village experience exceedingly high levels on average sixteen to twenty percent of the time.

53. On February 6, 2013, the Regional Administrator for the United States Environmental Protection Agency wrote to the Honorable Rick Scott, Governor of the State of Florida, concerning the elevated levels of sulfur dioxide in Hillsborough County in violation of the federal Clean Air Act, and designated limited areas in Hillsborough County as non-attainment areas under the Federal Clean Air Act, stating, "Exposure to SO2 can cause a range of adverse health effects, including narrowing of the airways which can cause difficult breathing and increased asthma symptoms."

54. Mosaic Fertilizer, in a letter dated August 8, 2014 to the Florida

Department of Environmental Protection, admitted that it is in violation. It's

own modeling data shows that it is the major source of sulfur dioxide

emissions in the non-attainment area immediately adjacent to and including

parts of the Progress Village neighborhood. In that correspondence

Defendants modeled air emissions for its planned sulfuric acid production

rates for its three acid production facilities. These facilities collectively can

produce 8600 tons of sulphuric acid per day. At that rate of production,

Defendants projected a maximum sulfur dioxide concentration of 435 ug/m3

at its fence line near Progress Village. Mosaic Fertilizer's data submission

concludes that this concentration at its fence line is over twice the allowable

standard of 75 ppb (75 ppb equals 196.5 ug/m3). No other source contributes

to this level of sulfur dioxide at Mosaic's fence line. In its submittal, Mosaic

Fertilizer specifically stated, "Mosaic's combined emissions are modeled at

1184 pounds/hour with TECO at 0.274 pounds/mmBtu." TECO's fence-line

impact is virtually non-existent.

55. The State of Florida and United States Environmental Protection Agency have designated the Riverview Complex as a major source of hazardous air pollutants and a major source of sulfur dioxide as determined the federal Clean Air Act and Chapter 213, of Florida's Administrative Code.

56. The industrial processes at the Riverview Complex consist of, among other processes, three (3) sulfuric acid plants that are primarily responsible for the Riverview Complex's sulfur dioxide air emissions. According to Mosaic Fertilizer's current air operation permit No. 0570008-066-AV, the three sulfuric acid plans are designated Plant Numbers 7, 8 and 9.

57. Publically available sulfur dioxide emissions data reported annually by Mosaic Fertilizer to the Florida Department of Environmental Protection shows that the Riverview Complex has emitted over 11,737 tons of sulfur dioxide in the past five years alone (2008 – 2013). When these tons of emissions are converted to pounds of emissions, Mosaic Fertilizer has released just over 23.4 million pounds of sulfur dioxide in the past five years.

58. Interestingly, for Mosaic Fertilizer *dilution is a solution* to the ultra-hazardous environment it has created. In its August 8, 2014 correspondence to the Florida Department of Environmental Protection, Mosaic Fertilizer proposes to build taller smoke stacks for its production units to allow it to dilute and further disperse the sulfur dioxide. The effect of this dilution solution will expose more children, elderly and persons with asthma, in the South Tampa, Brandon and Riverview communities, to this poisoning rather than eliminate its toxic and hazardous emissions.

59. Presently, and historically Mosaic Fertilizer has continually emitted sulfur dioxide at dangerous levels exacerbating or causing severe health effects.

### B. PARTICULATE POLLUTION

60. Mosaic Fertilizer's airborne emissions also come in the form of respirable particulates, also known as PM10, containing numerous toxic and hazardous substances common to phosphate handling, processing, and waste disposal. These respirable particulates or their constituents are both short-term respiratory irritants and long-term serious and chronic health hazards.

61. The Clean Air Act designated a group of one hundred and eighty seven compounds, known as Hazardous Air Pollutants ("HAPs"), that are known to, or suspected of causing serious long-term health effects, such as cancer. The EPC has one sample site, Sydney, located in east Hillsborough County, where it has monitored he ambient air for a number of toxic and hazardous substances, including several HAPs.

