# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RHONDA WILLIAMS, a single person,

     Plaintiff,

                            Case No. 8:14-cv-01748-MSS-TGW

vs.

MOSAIC FERTILIZER, LLC, a Delaware
corporation doing business in Florida, and
THE MOSAIC COMPANY, a Delaware
corporation

     Defendants.

_____/

## MOSAIC FERTILIZER'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

     Plaintiff's Second Amended Complaint is fatally deficient.  First, it asserts preempted state law claims for exposure to chemicals that are comprehensively regulated under the federal Clean Air Act ("CAA").  Second, rather than alleging specific facts supporting plausible bases of liability, Plaintiff sets forth a hodgepodge of ambiguous accusations, legal conclusions, and causes of action which are not recognized under Florida law.  Among other things, the Second Amended Complaint (a) fails to sufficiently allege strict liability and medical monitoring; (b) impermissibly seeks damages for putative increased risk of future injury; and (c) fails to state a claim and improperly seeks personal injury damages under Chapter 376 of the Florida Statutes.  Accordingly, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Local Rule 3.01(a), Defendant, Mosaic Fertilizer, LLC ("Mosaic"), moves to dismiss Second Amended Complaint Counts I through VI, as more specifically set

forth below.

## PROCEDURAL BACKGROUND

Plaintiff, Rhonda Williams, filed a Complaint in Florida's Thirteenth Judicial Circuit on January 17, 2014. (Doc. 1-1.) Plaintiff did not serve the Complaint. Three and a half months later, Plaintiff filed an Amended Complaint, which she served on May 13, 2014. (Doc. 2.) Mosaic filed a motion to dismiss in state court and, when Plaintiff provided a basis for removal, Mosaic timely filed a Notice of Removal to this Court. (Doc. 1.) On December 8, 2014, Plaintiff filed a Second Amended Complaint ("SAC"). Consequently, the Court denied Mosaic's motion to dismiss Plaintiff's Amended Complaint as moot. (Doc 25.) Mosaic now files its Motion to Dismiss Plaintiff's Second Amended Complaint.

## PLAINTIFF'S ALLEGATIONS

In her SAC, Plaintiff alleges that she resides in the Progress Village community, which is located near Mosaic's phosphate fertilizer manufacturing facility in Riverview, Florida (the "Riverview Facility"). (SAC ¶ 2.) The Riverview Facility has operated since the 1950s, prior to the foundation of Progress Village. (SAC ¶¶ 18, 20.) The Riverview Facility is subject to permitting, emissions regulations, and emissions monitoring from regulatory authorities, including the Florida Department of Environmental Protection ("FDEP") and the U.S. Environmental Protection Agency ("EPA"). (*See, e.g.,* SAC ¶¶ 19-20, 38-39, 43, 55-57.)

Despite acknowledging the thorough regulation of Mosaic's emissions, Plaintiff alleges that the Riverview Facility's emissions are "poisoning" her and other unnamed residents of Progress Village. (SAC ¶ 37.) Plaintiff points to three categories of harmful

Greenberg Traurig, P.A.

emissions.  First, she claims that Mosaic's sulfur dioxide emissions occasionally exceed EPA standards.  (SAC ¶¶ 40, 42-43.)  Second, Plaintiff alleges harm from Mosaic's particulate matter emissions, which are regulated by the EPA and which she claims exceeded applicable standards in 2010.  (SAC ¶¶ 60, 65.)  Third, Plaintiff alleges exposure to hazardous air pollutants ("HAPs"), including arsenic, cadmium, chromium, lead, manganese, nickel, phosphorus, and radionuclides.[1]  (SAC ¶¶ 64, 69)  As Plaintiff acknowledges, the CAA regulates HAPs.  (SAC ¶ 61.)

