UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RHONDA WILLIAMS, a single person,
     Plaintiff,

v.                                      Case No. 8:14-cv-1748-T-35TGW

MOSIAC FERTILIZER, LLC, a Delaware
Corporation doing business in Florida, and
THE MOSAIC COMPANY.
     Defendants.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT MOSAIC FERTILIZER'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Plaintiff Rhonda Williams ("Ms. Williams," "Williams," or "Plaintiff") responds to Defendant Mosaic Fertilizer, LLC's ("Mosaic") Motion to Dismiss the Second Amended Complaint ("Motion") and states:

## INTRODUCTION

Ms. Williams has lived all of her 53 years in a community that is literally in the shadow of Mosaic – from its manufacturing processes belching sulphur dioxide to the 350 feet high "stacks" of phosphogypsum waste that emit particulates and toxic air contaminants that uncontroverted science has proven damages lungs and makes people sick simply by living in their own community. The Second Amended Complaint ("SAC") sufficiently pleads allegations to support her contentions under Florida law. See Peoples Gas System v. Posen Construction, Inc., No.2:11-cv-231-FTM-29SPC, 2011 U.S. Dist. LEXIS 131088 (M.D. Fla Nov. 14, 2011), citing Ashcroft v. Iqbal, 129 S.Ct.1937 (2009).

## <u>Argument</u>

Mosaic's primary attack on the Second Amended Complaint ("SAC") is its argument that Ms. Williams' Florida state law tort claims seeking redress for her serious personal injuries are preempted by the Federal Clean Air Act ("CAA"). Motion at pps. 5-11. Mosaic's rhetoric asserts that Ms. Williams' causes of action will compel it to adopt different control standards and a different compliance schedule from its current permits. Such hyperbole ignores the fundamental procedural posture of a personal injury lawsuit.

In this case Ms. Williams is demanding compensation from Mosaic for direct injury to her person from decades of an airborne physical assault of toxic substances produced from Mosaic's facilities, whether such emissions were permitted by regulatory agencies or not. This is not a CAA "citizens suit" asking for civil or criminal penalties for noncompliance with an air pollution permit, nor is it a demand for Mosaic to abate a public or private nuisance. This case is based on straightforward, state tort law concepts alleging personal injury that are not subject to preemption by federal environmental law, by any stretch of the law.

In short, there are three forms of defensive preemption: express preemption, field preemption and conflict preemption. <u>Retail Property Trust v. United Broth. Of Carpenters & Joiners of America,</u> 768 F. 3d 938 (9th Cir. 2014); <u>Farina v. Nokia</u>, 625 F.3d 97 (3d Cir. 2010). We infer from Mosaic's Motion that express preemption is not at issue in this case. So we turn to Mosaic's arguments for field and conflict preemption. Mosaic argues first that the CAA constitutes a "comprehensive statutory and regulatory

scheme" developed by Congress that justifies preemption and second, that the doctrine of "conflict preemption" applies based on the view that state common law tort claims conflict with and are therefore an obstacle to the objectives of the CAA. Motion, pps. 5-6.

Mosaic weakly relies on two district court opinions as dubious legal authority to establish its erroneous principle that the "CAA broadly preempts <u>all</u> state law claims." Brief in Support, p.8. (emphasis added). <u>U.S. v. EME Homer City Generation LP</u>, 823 F. Supp.2d 274 (W.D. Penn 2011); Comer v. Murphy Oil USA, Inc., 839 F.Supp.2d 849 (S.D. Miss. 2012). Neither of Mosaic's cited cases so broadly hold.

Ms. Williams asserts that contrary to Mosaic's position, that under prevailing appellate case law, the CAA does not preempt all state law tort claims like hers. Significantly, Mosaic fails to discuss, let alone distinguish, a key Third Circuit opinion that is directly on point holding that CAA does <u>not</u> preempt state law tort claims. <u>Bell v. Cheswick Generating Station</u>, 734 F.3d 188 (3rd Cir. 2013). <u>Bell</u> expressly relies on a comprehensive federal preemption analysis by the U.S. Supreme Court under the savings provisions of the Clean Water Act and holds that those savings provisions are directly analogous to savings provisions in the Clean Air Act, citing <u>International Paper Co. V. Ouellette,</u> 479 U.S. 481, 107 S. Ct. 805, 93 L.Ed. 2d 883 (1987). <u>Bell</u> at 197. According to <u>Bell</u>, and based on the Supreme Court's analysis in <u>Ouellette</u> that stands behind it, Mosaic's Motion based on federal preemption must be denied.