62. In its 2010 Report, the EPC stated that, "there may be smaller areas of Hillsborough County where air toxic levels pose a greater inhalation risk to public health."

63. Based on information and belief, one such area is the area surrounding the Riverview Complex and including the Progress Village neighborhood.

64. Contaminates common to operations at the Riverview Complex, including PM10/particulate matter, sulfates, toxic and hazardous substances, including but not limited to arsenic, cadmium, chromium, lead, manganese, nickel, phosphorous and zinc are all present in the ambient air around Rhonda Williams' home and community.

65. The EPC's Report also included information on sampling results from 2001 to 2010 for PM10/particulate matter. The maximum national standard for PM10/particulate matter is 150 micrograms based on a one-hour average. The highest reported twenty-four hour average level in 2010 was 156 micrograms per cubic meter per hour at the Gardinier site – no data was reported from the East Bay site.

66. PM10/particulates are highly dangerous because they are sufficiently small to reach and deposit in the interior of lungs allowing absorption and/or adsorption onto other toxic constituents, including arsenic, phosphorous, radioactive isotopes, cadmium, chromium, lead, manganese, nickel, and zinc.

67. Continual exposure to elevated levels airborne toxics and hazardous substances and radioactive isotopes increases the risk of severe health effects.

68. Rhonda Williams has been continually exposed to airborne toxic and hazardous substances and radioactive isotopes released by the Riverview Complex, and has suffered injury as a result.

69. Based on information and belief the Riverview Complex is also contaminated with elevated levels of radioactive isotopes, including uranium radium, and decay products, a naturally occurring by-product of the business activities that take place at the Riverview Complex, making the property unsafe for unrestricted uses.

70. Mosaic Fertilizer, individually and as successor in interest, is responsible for the emissions of radioactive isotopes, including radium, uranium and decay products at the Riverview Complex.

71. These radioactive isotopes like other toxic and hazardous substances can become airborne as part of the particulate emissions. For example, the phosphogypsum dust and waste comprising the phosphogypsum stacks are constantly subject to prevailing winds that transport the radionuclides and the toxic phosphogypsum dust to the areas immediately surrounding the phosphogypsum stacks, including the Progress Village neighborhood where Rhonda Williams lives.

72. These radioactive isotopes can present severe health risks and significantly increase one's chances of developing cancer.

# MOSAIC FERTILIZER'S FINGERPRINT

73. Consistent with the EPC and the U.S. Environmental Protection Agency data, soil and dust sampling obtained utilizing ASTM standards and generally accepted industrial hygiene practices around Rhonda Williams' residence in Progress Village, indicates the presence of toxic metals, radioactive isotopes, phosphorus, arsenic, cadmium, chromium, lead, manganese, nickel, zinc and other toxic and hazardous substances consistent with Mosaic Fertilizer's phosphogypsum processing at the Riverview Complex, at levels significantly above the Florida background levels.

74. The sampling has indicated long-term deposition of fine particulates and aerosols consistent with emissions released by the production, processing and waste operations at the Riverview Complex.

75. Not surprisingly, the chemical fingerprint of the constituents sampled around Rhonda Williams' home and the adjacent soil profiles indicate long-term deposition, accumulation and indoor air exposures of highly elevated levels of deposited phosphogypsum related toxic and hazardous substances, particulates and radioactive isotopes to Rhonda Williams, individually, and the entire surrounding community as a whole.

76. In fact, phosphorous, the primary economic driver of the Riverview Complex is present in the soil around Rhonda Williams' home at levels as high as 3700 ppm, as compared to the Florida baseline for phosphorous in soil of only126 ppm.

77. In addition, other Riverview Complex associated contaminates are found at elevated levels in the immediate vicinity of Rhonda Williams' home including, aluminum, arsenic, barium, cadmium, copper, boron, chromium, iron, lead, phosphorus, selenium, and zinc.