Plaintiff alleges that her exposure to these three regulated emissions—sulfur dioxide, particulate matter, and HAPs—from the Riverview Facility has caused "severe symptoms of G6PD, associated pulmonary hypertension, asthma, peripheral neuropathy, and obstructive pulmonary disease . . ."  (SAC ¶ 82.)  She also alleges that the Riverview Facility emissions increased her risk of contracting cancer and heart disease in the future.  (*See, e.g.*, SAC ¶ 85, 111).  Finally, she alleges that the emissions have affected the value of her property.  (SAC ¶ 103.)

In Counts I (negligence) and II (gross negligence), Plaintiff alleges that Mosaic owed a duty to Plaintiff to design, operate, and implement "safer" policies at the Riverview Facility.  (SAC ¶¶ 105, 113.)  Plaintiff alleges that Mosaic breached that duty by emitting unsafe levels of sulfur dioxide, particulate matter, and HAPs and, as a result, she was injured.  (SAC ¶¶ 106, 111, 114, 119.)  In Count III, Plaintiff attempts to bring a strict liability cause of action against Mosaic, claiming that she was injured by its abnormally dangerous

---

[1] Plaintiff also generally refers to "air toxics," "airborne toxins," and "air toxins."  According to the materials that Plaintiff cites, these terms are synonymous with HAPs.  *See* Environmental Protection Commission for Hillsborough County, Air Monitoring and Assessments Air Quality Technical Report (2010).

Greenberg Traurig, P.A.

activities.  (SAC ¶¶ 120-127.)  In Count IV, Plaintiff alleges that Mosaic should be subject to strict liability for failure to warn because it knew of the risks from its emissions, SAC ¶ 129, but failed to warn Plaintiff of foreseeable health risks.  (SAC ¶ 132.)  In Count V, Plaintiff seeks personal injury and property damages, as well as attorneys' and experts' fees, for Mosaic's alleged violations under Florida's Water Quality Assurance Act.  (SAC ¶ 140.)  Finally, Plaintiff seeks medical monitoring (Count VI).  (SAC ¶¶ 141, 146.)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must include factual allegations that, when taken as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere legal conclusions—even if couched as factual accusations—are not taken as true.  *Id*.  Courts considering motions to dismiss must apply these principles by (1) first eliminating any allegations in a complaint that are merely legal conclusions, and then (2) determining whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010).  Factual allegations that are "merely consistent with" a defendant's liability—rather than plausibly suggesting such liability—do not suffice.  *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Greenberg Traurig, P.A.

## ARGUMENT

## I.    The CAA Preempts Plaintiff's claims.

The SAC attempts to supplant Congress's meticulous regulation of air emissions with a motley patchwork of state law tort claims. Indeed, Plaintiff explicitly predicates her claims on exposure to HAPs, sulfur dioxide, and particulate matter—all of which are defined pollutants governed by the federal CAA's comprehensive regulatory regime.[2]  (*See, e.g.*, SAC ¶¶ 59, 64, 65, 69.)  As this Court knows, field and conflict preemption principles prohibit individual claimants from wielding state law to usurp or circumvent clearly articulated Congressional prerogative.

"A field of state law . . . [is] preempted if 'a scheme of federal regulation ... [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"  *N. Carolina, ex rel. Cooper v. Tennessee Valley Auth.*, 615 F.3d 291, 303 (4th Cir. 2010) ("*TVA*") (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm.*, 461 U.S. 190, 204 (1983)).  In this case, the federal CAA represents a comprehensive statutory and regulatory scheme that establishes Mosaic's emissions standards.  Therefore, Plaintiff's claims should be dismissed.[3]

Plaintiff's claims are also invalid to the extent that they "actually conflict[] with a . . . federal statute."  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987) (quoting *Ray v.*

---

[2] The specific allegations regarding airborne emissions in Plaintiff's SAC identify HAPs, sulfur dioxide, and particulates. To the extent that Plaintiff attempts to assert injury from other unspecified airborne toxins, those claims must fail as matter of law.  A claim for exposure to unknown, unnamed, and unspecified chemicals cannot be plausible under *Twombly* and *Iqbal*.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

[3] Although the CAA contains a citizen suit savings clause, 42 U.S.C. § 7604(e), Plaintiff should not be allowed to use the savings clause to undermine the statute.  *TVA*, 615 F.3d at 304.  Plaintiff is doing just that—attempting "to replace comprehensive federal emissions regulations with a contrasting state perspective about the emission levels necessary to achieve those same public ends."  *Id.*

Greenberg Traurig, P.A.