Also absent from Mosaic's Motion is any reference to the fact that Florida regulations applicable to air pollution permit holders like Mosaic specifically preserve Ms. Williams' right to pursue her tort action against Mosaic unimpeded by preemption

rhetoric. So it should come as no surprise to Mosaic that its permitted emissions – the very particles at issue in this case – are not shielded by Mosaic's air pollution permits from being the cause of liability for personal injury.

Mosaic's Riverview facility currently holds a Clean Air Act Title V Operating Permit issued by the State of Florida with approval by the U.S. Environmental Protection Agency. See Mosaic's Motion at p. 5. Title V Operating permits contain specific language and conditions that are prescribed by regulation. As an example, F.A.C. 62-4.160(5) requires that that Mosaic's Title V Air Pollution Permit contain a clause stating that the permit "… does not relieve the permittee from <u>liability for harm or injury to human health</u> or welfare, animal or plant life, or property <u>caused by the</u> construction or <u>operation of this permitted source</u>…" Mosaic, as a signatory to its permit, is therefore on notice of the limitations of the legal protections afforded by the Title V permit. Thus, Mosaic cannot use its permit as a shield against common law liability for personal injury claims. For these reasons and the other arguments in the subsequent sections, Mosaic's Motion to Dismiss on the basis of preemption, or failure to state a claim must be denied.

**A.  The holding and comprehensive legal analysis in Bell expressly considers and rejects, Mosaic's arguments that the CAA preempts state common law torts.**

The <u>Bell</u> case was a class action filed by residential property owners living close to the Cheswick Generating Station. These owners alleged "several state law tort theories[1]" against GenOn, Cheswick's owner, for damages from contaminants from GenOn's smokestacks that blanketed their properties. Like Mosaic, GenOn argued that because the Cheswick was subject to comprehensive regulation under the Clean Air Act,

---

[1] The three common law theories were (1) nuisance, (2) negligence and (3)recklessness and trespass.

it owed no extra duty to the plaintiffs under state tort law. Bell at 189. The district court agreed and dismissed the case holding that common law claims are preempted by the Clean Air Act because they are inconsistent with the extensive and comprehensive regulations promulgated by the regulatory authorities.[2]

On appeal of the dismissal to the Third Circuit, Judge Fuentes reversed, stating that "[b]ased on the plain language of the Clean Air Act and controlling Supreme Court precedent, we conclude that such source state common law actions are not preempted." 734 F3d at p. 190. The conclusion in Bell applies directly to the preemption arguments made by Mosaic. Mosaic's Motion to Dismiss on the basis of preemption must be denied.

The key to the Third Circuit's decision is the savings clauses of the Clean Air Act and the Supreme Court's analysis of nearly identical saving clauses in another comprehensive environmental control law, the Clean Water Act, in International Paper Co. v. Ouellette, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Ouellette was brought by citizens from Vermont suing International Paper in Vermont state court for emissions from its paper mill located in nearby New York State. The court distinguished between the laws of the pollution source (New York, the "source state") and the laws of the affected state (Vermont, the "affected state"). The Supreme Court found that "nothing in the [Clean Water Act] bars aggrieved individuals from bringing a nuisance claim pursuant to the laws of the source state." Id. at 497, 107 S.Ct. 805. In other words, if Vermont citizens sued International Paper in New York under New York law, the Vermont citizens' suit would not be preempted by the CAA. This is so, the Court

---

[2] Unlike Ms. Williams, the plaintiffs in Bell asserted that GenOn has violated its air pollution control permit.

explained, because by its terms, the Clean Water Act allows states "…to impose higher standards on their own point sources," and "this authority may include the right to impose higher common-law as well as higher statutory restrictions." Oulette at 497, 107 S.Ct. 805.