78. Most of the Mosaic Fertilizer contaminates are acute irritants as well as chronic toxicants to the lung, liver, kidney and blood systems by inhalation at elevated levels.

79. In addition, Rhonda Williams' home is located within a non-attainment area for sulfur dioxide, a known lung irritant, at exceedingly high human health hazard levels for which the Defendant is the sole contributor.

80. Rhonda Williams' continuous exposure to the Riverview Complex's toxic pollution has had substantial negative impacts upon her health and quality of life.

## RHONDA WILLIAMS' DETERIORATING HEALTH

81. Rhonda Williams has been continuously exposed to significant quantities of hazard and toxic materials from Defendants' Riverview Complex operations over her lifetime, primarily through inhalation and dermal exposures.

82. As a direct and proximate result Rhonda Williams has developed significant adverse health effects, including severe symptoms of G6PD, associated pulmonary hypertension, asthma, peripheral neuropathy, and obstructive pulmonary disease, among others, resulting in a diminished quality of life and potentially reduced life span.

83. On January 4, 2013, Rhonda Williams was diagnosed with G6PD. As a result of this disease, her respiratory symptoms are significantly exasperated by her long-term repeated exposure to the hazardous materials primarily coming from the Defendants' operations.

84. This exasperation has necessitated Rhonda Williams' dependence on various types of medication to manage symptoms, and these medications which increase the potential for permanent functional and structural damage to her heart, lungs, liver and kidneys.

85.  Rhonda Williams has also demonstrated a documented age adjusted lung function loss of approximately ten-percent as diagnosed by the GOLD standard of spirometry by two pulmonary specialists.  Rhonda Williams also has symptoms of a restrictive pulmonary nature consistent with long-term asthma and its treatment.  These symptoms additionally put her at an increased risk of heart disease.

86. To further complicate matters, Rhonda Williams' health is now starting to express functional and structural symptoms of longer term damage to her blood, tissues and immune responses directly caused by or related to chronic exposures to significant air pollutants emitted primarily from Defendants' Riverview Complex.

87.  Further, Rhonda Williams has suffered a range of illnesses including, extreme fatigue, intense abdominal pain, allergic reactions and various breathing difficulties all as a direct and proximate result of exposures to toxics and hazards emitted and/or deposited by Defendants.

88.  In addition, Rhonda Williams has developed significant adverse health effects as a result of secondary effects from therapeutic agents used to treat her diseases and symptoms resulting from these exposures caused by Defendants, further diminishing her quality of life and threatening her long-term physical and mental wellbeing.

89.  The decline in Rhonda Williams' health has forced her to seek extensive medical care and treatment, primarily over the last decade, but starting as early as 1996.

## THE DEFENDANTS' DECEIT

90. Despite the numerous health risks imposed upon Rhonda Williams and others similarly situated, based on information and belief, The Mosaic Company and Mosaic Fertilizer have knowingly engaged in a continual and expensive public relations campaign to mislead and/or misdirect the public in general and specifically those directly impacted by its business activities, with regards to the serious and detrimental health risks that can occur due to the activities at the Riverview Complex.

91. One local example is Defendants' support for wildlife by investing in the "Bird Sanctuary" located in Hillsborough Bay right across from the Riverview Complex. In touting this commitment to the local environment, Defendant fails to mention that this "Bird Sanctuary" is in the middle of an ultra-hazardous non-attainment zone. [1]

92. In other advertisements called "Sharing Our Promise," located at http://www.mosaicco.com/florida/flphos_promise.htm, The Mosaic Company touts its "healthy" and "ethical" operations in Florida. Mosaic Fertilizer is an intended beneficiary of these misleading marketing endeavors.

93. The Mosaic Company's publicized Environment, Health and Safety Policy states, that it conducts its "business activities in a manner which protects the environment and the health and safety of our employees, contractors, customers and communities." This is an intentional misrepresentation intended to mislead and misdirect for the benefit of Mosaic Fertilizer.