*Atlantic Richfield Co.*, 435 U.S. 151, 158 (1978)).  Conflict preemption occurs when a state common law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Id.* at 491-92 (citation omitted).

> **a. The Environmental Protection Agency thoroughly regulates the very pollutants that form the basis of Plaintiff's Complaint.**

Congress regulates the environment through the myriad of programs, policies, and practices it puts in place.  *Am. Elec. Power v. Connecticut*, 131 S. Ct. 2527, 2539-40 (2011) ("*AEP*").  Air emissions are modulated by the CAA, which is an elaborate "regulatory scheme [that] is technical and complex . . . ."  *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 865 (1984); *see also AEP*, 131 S. Ct. at 2538.  Emissions from Mosaic are strictly governed by the CAA and accompanying federal and state regulations. Among other things, Mosaic must apply and qualify for, and thereafter maintain, a permit under the CAA, must submit to federal inspections and air monitoring, is required to periodically report emissions data to the federal or state government, and is subject to fines, enforcement actions, and other sanctions for any failure to comply with the CAA and concomitant regulations.  42 U.S.C. §§ 7661 (permitting), 7414 (monitoring), 7413 (enforcement).

The Environmental Protection Agency ("EPA") and its staff of specialized scientific experts regulate the HAPs emissions under section 112 of the CAA, and set National Ambient Air Quality Standards ("NAAQS") under section 109 of the CAA for particulate matter and sulfur dioxide.

EPA sets two NAAQS levels: a primary NAAQS at the level "requisite to protect the public health," with "an adequate margin of safety" and without regard to cost, 42 U.S.C.

6

§ 7409(b); and a secondary NAAQS at the level "requisite to protect the public welfare from *any* known or anticipated adverse effects." *Id.* (emphasis added). In setting and revising the NAAQS, EPA analyzes the entire suite of adverse health effects that may arise from exposure to regulated agents, including sulfur dioxide and particulates, two of the very compounds that Plaintiff complains of here. In fact—as Plaintiff points out—EPA performed such an analysis for sulfur dioxide less than five years ago. (SAC at ¶ 39.)

Once the EPA has established the NAAQS, states must prepare State Implementation Plans ("SIPs"), which mandate specific source emission reductions to achieve the NAAQS. *See* 42 U.S.C. § 7410. EPA must approve all SIPs. *See Mont. Sulphur & Chem. Co. v. EPA*, 666 F.3d 1174, 1181 (9th Cir. 2012) ("The Clean Air Act gives the EPA significant national oversight power over air quality standards, to be exercised pursuant to statutory specifications, and provides the EPA with regulatory discretion in key respects relevant to SIP calls and determinations about the attainment of NAAQS.").

In addition to setting health-and-public-welfare-based NAAQS, EPA also regulates emissions of 188 HAPs in the statute, including the substances Plaintiff alleges are causing her injuries. *See generally* 42 U.S.C. § 7412(b)(1). HAPs regulations are primarily technology-based, *see* 42 U.S.C. § 7412(d)(3), but EPA must establish more stringent emissions standards to address "residual risk" if public health is not protected with "an ample margin of safety." 42 U.S.C. § 7412(f)(2).

Finally, the CAA requires certain emissions sources, including Mosaic's Riverview Facility, to obtain operating permits. The permits must contain "enforceable emission limitations and standards, a schedule of compliance, [and] a requirement that the permittee

Greenberg Traurig, P.A.

submit to permitting authority, no less than every 6 months, the results of any required monitoring . . . ." 42 U.S.C. § 7661c(a).