The Supreme Court also acknowledged and summarily dismissed what Mosaic argues is conflict preemption, that is that a state's nuisance law may impose separate standards and thus create some tension (or conflict) with a comprehensive permit system like the CAA's. In the Supreme Court's analysis, this "tension" was insufficient to find preemption since the tension would not frustrate the goals of the Clean Water Act (i.e., cleaner water) because the pollution source "only is required to look to a single additional authority, whose rules should be relatively predictable." Id., at 498-500, 107 S.Ct. 805.

The Third Circuit's opinion in Bell takes the Supreme Court's analysis in Ouellette and applies it to the saving clauses in the CAA.[3] The Court's textual comparison between the savings clauses in both acts "demonstrates there is no meaningful distinction between them," 734 F3d at p. 95, thereby rejecting GenOn's argument that the savings clauses of the Clean Water Act are broader than the clauses in the CAA. See also, *Clean Air Act Preemption of State Common Law: Greenhouse Gas Nuisance Claims After AEP v. Connecticut,* 99 Va. L. Rev. 131, 150 (2013), Her Majesty the Queen in Right of Province of Ontario v. City of Detroit, 874 F. 2d 332, 342-344, (6th

---

[3] Mosaic's lone reference to the CAA's citizen suit savings clause is a passing reference in Footnote 3. There Mosaic argues that "Plaintiff should not be allowed to use the saving clause to undermine the CAA," citing the TVA case discussed supra, Motion at 5. While it is unclear how invoking the savings clause to preserve common law rights "undermines" the Act, it is fair to say that Congress drafted the savings clause as an integral part of the CAA and its use where appropriate cannot fairly be characterized as "undermining" the Act.

Cir. 1989), and <u>North Carolina ex. rel Cooper v. Tennessee Valley Authority,</u> 615 F. 3d

291, 304 (4th Cir. 2010).  Without a meaningful difference between the savings clauses in

the two statutes, the Third Circuit determines that the Supreme Court's decision in

<u>Ouellette</u>[4] is controlling law and that the Clean Air Act does not preempt state common

law claims. 734 F.3d at 198.

    With striking clarity Judge Fuentes further opined that  "… the suit here, brought by

Pennsylvania residents under Pennsylvania law against a source of pollution located in

Pennsylvania, is not preempted."  734 F.3d at 197.  The case at bar is similarly brought

by a Florida resident under Florida law against a source of pollution located in Florida.

Applying the holding in <u>Bell,</u> this case is not preempted by the CAA. Thus, Mosaic's

Motion must be denied.

   **B.   Mosaic's case law in support of its preemption argument is distinguishable**
   **on the facts and the law.**

    Mosaic cites two district opinions in direct support of its argument that the CAA

broadly preempts all state law claims; <u>U.S. v. EME Homer C</u>ity, 823 F.Supp2d 274

(W.D. Pa. 2011) [EME Homer City] and <u>Comer v. Murphy Oil USA, Inc</u>., 839 F.Supp.2d

849 (S.D. Miss. 2012)   Both of these district court opinions were decided before <u>Bell,</u>

and both are distinguishable factually and legally from the case at bar and fail to provide

viable support for Mosaic's preemption argument.

    <u>EME Homer City</u> is an enforcement case brought by the United States against

various owner/operators of a coal fired power plant in Pennsylvania for violations of the

---

[4] Ironically, Mosaic cites to <u>Ouellette</u> for the proposition that Ms. Williams' claims are invalid to the extent
they conflict with a federal statute without identifying the actual conflict.  Brief at 5-6.

Clean Air Act.  New York and New Jersey  intervened to join the fray, along with the

Commonwealth of Pennsylvania's Department of Environmental Protection (PDEP).

PDEP and New York asserted a common law public nuisance claim.  823 F.Supp.2d at

278.  So the field of state law at issue in <u>EME Homer City</u> is a public nuisance claim

brought by the state[5].

The district court found preemption of state law claims, but not of "all" state law

claims as reported by Mosaic in its brief,[6] but <u>only</u> the public nuisance claim.  Careful

examination of Judge McVerry's finding shows he does not use the broad brush Mosaic

implies.  His ruling is based on the particular procedural posture of the case: it is a CAA

enforcement case brought by the federal and various state governments.  He focuses on

the role and authority of the PDEP as the sovereign and regulator in the CAA regulatory

scheme at issue.  In pertinent part, the opinion states:

> "In this case, it is clear that both the federal CAA and the Pennsylvania Air
>
> Pollution Control Act represent comprehensive statutory and regulatory schemes
>
> that establish the standards by which grandfathered power plants must reduce
>
> their emissions of air pollutants.  Pennsylvania has a statutorily defined role
>
> through the SIP [State Implementation Plan] and permitting process.
>
> Accordingly, common law public nuisance claims are preempted and will be
>
> dismissed."