---

[1] A print ad concerning the Bird Sanctuary in the Hillsborough Bay is attached as Exhibit "D."

94. Based on information and belief, The Mosaic Company, on behalf of Mosaic Fertilizer, which does not sell any product directly to the local community or have direct contact with personal consumers, spends large amounts of money every year in public relations campaigns in Hillsborough County, and within the Progress Village neighborhood.

95. The Mosaic Company for the benefit of Mosaic Fertilizer publicizes that it is committed to wildlife stewardship and protection in Florida. But the fact remains that the concentrated level of toxic and hazardous substances and radioactive isotopes contained in the phosphogypsum stacks and released from the Riverview Complex are toxic to wildlife.

96. The Mosaic Company and Mosaic Fertilizer have actively and continually engaged in a campaign to mislead and defraud the communities most impacted by production, processing and disposal of waste at the Riverview Complex.

97.  Absent from the Defendants' massive local public relations campaign is
any data to the effect that some of the highest asthma hospitalization rates -
with the exception of South Florida's most congested counties - occur in the
counties where the Defendants have production, processing and/or mining
operations.

98.  As Rhonda Williams has come to learn all to well, The Mosaic Company
and Mosaic Fertilizer are the antithesis of  good corporate citizenry.

99. As a direct result of the Defendants conduct and the Riverview Complex,
Rhonda Williams' real property has been invaded by, and her person
exposed to and caused to suffer damages from, extremely toxic
phosphogypsum dust and particulates, toxic and hazardous substances, radio
active isotopes, sulfur dioxide as well as dangerous air toxicity levels.

100.      As a direct result of Defendants' operations at the Riverview
Complex, toxic phosphogypsum dust, particulates, toxic and hazardous
substances, radioactive isotopes, and sulfur dioxide have been repeatedly
released into the ambient area surrounding the Progress Village
neighborhood, causing Rhonda Williams to develop or otherwise exacerbate
serious adverse health effects.

101.     As a direct result of Defendants' conduct and the operations at the
Riverview Complex, Rhonda Williams has sustained severe physical injury,
pain, suffering, mental and emotional damage and distress, loss of
enjoyment of life and loss of employment.

102.     As a direct result of the Defendants' conduct and the operations at the
Riverview Complex, Rhonda Williams has been unable to hold gainful
employment for almost two decades and a lifetime of lost earnings and
related benefits in the field of computer engineering technology.

103.     As a direct result of Defendants' conduct and the operations at the
Riverview Complex, Rhonda Williams believes her property has no value,
because of the contamination in and around her home caused by Defendants.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

104.  Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through one-hundred and three (103) of this Complaint and said allegations are incorporated herein by reference.

105.   Defendants, THE MOSAIC COMPANY and MOSAIC FERTILIZER, had a duty to exercise reasonable care in the design, operation, and policies implemented to safely produce phosphoric acid, sulfuric acid, fluoride products, ammoniate phosphates and animal feed phosphates and to safely dispose of by-product waste, including phosphogypsum.

106.  Defendants breached their duty to Plaintiff by not taking proper precautions against the release of toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards into the air and soils immediately surrounding the proximate areas of the Riverview Complex and the second phosphogypsum stack, including the Progress Village neighborhood, causing severe health effects upon Rhonda Williams due to the inhalation, ingesting or other exposure to the toxic and hazardous

substances, radioactive isotopes, sulfur dioxide and other emitted hazards generated at and released from the Riverview Complex.

107. Defendants knew or should have known that Rhonda Williams, a life long resident of the Progress Village neighborhood, was within a foreseeable zone of risk of exposure.

108. Defendants knew or should have known that the breach of its duty might result in injury to Rhonda Williams and/or others similarly situated.

109. Defendants willfully, and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to the toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards to Plaintiff who would reasonably and foreseeably come into contact with or be harmed now or in the future by the emissions.