      **b. Plaintiff's state law claims are preempted by federal regulation of the very agents which form the basis of her claims.**

Here, by bringing an action which hinges on Mosaic's emission of chemicals within the express purview of the EPA, Plaintiff asks the Court to second-guess the decisions of highly-trained administrators and set standards different from those promulgated by Congress's chosen instrument of enforcement. *See TVA*, 615 F.3d at 304-306 (articulating reasons why Congress entrusted the EPA, and not courts, with setting emissions standards). Plaintiff seeks damages that will effectively "compel the [emissions] source to adopt different control standards and a different compliance schedule from those approved by the EPA." *Int'l Paper Co.*, 479 U.S. at 495; *see also Perez v. Campbell,* 402 U.S. 637, 651-52 (1971) (it is the ***effect*** of any activity, not its ***purpose***, that steers preemption analysis). In other words, Plaintiff seeks *ad hoc* judicial regulation of particulate matter, sulfur dioxide, and HAPs, SAC ¶¶ 38-72, even though those emissions are explicitly governed by systematic EPA guidelines and articulated in Mosaic's permits.[4] *See TVA*, 615 F.3d at 303 (recognizing the "considerable potential mischief" in actions that seek to establish emissions standards that vary from federal and state regulatory laws).

Several federal courts faced with analogous facts have held that the CAA broadly preempts all state law claims. In *United States v. EME Homer City Generation L.P.*, 823 F. Supp. 2d 274 (W.D. Pa. 2011), Pennsylvania and New Jersey brought public nuisance claims against the owners and operators of a coal-fired plant for airborne emissions originating from

---

[4] In fact, Plaintiff cites alleged violations of the CAA. (*See, e.g.*, SAC ¶ 40.)

Greenberg Traurig, P.A.

those facilities. *Id.* at 276-77. Citing *TVA* and *AEP*, the court stated that the CAA represents a "comprehensive statutory and regulatory scheme[]" and held that state common law claims were preempted. *Id.* at 297.

*Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849 (S.D. Miss. 2012), involved a suit by plaintiffs damaged by Hurricane Katrina who alleged that their damages were the result of the defendants' greenhouse gas (GHG) emissions. *Id.* at 852. The plaintiffs' state law claims included negligence, public and private nuisance, and trespass. *Id.* Similar to Ms. Williams, the *Comer* plaintiffs alleged that "Defendants had and continue to have a duty to conduct their business in such a way as to avoid unreasonably endangering . . . public health . . ." and that they breached that duty by emitting GHGs, which—like sulfur dioxide and particulate matter—are CAA-regulated emissions. *Id.* at 864 (emphasis omitted). The court determined that the CAA preempts a judicial determination that GHG emissions levels were unreasonable because "those determinations had been entrusted by Congress to the EPA" through the CAA. *Id.* at 865. In other words, "the judgments the plaintiffs sought from federal judges could not be reconciled with the decision-making scheme enacted by Congress." *Id.*

Similarly, Plaintiff cannot interfere with Congress's rigorous regulatory framework for air emissions. In propounding and periodically amending its standards for HAPs, sulfur dioxide, and particulates, the EPA balances several competing criteria: technological feasibility, public health consequences, and the economic impact on industry and labor, to name but a few. 42 U.S.C. §§ 7409, 7412. To best serve those divergent interests, the EPA not only regulates current emissions of HAPs, sulfur dioxide, and particulates, but also

9

dictates timelines for reasonable compliance and establishes realistic long-term goals for emissions reduction. *See, e.g.,* 42 U.S.C. §§ 7502, 7471. For example, the State of Florida has five years from the designation of the non-attainment area for Mosaic to reach attainment (*i.e.*, conformity) with the 2010 sulfur dioxide regulations cited in Plaintiff's SAC. 42 U.S.C. § 7502. Further, the EPA has vast enforcement powers. 42 U.S.C. §§ 7413, 7420. With its global perspective on competing aims and in-house roster of experts, the EPA is in the optimal position to determine whether punitive enforcement of an air emissions violation is warranted or whether mitigating circumstances counsel against enforcement. Moreover, where enforcement is pursued, the EPA can assess the quantum and type of sanction which best promotes the public good.