---

[5] The court notes that these common law and Pennsylvania statutory claims "were not thoroughly developed (citing Intervenors' Brief at pp. 43-44) and they essentially track the federal claims." <u>EME Homer City</u> at 294.

[6] Mosaic's cite to <u>EME Homer City</u> is succinct.  After a one sentence description of the case, Mosaic quotes the court's citation to two cases stating that the CAA was a "comprehensive statutory and regulatory scheme" whose holding was characterized as "state common law claims [plural] were preempted." (emphasis added) Motion at 8-9.

823 F.Supp.2d at 297.

In stark contrast, Ms. Williams is not a sovereign state or commonwealth with the power to regulate pollution sources like power plants and phosphate manufacturing facilities. She has no statutorily defined role in developing Florida's State Implementation Plan. She is powerless to sue Mosaic to enforce alleged violations of its air pollution permits to the extent that Mosaic asserts it is in full compliance with its air pollution permits. Motion at p. 6. Equally significant, there is <u>no public nuisance count</u> in her SAC. So it is abundantly clear that the difference in facts between <u>EME Homer City</u> case and this case are stark indeed. For these reasons, the district court's preemption ruling on a government's public nuisance claim has no precedential value against Ms. Williams' common law tort claims, particularly in light of the 3rd Circuit holding in <u>Bell</u>. Therefore <u>EME Homer City</u> cannot stand as one of the two legal legs to support Mosaic's preemption argument.

The other second leg to Mosaic's preemption argument meets a similar fate, but for different reasons. In <u>Comer</u> the plaintiffs alleged property damage arising from Hurricane Katrina was caused by various oil, coal and manufacturing companies' greenhouse gas emissions ("GHG"). Plaintiffs alleged various state law causes of action including public and private nuisance, trespass and negligence. 839 F.Supp2d at 854. At the time of Hurricane Katrina, as well as at the time the complaint was filed in 2011, there were no GHG emission limitations of any sort imposed on the various defendants' emissions.[7] After specifically finding that all the plaintiffs claims were barred by the

_____

[7] <u>See</u> 839 F.Supp2d at fnt 11.

doctrines of res judicata and collateral estoppel, as well as determining that the plaintiffs lacked standing to even bring their claims, the district court added its <u>dicta</u>-like pronouncement on preemption.  To that end, the Court determined that the lawsuit was asking for a judicial determination of whether the defendants' emissions were reasonable. Citing <u>American Electric Power Co. v. Connecticut</u>, ___ U.S. ____, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011), the court expressed concern that the plaintiffs were "calling upon the federal courts to determine what amount of carbon-dioxide emissions is unreasonable as well as what level of reduction is practical, feasible and economically viable.", Without further preemption legal analysis, the <u>Comer</u> court summarily found the entire property damage lawsuit preempted by the CAA.

Apart from the district court's utter lack of comprehensive federal preemption analysis, the facts in <u>Comer</u> are readily distinguishable from the case at bar.  Unlike <u>Connecticut</u> and <u>Comer</u>, Ms. Williams is not asking this Court to develop, implement and enforce new emission standards for Mosaic not already regulated by the federal and state governments.  Nor is Ms. Williams asking for a determination of the reasonableness of Mosaic's emissions from its operations.  These distinctions negate the finding of preemption and fall far short of the comprehensive preemption analysis and reliance on Supreme Court precedent in <u>Bell</u>.