110. Defendants willfully and negligently failed to study, investigate, ascertain, impose or comply with reasonable standards and regulations for proper disposal of phosphogypsum and limiting the release of hazards in a manner that would protect the health and safety of Plaintiff from coming

into contact with the toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards.

111.  As a direct and proximate result of the Defendants' acts, omissions, negligence, and recklessness, Rhonda Williams has suffered and will continue to develop direct and indirect adverse health effects resulting in significant harm and excess risk of developing diseases including cancer.

## COUNT II – GROSS NEGLIGENCE

112.  Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through one-hundred and three (103) of this Second Amended Complaint and said allegations are incorporated herein by reference.

113.   Defendants, THE MOSAIC COMPANY and MOSAIC FERTILIZER, had a duty to exercise reasonable care in the design, operation, and policies implemented to safely produce phosphoric acid, sulfuric acid, fluoride products, ammoniate phosphates and animal feed phosphates and to safely dispose of by-product waste, including phosphogypsum.

114.  Defendants acted in gross and careless disregard for the safety and welfare of Rhonda Williams or with such reckless indifference for her health

and safety that they breached their duty to Plaintiff by willfully and wantonly not taking proper precautions against the release of toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards into the air and soils immediately surrounding the proximate areas of the Riverview Complex and the second phosphogypsum stack, including the Progress Village neighborhood, causing severe health effect upon Rhonda Williams due to the inhalation, ingesting or other exposure to the toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards generated at and released from the Riverview Complex.

115. Defendants knew that Rhonda Williams, a life long resident of the Progress Village neighborhood, was within a foreseeable zone of risk of exposure to these toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards, and that the injury risk to her was clear and present.

76. Defendants knew that the breach of its duty would result in injury to Rhonda Williams.

117.  Defendants willfully, wantonly, recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to the toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards to Plaintiff who would reasonably and foreseeably come into contact with or be harmed now or in the future by these emissions.

118.  Defendants willfully, wantonly, recklessly and negligently failed to study, investigate, ascertain, impose or comply with reasonable standards and regulations for proper disposal of phosphogypsum and limiting the release of toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards in a manner that would protect the health and safety of Plaintiff from coming into contact with the toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards.

119.  As a direct and proximate result of the Defendants' willful and wanton acts, omissions, negligence, and recklessness, Rhonda Williams has suffered and will continue to develop direct and indirect adverse health effects resulting in significant harm and excess risk of developing diseases including cancer.

## COUNT III – STRICT LIABILITY – ABNORMALLY DANGEROUS AND/OR ULTRA-HAZARDOUS ACTIVITY

120. Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through one-hundred and three (103) of this Second Amended Complaint and said allegations are incorporated herein by reference.

121. Defendant, MOSAIC FERTILIZER, was and is engaged in abnormally dangerous and/or ultra-hazardous activities by the place and manner in which they have generated, mined, transported, processed, controlled, stored, managed, moved, disposed and/or failed to remove, limit or control toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards associated with the Riverview Complex.

122. Defendant's activities have resulted in the intentional, incidental or accidental release of toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards at the Riverview Complex and the intentional, incidental, or accidental release and emission of toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards onto Plaintiff and the property of Plaintiff, which imposed an

unusual, significant and extraordinary risk of harm to Plaintiff in the past, the present and in the future.

123. As a direct and proximate result of Defendant, Mosaic Fertilizer's activities, Plaintiff has suffered substantial physical injuries, adverse health effects and mental anguish. Plaintiff also sues for the physical impairments suffered in the past and which she will suffer in the future.

124. Plaintiff has sustained medical expenses in the past and will continue to incur future medical expenses in order to care for and monitor the numerous problems that she has suffered and will suffer in the future as a result of Defendant's acts and omissions.