Plaintiff invites the Court to discard the nuanced federal regulatory apparatus and unilaterally determine, among other things, (a) whether Mosaic should be subject to strict liability for its regulated emissions; (b) whether Mosaic's containment measures and regulated operations—much of which were conducted in consultation with state and federal environmental authorities—constitute negligence; and (c) whether the level of Mosaic's emissions were reasonable. This is precisely the result that the doctrines of field and conflict preemption seek to avoid.

Plaintiff's own SAC acknowledges the absurdity that would flow from recognition of her state law claims. For example, Plaintiff alleges that Mosaic is increasing the height of its Riverview stacks in order to disperse "poison" over a broader swathe of the Tampa region. (SAC ¶ 58.) In reality, Mosaic is raising the Riverview stacks in order to comply with the EPA's most recent sulfur dioxide standard by EPA's deadline. As Plaintiff points out in her

Greenberg Traurig, P.A.

SAC, ¶ 58, regulatory authorities have been intimately involved in Mosaic's proposal to heighten the stacks. What Plaintiff fails to allege is that those same authorities, after public notice, recently agreed to a plan and schedule for raising the sulfuric acid production stacks to ensure compliance with NAAQS. *See* FDEP Draft Permit No. 0570008-080-AC.

Should Plaintiff proceed with her state law claims, she would be entitled to argue to any trier of fact that Mosaic is liable for raising its stacks and further dispersing its "poisons," even though this is the exact course of action approved by regulators after very careful consideration. Similar conflicts would be unavoidable. Plaintiff contends that Mosaic is liable for historical failure to comply with the EPA's sulfur dioxide limits since 2010, although the EPA specifically grants Florida, in coordination with Mosaic, five years to reach attainment. 42 U.S.C. § 7502. Plaintiff alleges that Mosaic is liable for emissions of HAPs, which are regulated by the EPA, SAC ¶¶ 61-63, but, tellingly, does not allege EPA has taken any enforcement action against Mosaic—nor could she accurately do so. Plaintiff alleges that Mosaic is liable for emissions of regulated particulates, although the EPA regulates that genre of chemicals as well, SAC ¶ 65, but fails to allege that EPA has taken enforcement action against Mosaic. In short, Plaintiff's SAC attempts to jettison Congress's multifaceted and equitable environmental regulatory scheme in favor of one of her own making.

Accordingly, the entire SAC should be dismissed with prejudice.

**II.     Alternatively, the Court should stay this action in deference to the primary jurisdiction of the EPA and FDEP because it raises issues that are uniquely within the expertise and discretion of environmental regulatory agencies.**

The federal primary jurisdiction doctrine is concerned with protecting the administrative process from judicial interference. *Boyes v. Shell Oil Prods., Inc.*, 199 F.3d

11

Greenberg Traurig, P.A.

1260, 1265 (11th Cir. 2000) (citing *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). "It is 'a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.'" *Id.*, 199 F.3d at 1265 (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). "'[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.'" *Id.* (quoting *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1310 (2nd Cir. 1990)).

Similarly, Florida's primary jurisdiction doctrine "dictates that when a party seeks to invoke the original jurisdiction of a trial court by asserting an issue which is beyond the ordinary experience of judges and juries, but within an administrative agency's special competence, the court should refrain from exercising its jurisdiction over that issue until such time as the issue has been ruled upon by the agency." *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1037 (Fla. 2001). The deference required by the primary jurisdiction doctrine enables the Court to benefit from the agency's expertise, protects the integrity of the regulatory scheme administered by the agency, and promotes consistency and uniformity in areas of public policy. *Id.* Although the federal and Florida primary jurisdiction doctrines are similar and have common roots, to the extent they differ, Florida decisions control in this diversity case.[5]

---

[5] *See Mills v. Davis Oil Co.*, 11 F.3d 1298, 1304 (5th Cir. 1994); *Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 242 (7th Cir. 1989); *Sher v. Raytheon Co.*, No. 8:08-cv-889-T26, 2008 WL 2756570, at *2 n.11 (M.D. Fla. July 14, 2008); *Reudy v. Clear Channel Outdoor, Inc.*, No. 02-cv-5438-SC, 2009 WL 1108519, at *2 n.3 (N.D. Cal. Apr. 24, 2009).