Moreover, other courts have followed <u>Bell's</u> reasoning and conclusions.  For example, in a case remarkably similar to this one, a district court citing Bell held that the claims of property owners suing a whiskey distillery for negligence, nuisance and trespass were not preempted by the CAA.  <u>Merrick v. Diageo Americas Supply, Inc.</u>, 5

F.Supp3d 865 (W.D. Ky. 2014). Other cases finding no CAA preemption of common law claims include In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 725 F.3d 65 (2d Cir. 2013) and Cerny v. Marathon Oil Corp., 2013 WL 5560483 (W.D. Tex. Oct. 7, 2013). The Supreme Court of Iowa was likewise persuaded to follow Bell in Freeman v. Grain Processing Corporation, 848 N.W.2d 58 (Iowa 2014).

The few cases deciding that *some* state common law tort claims are preempted include Comer, EME Homer City and North Carolina ex rel Cooper v. Tenn. Valley Auth., 615 F.3d 291 (4th Cir. 2010)["TVA"]. All were decided before Bell.

Since Mosaic sporadically peppers its argument with quotations from TVA, another public nuisance preemption case, a brief discussion is in order. In TVA, North Carolina brought a public nuisance action against the power plants operated by the TVA in Alabama and Tennessee. TVA appealed a far-reaching injunction wherein the district court imposed emissions caps and emission control technologies on TVA's power plants after finding that the power plants created a public nuisance in North Carolina.

The 4th Circuit's stated that it was not holding that Congress entirely preempted the field of emission regulation, and that there was no "flat out" preemption of every conceivable nuisance lawsuit. Nonetheless, the TVA court was willing to preempt this specific nuisance lawsuit because the lower court had actually established emission standards different from federal and state regulatory law. Few cases could be farther from the case at bar factually. TVA represented a battle among sovereign states over dueling regulatory programs estimated to cost billions of dollars., It remains a far cry from Ms. Williams simple personal injury lawsuit seeking damages from Mosaic.

But the contrast between <u>TVA</u> and the case at bar sheds critical light on the histrionics of Mosaic's Motion. Mosaic alleges that Ms. Williams' seeks damages that "will effectively 'compel the [emissions] source to adopt different control standards and a different compliance schedule from those approved by EPA," citing <u>Ouellette</u>. Motion at p. 8. Furthermore, according to Mosaic, Plaintiff purports to seek ad hoc judicial regulation of chemicals like <u>TVA</u>, and asks the Court to second-guess the decisions of highly trained administrators and set standards different from those promulgated by Congress' administrative agency. <u>Id</u>. Nothing could be farther from the truth. Should Mosaic be found liable for Ms. Williams' health issues, past, present and future, Mosaic can simply pay for, as an element of her damages, her relocation beyond the territory impacted by the Mosaic emissions that cause and exacerbate her ailments. Recognizing this simple fact takes all the wind out from under Mosaic's arguments decrying the adverse impact of this lawsuit on its permit and the entire CAA regulatory structure.

In conclusion, Ms. Williams believes that the weight of well-reasoned authority on the CAA federal preemption of state law claims are in her favor and there is no CAA preemption of her common law claims. So Mosaic's Motion must be denied.

**C.  <u>Mosaic's argument that this case should be stayed in deference to the primary jurisdiction of FDEP and EPA is confusing and misplaced</u>.**

After more than eleven pages of argument, Mosaic still misunderstands, or perhaps misconstrues, the thrust of Ms. Williams' personal injury lawsuit. After a detailed discussion of the primary jurisdiction doctrine in Florida and the parameters of the <u>Flo-</u>

<u>Sun v. Kirk,</u> 783 So. 2d 1029 (Fla. 2001),[8] Mosaic urges this court to suspend or postpone adjudication of this case until "the appropriate administrative agency addresses the relevant issues, " whatever those relevant issues may be.  This is so, argues Mosaic, because the "issue of whether or not Mosaic's emissions are <u>appropriate</u> lies squarely within the special competence of environmental regulatory agencies."  (emphasis added).

But the fundamental issue in this case is not whether Mosaic's emissions are "appropriate," whatever that term means, in the eyes of a regulatory authority, this Court, or the public.  The fundamental issue is whether Mosaic's emissions, be they "appropriate" or not, caused personal injury to Ms. Williams during the lifetime she has lived in the shadow of Mosaic's Riverview facility.  We see no reason why this issue cannot be addressed in this court.  We found no case holding that adjudication of causation in personal injury actions is within the statutory or regulatory purview of EPA, FDEP or any environmental regulatory authority.  After all, this is not a case challenging a permit or a regulatory definition of Best Available Control Technology or Florida's State Implementation Plan. Contrary to <u>Flo-Sun</u> and Mosaic, this case will not require the court to substitute its judgment regarding environmental laws, rules, regulations and standards. <u>Flo-Sun v. Kirk,</u> 783 So. 2d 1029 (Fla. 2001).  It is true, however, that this court may have to understand or perhaps interpret these laws, regulations and standards. Yet it is undisputed that statutory interpretation is one of the primary tasks of a federal district court.