125. Plaintiff has suffered economic injury including health care costs, loss of earnings and other economic losses.

126. As a direct and proximate result of Defendant's conduct as alleged above, toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards can be found on Plaintiff's property and Plaintiff has been continuously exposed to same. The harm sustained by Plaintiff is of the type, which made Defendant's activities abnormally dangerous.

127. Defendant's toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards are hidden and not readily discernible. Defendant's activities, omissions and related conduct have proximately caused and continue to cause damage to Plaintiff in the form of increased risks of diseases and other adverse conditions. Defendant is liable for such damages, including all appropriate medical monitoring.

### COUNT IV – STRICT LIABILITY – FAILURE TO WARN

128. Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through one-hundred and three (103) of this Second Amended Complaint and said allegations are incorporated herein by reference.

129. Defendants, THE MOSAIC COMPANY and MOSAIC FERTILIZER, monitor and maintain data concerning pollution, including its intentional, incidental or accidental release of toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards at the Riverview Complex.

130.  Defendants know and have at all times relevant hereto known of the health risks to Plaintiff and others who are similarly situated, caused by its operations at the Riverview Complex.

131.  Defendants' activities at the Riverview Complex have imposed an unusual, significant and extraordinary risk of harm to Plaintiff presently and in the future.

132. Defendants have failed to warn or adequately warn Plaintiff of the unusual, significant and extraordinary risk of harm to her caused by its activities at the Riverview Complex.

133.  As a direct and proximate result of Defendants' failure to warn or adequately warn, Plaintiff has suffered substantial physical injuries, adverse health effects and mental anguish.  Plaintiff also sues for the physical impairments suffered in the past and which she will suffer in the future.

134. Plaintiff has sustained medical expenses in the past and will continue to incur future medical expenses in order to care for and monitor the numerous problems that she has suffered and will suffer in the future as a result of Defendants' acts and omissions.

135. Plaintiff has suffered economic injury including health care costs, loss of earnings and other economic losses.

## COUNT V – STRICT LIABILTY FOR VIOLATION OF PROHIBITED ACT PER SECTION 376.302, FLORIDA STATUTES

136.  Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through one-hundred and three (103) of this Second Amended Complaint and said allegations are incorporated herein by reference.

137.  Defendant MOSAIC FERTILIZER has engaged in a prohibited act in violation of Section 376.302(1)(a), Florida Statutes.

138.  Section 376.302(1)(a), Florida Statutes, prohibits the discharge of pollutants or hazardous substances into or upon the surface or ground waters of the state or *lands,* if such discharge is in violation of a State's Department of Environmental Protection standard, as defined in Section 403.803(13), Florida Statutes.

138. Defendant MOSAIC FERTILIZER, from 2008 to 2013, repeatedly violated the State of Florida's twenty-four hour sulfur dioxide standard.

139. Plaintiff RHONDA WILLIAMS has a private right of action for damages sustained to her person and her property as a result of the prohibited discharge, pursuant to Section 376.313(3), Florida Statutes.

140. Plaintiff RHONDA WILLIAMS, seeks damages for loss wages, past and future health care costs, diminished value to property and reasonable attorneys' fees, expert fees and costs, pursuant to Section 376.313(6), Florida Statutes.

## COUNT VI – MEDICAL MONITORING AND ENVIRONMENTAL TESTING

141. Plaintiff RHONDA WILLIAMS reiterates and re-alleges all the allegations contained in paragraphs one (1) through one-hundred and three (103) of this Second Amended Complaint and said allegations are incorporated herein by reference.

142. As a direct and proximate result of Defendant MOSAIC FERTILIZER'S acts, omissions and conduct as set forth above, Plaintiff has been exposed to toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards and as a result, Plaintiff suffers from the injuries as set forth above, including severe asthma, G6PD, pulmonary

disease, hypertension, kidney/renal difficulties, peripheral neuropathy and exacerbation of other medical conditions.