*Flo-Sun* involved a lawsuit against companies engaged in the cultivation, harvesting, and processing of sugar cane in South Florida. The plaintiffs sought to enjoin the defendants' activities as a public nuisance and to recover compensatory damages. Concluding that the relief sought would require the court to substitute its judgment regarding the environmental laws, rules, regulations, and standards under which the defendants' activities were regulated for the judgment of the responsible agencies, and to do so without the necessary technical expertise, the trial court dismissed the complaint with prejudice under the primary jurisdiction doctrine. 783 So. 2d at 1032–33.

The Florida Supreme Court agreed that the primary jurisdiction doctrine clearly counseled in favor of having an administrative agency resolve the complex issues raised in the case, in part because (1) the Florida Legislature had established a comprehensive regulatory scheme to address issues arising in connection with the preservation and protection of the environment; (2) that legislative scheme was implemented by voluminous regulations containing extensively detailed, scientific criteria, and was enforced by agencies which had the experience and expertise required to address the technical matters in the case, and whose decisions were subject to a process of petition, hearing, and formal review— including judicial review—under the Florida Administrative Procedure Act; and (3) those issues were not easily understandable by trial judges and juries. Under the circumstances, the primary jurisdiction doctrine required postponement or suspension of judicial consideration of the complex technical issues in the case until they had been presented to the appropriate agencies. *Id*. at 1039–40. However, the Court determined that the complaint should not have been dismissed with prejudice, because the primary jurisdiction doctrine requires the court,

Greenberg Traurig, P.A.

not to dismiss on the merits, but to suspend or postpone adjudication until the appropriate administrative agency addresses the relevant issues. *Id*. at 1038, 1041.

The same conditions that mandated application of the primary jurisdiction doctrine in *Flo-Sun* exist here. The issue of whether Mosaic's emissions are appropriate lies squarely within the special competence of environmental regulatory agencies. Thus, deference is required to preserve the integrity of federal and Florida environmental regulation and uniformity in an unusually complex and important area of the law.

As discussed more fully above, the CAA establishes a comprehensive administrative scheme to regulate and monitor Mosaic's air emissions. Under that scheme, EPA and FDEP—through the CAA's SIP program—are charged with setting emissions standards, approving Mosaic's permits, inspecting the Riverview Facility, and reviewing emissions data. As Mosaic's ongoing interactions with local, state, and federal regulators (*e.g.*, SAC ¶¶ 41, 44, 53-58) make clear, Mosaic's air emissions are thoroughly regulated by these agencies, and it would be improvident for a court to address this issue.

Allowing this type of action to proceed in its current posture—without the benefit of a record reflecting EPA and FDEP's expertise—would significantly undermine the ability of these agencies to implement the Clean Air Act in the way that Congress and the Florida legislature intended. Actions that bypass the administrative process and effectively impose emissions limits without the expertise of EPA and FDEP threaten the operations of facilities permitted under the CAA. On the one hand, these facilities are subject to the permitting powers and enforcement authority of EPA and FDEP. On the other hand, the facilities could

14

be subject to potentially inconsistent obligations stemming from lawsuits such as this one, leaving operators confused in an area of law that is already quite complex.

In short, deference to the FDEP and EPA is required to obtain their expertise on complex technical questions primarily assigned to them, to protect the integrity of the administrative schemes created by federal and state legislatures, and to promote consistency and uniformity.

**III. Plaintiff fails to state a claim for strict liability by failing to allege the requisite elements.**

Plaintiff attempts to allege a claim for strict liability based on Mosaic's half-century of regulated and permitted operations at the Riverview facility. (SAC at ¶¶ 18-20.)