---

[8] We also note that <u>Flo-Sun</u> was a <u>public nuisance</u> case, not an action for personal injury damages.

It is also manifestly unclear what exactly Mosaic would envision the FDEP and/or EPA to do even assuming <u>arguendo</u> that the matter could be stayed under <u>Flo-Sun</u> and referred to one or both of them. It is undisputed that Mosaic's Riverview facility operates under a variety of air pollution control permits. Are one or both agencies to hold a hearing to determine the "appropriateness" of Mosaic's emissions under those permits? What is the standard at issue? Who holds that hearing and under what statutory or regulatory authority? Are any findings binding on this court? There are many questions, but Mosaic provides no answers to such an extraordinary demand. This leaves Ms. Williams to conclude that this argument is a desperate pass, that if caught, could get this case out of this court at least temporarily before motion practice, discovery and ultimately trial takes place in the public eye to determine whether Mosaic is responsible as a matter of law for damages caused by its emissions.

Furthermore, if Mosaic is truly concerned about having the benefit of a record reflecting EPA and FDEP's expertise, then by all means Mosaic can call on these experts to testify at trial and create such a record assuming their testimony is relevant and admissible on the issues being tried. There is no requirement, nor basis to stay the case and remand it based on this dubious concern that can be easily remedied at trial.

**D. <u>Ms. Williams has stated a cause of action for strict liability in Count III.</u>**

Citing <u>Peoples Gas System</u>, Mosaic asserts that Ms. Williams must allege a "number of elements" to establish strict liability for an abnormally dangerous activity and lists those elements listed in the opinion. The court in <u>Peoples Gas System</u>, however, did not characterize these items as "elements," rather they are listed in the decision as

"considerations" to assist the court in determining liability. *Id*. The better description of the essential components of a strict liability claim is found in the Restatement of Torts that states: "The defendant's enterprise, in other words, is required to pay its way by compensating for the harm it causes, because of its special, abnormal and dangerous character." Restatement (Second) of Torts § 519 cmt. d (1977).

Mosaic admits in its brief that Ms. Williams has plead that Mosaic was engaged in "abnormally dangerous activities." The actual allegations in Count III, however, assert much more than Mosaic admits. For example, Ms. Williams' claims that the intentional, incidental or accidental release of hazardous substances and toxic air contaminants onto her property impose an "unusual, significant and extraordinary risk of harm" to her now and in the future. SAC, ¶122. What makes Mosaic's emissions unusual is the fact that they are hidden to Ms. Williams and not readily discernable, yet have significant, serious and adverse affects on her health. SAC, ¶127.

In addition, contrary to Mosaic's arguments, the other considerations mentioned in Peoples Gas System are also incorporated in Count III as follows:

- Paragraphs 53, 54 and 55 allege that there are radionuclides emitted by Mosaic through its phosphogypsum dust that increase one's chances of getting cancer, which is clearly a "harm that from it is great."

- Paragraphs 16 and 18 allege the Riverview Complex's releases of toxic air contaminants in such proximity to Progress Village community so as to

demonstrate the inappropriateness of the activity (Riverview Complex and its

stacks) to the place where it is carried out (Progress Village).

Consequently, under the liberal pleading rules under Rule 12(b)(6), Ms. Williams has

sufficiently pled a cause of action for strict liability. The allegations in Count II

unequivocally put Mosaic on notice of what the claim is and the grounds for asserting it.

The additional details in the pleadings only serve to bolster Ms. Williams' argument that

strict liability has been adequately pled.