143. In addition, as a direct and proximate result of Defendant's acts, omissions, and conduct as set forth above, Plaintiff has a significant increased risk of contracting more serious injuries or latent disease directly and indirectly from necessary medical treatment. The increased risk makes periodic diagnostic medical examinations reasonably necessary.

144. Early detection and diagnosis of diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these conditions can often appear asymptomatic absent proper testing.

145. Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of injuries or disease possible and beneficial. For example, administration of the several readily available non-invasive tests readily diagnoses the presence of liver failure, respiratory ailments and heart dysfunction, even in asymptomatic individuals. Diagnosis of these diseases and conditions will allow prompt and effective treatment, which will reduce the risk of morbidity, and

mortality, which Plaintiff would suffer if treatment were delayed until her conditions became overly symptomatic.

146. The increased susceptibility to injuries and irreparable threat to Plaintiff's health resulting from her exposure to hazardous substances emanating from Defendant's sites can only be minimized, mitigated or addressed by the creation of a medical monitoring fund.

## DAMAGES

147. As a direct and proximate result of Defendant's tortious conduct as alleged above, Plaintiff RHONDA WILLIAMS has been injured by exposure to toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards. Plaintiff was damaged in the following particular ways and seeks to recover therefore:

a. Plaintiff has suffered and will continue to suffer great physical pain, loss of ability to work, and loss of enjoyment of life throughout her lifetime;

b. Plaintiff has incurred hospital, medical, pharmaceutical, and other expenses, and will continue to incur such expenses in the future due to the permanent nature of their injuries resulting from exposure to toxic

and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards, from which injuries she has suffered, now suffers and/or will continue to suffer in the future;

c. Plaintiff has suffered, now suffers and/or will continue to suffer physical impairment due to her injuries resulting from exposure to toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards;

d. Plaintiff suffers disability at this time and may become permanently or totally disabled in the future due to the progressive character of her injuries resulting from exposure to toxic and hazardous substances, radioactive isotopes, sulfur dioxide and other emitted hazards;

e. Plaintiff requires or will require domestic help and nursing care due to her disabilities and has been or will be required to pay for such domestic help and nursing services;

f. Because Defendant's conduct was intentional, malicious, grossly negligent and reckless, Plaintiff seeks compensatory and punitive damages, and all other damages that may be proven at the trial of this action.

148. The conduct of Defendant, as alleged herein, was a direct and proximate and producing cause of the damages resulting in Plaintiff's injuries, and general and special damages that Plaintiff has sustained.

## **PRAYER FOR RELIEF**

149. Plaintiff RHONDA WILLIAMS requests that she recover of the Defendant herein a sum exceeding $75,000.00; that the costs of this action be taxed to the Defendant; and for a TRIAL BY JURY.

Dated: December 8, 2014

Respectfully submitted,

COUNSEL FOR PLAINTIFF

By _____/S/_____
Laureen Galeoto, Esquire
Law Office of Laureen Galeoto, PLLC
511 W. Bay Street, Suite 350
Tampa, FL 33606
M. 813.280.9323
F. 813.433.5539

PRIMARY laureen@laureenlaw.com
SECONDARY info@laureenlaw.com

~ and ~

Mary Ellen Hogan, Esquire
THE GREEN COUNSELOR, PLLC
511 W. Bay Street, Suite 350

Tampa, FL 33606
M. 813.964.6515
C.  310.991.3146
PRIMARY maryellen@thegreencounselor.com
SECONDARY mehoganlaw@sbcglobal.net

~ and pending pro hac vice admission ~

William P. Walker, Esquire
WALKER MORGAN, LLC
135 E. Main Street
Lexington, SC 29072
M:  803.359.6194
F:  803. 957.4584
E:  bw@walkermorgan.com


CERTIFICATE OF SERVICE


I CERTIFY that on December __8_ 2014, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to

counsel of record.


__/s/ Laureen Galeoto_____

Counsel for Rhonda Williams