To plead strict liability for an abnormally dangerous activity, however, Plaintiff must properly allege multiple elements.

> To determine if an activity is abnormally dangerous, the following factors are considered:
>
> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Greenberg Traurig, P.A.

*Peoples Gas Sys. v. Posen Constr., Inc.*, No. 2:11-cv-231-FTM-29SPC, 2011 WL 5525346, *3 (M.D. Fla. Nov. 14, 2011) (citing Restatement (Second) of Torts § 520 (1977)) (granting a motion to dismiss on a strict liability count for failure to state a claim).

Plaintiff has failed to allege the above factors: (c) an inability to eliminate the risk through reasonable care, (e) that the activity is inappropriate to the place where it was carried on, or (f) that its value to the community is outweighed by its dangerous attributes. Thus, Plaintiff has alleged no set of facts that, even if accepted as true, would be sufficient to maintain a strict liability cause of action for an abnormally dangerous activity. Nor could Plaintiff allege plausible facts supporting a claim for strict liability even if she were given yet another opportunity to amend her complaint. For example, she cannot allege that phosphate manufacturing is inappropriate at the Riverview Facility, which is located at a shipping port adjacent to one of the world's largest phosphate reserves, and has carried on permitted activities since the 1950s. (SAC ¶ 18, Exhibit A.) Similarly, Plaintiff cannot plausibly allege that the Riverview Facility's value to the community is outweighed by its dangerous attributes. As the website Plaintiff cites to points out, SAC ¶ 92, Mosaic's facilities are indispensable because they make essential crop nutrients that farmers in the U.S. and greater world rely on to produce enough food to sustain the planet's steadily growing population. http://mosaicco.com/Who_We_Are/mission_and_values.htm.

Plaintiff fails to make even conclusory allegations as to these strict liability elements, other than to advance the legal conclusion that Mosaic was engaged in "abnormally dangerous activities." (SAC at ¶ 121.) This is insufficient to allege strict liability. Accordingly, Count III should be dismissed with prejudice.

Greenberg Traurig, P.A.

**IV. Plaintiff fails to state a claim for medical monitoring by failing to allege its elements.**

Plaintiff also fails to properly allege a claim for medical monitoring, which comprises the following elements:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106-07 (Fla. 3d DCA 1999); *see also Jacobs v. Osmose, Inc.*, No. 01–944–CIV, 2002 WL 34241682 (S.D. Fla. Jan. 2, 2002) (dismissing a medical monitoring claim for failure to allege the *Petito* elements); *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 640 (Fla. 3d DCA 2006).

Here, for example, Plaintiff fails to allege, that (1) she has suffered "exposure greater than normal background levels" of a purported hazardous substance, (6) "the prescribed monitoring regime is different from that normally recommended in the absence of the exposure," or (7) "the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles."

Plaintiff fails to state a claim for medical monitoring and, therefore, Count VI should be dismissed.

Greenberg Traurig, P.A.

## V. Plaintiff fails to state a claim for strict liability failure to warn.

There is no authority in Florida recognizing a claim for strict liability failure to warn outside the products liability context. *See, e.g., Thomas v. Bombardier Recreational Products, Inc.*, 682 F. Supp. 2d 1297, 1300-01 (M.D. Fla. 2010); *McConnell v. Union Carbide Corp.*, 937 So. 2d 148 (Fla. 4th DCA 2006); *Kohler Co. v. Marcotte*, 907 So. 2d 596 (Fla. 3d DCA 2005*); Griffin v. Kia Motors Corp.*, 843 So. 2d 336, 339 (Fla. 1st DCA 2003); *see also Scott v. Thunderbird Indus., Inc.*, 651 P.2d 1346, 1348 (Okla. Civ. App. 1982) (holding that a cause of action for strict liability failure to warn could be brought only by a "user or consumer").