### E.  Williams has pled a cause of action for medical monitoring.

Mosaic's argument that Count VI of the SAC must be dismissed is based upon

Plaintiff's alleged failure to plead a number of "elements" of a cause of action for

medical monitoring set forth by the court in Petito v. A.H. Robins Co., 730 So.2d 103

(Fla. Ct. App. 1999).  Petito is one of the so-called class action Phen-Phen cases where

plaintiffs claimed that exposure to a weight loss drug put them at increased risk of

developing cardiac and circulatory ailments.  In those cases, the Third District appellate

court held that there is a cause of action in Florida for medical monitoring.  Id. at 108.

So turning now to the question of whether Ms. Williams' allegations are sufficient,

the starting point under Federal Rules 12(b)(6) is liberal, notice pleading.  In Court VI

she has alleged that Mosaic's acts, omissions and conduct are the proximate cause of her

exposure to various hazardous substances and air toxins.  SAC, ¶142.  Furthermore, as a

result of this exposure, she has alleged a significantly increased risk of more serious

injury and latent disease as a result of her treatment, as well as her initial exposure. SAC,

¶143.  Finally, she has alleged the existence of several non-invasive tests that detect the

presence of liver failure, respiratory ailments and heart dysfunction even in asymptomatic individuals. SAC, ¶145. These allegations clearly and unequivocally provide Mosaic with the requirements for pleadings elucidated in <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S Ct. 99, 103, 2 L Ed. 2d 28 (1957), that is notice of what the claim is and the grounds on which it rests.

**F.  <u>Ms. Williams has properly alleged a claim for strict liability failure to warn</u>**

Florida law unequivocally states that, "[W]hen a set of facts will support both a theory of common law negligence and strict liability, a plaintiff is entitled to proceed on either theory or both." See <u>Baione v. Owens-Ill., Inc.,</u> 599 So. 2d 1377, 1379 (Fla. 2nd DCA 1992), citing <u>Ford Motor Co. v. Hill,</u> 404 So. 2d 1049 (Fla. 1989).  Here Ms. Williams has a right to assert and has asserted both.

<u>Baione</u> is instructive.  In <u>Baione</u>, the plaintiff, a sailor, was exposed to products on a ship that were made with the by-product asbestos.  On a motion to dismiss, the court determined that the allegations of exposure to the by-product were sufficient to overcome a challenge to the strict liability failure to warn claim.  Id. at 1377-1379. Comparatively, Ms. Williams has alleged that she has been exposed to the hazardous by-product of Mosaic's primary manufactured product, phosphoric acid, a fertilizer product.   See also <u>Ferayorni v. Hyundai Motor Co.,</u> 711 So. 2d 1167, 1169 (Fla. 4th DCA 1998)(Explaining that the doctrine of strict liability has evolved to compliment the traditional theories of negligence).   In addition, Mosaic's Motion fails to cite to authority in Florida that would prohibit Ms. Williams' strict liability failure to warn claim.  *McConnell v. Union Carbide Corp.,* 937 So. 2d 148 (Fla. 4th DCA 2006), is one such example of a case that

further supports, and not hinder, Ms. Williams contention.  There as here, defendant had

a duty to warn of a hidden by-product, asbestos, and the defendant could not hide behind

a future supplier of other intermediary once the product hit the market.  Further, like

asbestos, Mosaic's emissions are known to be dangerous and hazardous.  See the

McConnell court's discussion of comment *n* to section 388 of the RESTATEMENT

(SECOND) OF TORTS at Id. at 155 – 156.

 The SAC clearly alleges that Mosaic is in the business of manufacturing

phosphoric acid, and that the emissions created by that manufacturing process have

caused severe harm, which could have been prevented upon adequate warning to Ms.

Williams, and the public at large.  Such risk was known or knowable to Mosaic, thus

creating strict liability for its deceitful and failure to warn actions.  Thus Mosaic's Motion

to Dismiss Count IV must be denied.

### G.  Ms. Williams' damages claims for injuries caused by Mosaic are properly stated.

 Mosaic briefly argues without explanation that Florida law prohibits Ms. Williams'

claim for future injury.   This argument fails for several reasons.  First, in stark contrast to

the present matter, the authority relied upon by Mosaic is procedurally at a more

advanced stage, substantially after a claim for future injury has had an opportunity to be

developed and testimony presented on the likelihood of occurrence.  See Eagle-Picher

Indus., Inc. v. Cox, 481 So. 2d 517 (Fla. 3rd DCA 1985) (Challenge to future damages

submitted at trial); and Landry v. Florida Power & Light Corp., 799 F. Supp 94 (S.D. Fla.