Moreover, even if a strict liability failure to warn action were permitted outside of the products liability setting, Plaintiff does not properly allege its elements. "A product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous." *In re Standard Jury Instructions in Civil Cases—Report No. 09-10 (Products Liab.)*, 91 So. 3d 785, 796 (Fla. 2012); *see also Jozwiak v. Stryker Corp.*, No. 6:09-cv-1985-Orl19GJK, 2010 WL 743834, at *7 (M.D. Fla. Feb. 26, 2010). Plaintiff fails to allege the following requisite elements: (a) Defendant manufactured a product and placed it into the stream of commerce; (b) ***the product*** caused Plaintiff to suffer an injury, and (c) an adequate warning would have prevented the injury. Plaintiff merely alleges that Mosaic failed to warn her of the "health risks to Plaintiff and others who are similarly situated, caused by its ***operations*** at the Riverview Complex." (SAC ¶ 130.) (emphasis added).

18

Plaintiff's claim cannot be cured. Therefore, Count IV should be dismissed with prejudice.

**VI.    Plaintiff's claims should be dismissed to the extent that they improperly seek damages for increased risk of future injury.**

Plaintiff alleges that, as a result of Mosaic's emissions, she "has suffered and *will continue to develop direct and indirect adverse health effects resulting in significant harm and excess risk of developing diseases including cancer*." (SAC ¶¶ 111, 119; *see also* SAC ¶¶ 85, 119, 122, 127, 131, 147 (alleging enhanced risk of developing future diseases.)) (emphasis added).

Under Florida law, a plaintiff cannot recover economic damages for the enhanced risk he or she will contract a disease. *Eagle–Picher Indus., Inc. v. Cox*, 481 So. 2d 517 (Fla. 3d DCA 1985); *see also Landry v. Florida Power & Light Corp.*, 799 F. Supp. 94, 96 (S.D. Fla. 1992) *aff'd sub nom. Landry v. Florida Power & Light*, 998 F.2d 1021 (11th Cir. 1993). Prohibiting plaintiffs from recovering for increased risk of disease promotes judicial economy by discouraging plaintiffs from filing anticipatory lawsuits. *Cox*, at 521. In order to recover such damages, the plaintiff must "await the actuality of cancer" or other future disease. *Id*. Therefore, Counts I through IV should be dismissed with prejudice to the extent that they improperly seek recovery for Plaintiff's purportedly increased risk of future injury.

**VII.   Count V should be dismissed for failure to state a claim and to the extent Plaintiff seeks damages related to personal injury.**

Plaintiff improperly brings a private cause of action in Count V under Section 376.302, Florida Statutes. (SAC ¶¶ 137-38.) However, none exists. Under Section 376.302

Greenberg Traurig, P.A.

"any person who commits a violation specified in subsection (1) is liable to the **state** for any damage caused[]" § 376.302(2), Fla. Stat. (emphasis added).

To the extent, Plaintiff is attempting to state a cause of action under Section 376.313, she cannot recover damages for personal injury. Plaintiff seeks to recover damages under Count V for "los[t] wages, past and future health care costs, diminished value to property and reasonable attorneys' fees, expert fees and costs . . . ." (SAC ¶ 140). However, the Florida Supreme Court recently clarified that plaintiffs can only recover damages under Chapter 376 for "the documented extent of any destruction to or loss of any real or personal property, or the documented extent, pursuant to s. 376.121, of any destruction of the environment and natural resources, including all living things *except human beings*, as the direct result of the discharge of a pollutant." *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216, 1221 (Fla. 2010) (citing § 376.031(5)) (emphasis added). Therefore, Count V should be dismissed with prejudice to the extent that Plaintiff seeks damages for personal injury. (*See, e.g.*, SAC ¶¶ 139 ("damages sustained to her person"), 140 ("los[t] wages, past and future health care costs").)

## CONCLUSION

For the reasons described above, Counts I through VI should be dismissed.

**(Attorney's Signature Appears on Following Page)**

20

Date: December 26, 2014

/s/ David B. Weinstein
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Chelsae R. Johansen (FBN 0106029)
johansenc@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 26, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ David B. Weinstein
Attorney

*TPA 511979281*