1992) (Challenge to the likelihood of future damages at the summary judgment stage).

Second, an analysis of the case relied on by Mosaic, <u>Cox</u>, demonstrates a clear distinction and a limitation to a certain set of facts not present here. Briefly, <u>Cox</u> analyzed the generally accepted rule against splitting causes of action and allowing an injured part to bring one claim for recovery of all damages resulting from an incident, regardless of whether some may be prospective. Specifically, <u>Cox</u> decided the issue of whether an asbestosis plaintiff must wait to seek damages for cancer until he/she actually contracts cancer. Id. at 520. In doing so, the <u>Cox</u> court noted that it is widely accepted in the scientific community that cancer is not an outgrowth of asbestosis. Id. at 521. Thus, <u>Cox</u> found that in the instance of asbestosis plaintiffs, allowing damages for a future cancer claim encouraged needless litigation contrary to the essence and purpose of the general rule against splitting causes of action. Id. at 522-523.

Relevant to the case at hand is <u>Swain v. Curry</u> 595 So. 2d 168, 170-172 (Fla. 1st DCA 1992), which limits <u>Cox</u> to asbestosis type claims. In so doing, the <u>Swain</u> court rejected an argument similar to Mosaic's and found the trial court erred in finding no "present cause of action for increased risk of cancer, for a decreased chance of survival, or for reduction in life expectancy." Id. at 172. The <u>Swain</u> court went on to conclude that "with regard to increased risk of cancer, Florida law clearly provides damages for any bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life to be experienced in the <u>future.</u>" [Emphasis added]. Id. at 172.[9] Ms. Williams'

---

[9] Relying on relying on <u>Taylor Imported Motors Inc., v. Smiley,</u> 143 So. 2d 66 (Fla. 2nd DCA 1962); <u>Griffing Bros. Co. v. Winfield,</u> 43 So.687 (Fla. 1907), <u>Baggett v. Davis,</u> 169 So. 362 (Fla. 1936); <u>Smith v.</u>

contends that as in <u>Swain</u> splitting her causes of action now would be error. This Court must allow the development and evidence of the likelihood of future injury and deny Mosaic's request to strike future damages.

### H. **Plaintiff's claim under Chapter 376, Florida Statutes is valid.**

Mosaic does not challenge the veracity or sufficiency of Count V, but rather challenges one aspect of damages sought, e.g., "lost wages, past and future health care costs…" Motion at p. 20. Ms. Williams agrees that she has a right to damages to her property, and other fees and costs allowed under the statute, but not personal injury under the particular statutory scheme.

## <u>CONCLUSION</u>

For the arguments and reasons stated above, Mosaic's Motion to Dismiss the Second Amended Complaint must be denied.

Dated: January 9, 2015

*/s/ Laureen Galeoto*
| | | |
|---|---|---|
| Laureen Galeoto, Trial Counsel | Mary Ellen Hogan | William P. Walker |
| FBN 0194107 | The Green Counselor, PLLC | Walker Morgan, LLC |
| Law Office of Laureen Galeoto, PLLC | 511 W. Bay Street, Suite 350 | 135 E. Main St. |
| 511 W. Bay Street, Suite 350 | Tampa, FL 33611 | Lexington, SC 29072 |
| Tampa, FL 33611 | P. 813.964.6515 | P. 803.359.6194 |
| P. 813.280.9326 | maryellen@thegreencounselor.com | bw@walkermorgan.com |
| Laureen@laureenlaw.com | | |

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that the foregoing has been electronically filed with the Clerk of the Court pursuant to the CM/ECF on this 9th day of January 2015, which will send electronic notice to counsel of record.

---

<u>Bagwell</u>, 19 Fla. 117 (Fla 1882); <u>Pendarvis v. Pfeifer</u>, 182 So. 307 (Fla. 1938); <u>Butler v. Lomelo</u>, 355 So. 2d 1208 (Fla. 4th DCA 1977); <u>Fraysier v. U.S.</u>, 566 F. Supp 1085 (S.D. Fla. 1983).