**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

RHONDA WILLIAMS, a single person,

    Plaintiff,

v.

                                          Case No. 8:14-cv-01748-MSS-TGW

MOSAIC FERTILIZER, LLC, a Delaware
corporation doing business in Florida, and
THE MOSAIC COMPANY, a Delaware
corporation

    Defendants.
_____/

**THE MOSAIC COMPANY'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff's Second Amended Complaint, recently served on The Mosaic Company (Mosaic Fertilizer's parent), is fatally deficient. First, Plaintiff fails to plead any basis for parent liability—*i.e.,* that The Mosaic Company is liable for the torts of its subsidiary, Mosaic Fertilizer. Therefore, Counts I, II, and IV must be dismissed. Second, Plaintiff fails to state a claim for strict liability for failure to warn. For that reason as well Count IV must be dismissed. Accordingly, The Mosaic Company moves to dismiss Second Amended Complaint Counts I, II, and IV under Rule 12(b)(6), Federal Rules of Civil Procedure, and Local Rule 3.01(a).

**PROCEDURAL BACKGROUND**

Plaintiff, Rhonda Williams, filed a Complaint in Florida's Thirteenth Judicial Circuit on January 17, 2014, against Mosaic Fertilizer. (Doc. 1-1). Plaintiff never served the

original Complaint. Three and a half months later, on May 13, 2014, Plaintiff filed an Amended Complaint and served only Mosaic Fertilizer. (Doc. 2). Mosaic Fertilizer filed a motion to dismiss in state court and, when Plaintiff provided a written basis for removal, Mosaic Fertilizer filed a Notice of Removal to this Court. (Doc. 1). More than six months later, on December 8, 2014, Plaintiff filed a Second Amended Complaint (Doc. 24; "SAC"), first naming The Mosaic Company as a defendant. However, Plaintiff did not serve The Mosaic Company until four months later on March 4, 2015. Despite her delay, Plaintiff has failed to state a claim upon which relief can be granted against The Mosaic Company, as set forth in more detail below.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that she resides in the Progress Village community, a neighborhood northeast of Mosaic Fertilizer's phosphate fertilizer manufacturing facility in Riverview, Florida, which Plaintiff describes as the "Riverview Complex." (SAC ¶ 2). The Riverview Complex has operated under the control of other companies since the 1950s, long before the development of Progress Village. (SAC ¶¶ 18, 20).

Plaintiff alleges, among other things, (1) the Riverview Complex is ***Mosaic Fertilizer's*** "manufacturing facility," (2) "***Mosaic Fertilizer*** has actively conducted business operations" at the Complex, and (3) "***Mosaic Fertilizer's*** Riverview Complex . . . emissions" have harmed her. (SAC ¶¶ 3, 4, and 37) (emphasis added).

Disregarding her repeated allegations that Mosaic Fertilizer—and not its parent, The Mosaic Company—operates the Riverview Complex, Plaintiff nonetheless attempts to allege in Count I (negligence) and Count II (gross negligence) that, in addition to its subsidiary, The

2

Mosaic Company also owed a duty to Plaintiff to design, operate, and implement "safer" policies at the Riverview Facility and breached that duty by emitting pollutants that allegedly injured her. (SAC ¶¶ 105, 106, 111, 113, 114, and 119). In addition, in Count IV, Plaintiff attempts to allege that The Mosaic Company is strictly liable for failure to warn because it knew of the risks from emissions from Mosaic Fertilizer's Riverview Complex (SAC ¶ 130), but failed to warn Plaintiff of foreseeable health risks. (SAC ¶ 132).

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions—even if couched as factual accusations—are not taken as true. *Id*. Courts considering motions to dismiss must apply these principles by (1) first eliminating any allegations in a complaint that are merely legal conclusions, and then (2) determining whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Critically, factual allegations that are "merely consistent with" a defendant's liability—rather than plausibly suggesting such liability—do not suffice. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

# ARGUMENT

## I. Plaintiff Fails to Plead Parent Liability Against The Mosaic Company.

Under Florida law, a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities. *GalenCare, Inc. v. Mosley*, 59 So. 3d 138, 143 (Fla. 2d DCA 2011) (citing *Am. International Group, Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004)). Thus, absent an exception, a parent corporation is ***not*** liable for torts committed by its subsidiary. *Id.* As the United States Supreme Court has made clear:

> It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Clark v. Ashland, Inc.*, No. 2:13-CV-794-FTM-29, 2014 WL 2199643, at *3 (M.D. Fla. May 27, 2014).

The only limited exceptions to this bedrock principle of law require a plaintiff to allege facts sufficient to support a plausible claim of (a) alter ego sufficient to "pierce the corporate veil;" (b) vicarious liability based on agency principles; or (c) direct liability where the parent directly participated in the wrong complained of. *See Christie v. Bank of Am., N.A.*, No. 813-CV-1371-T-23TBM, 2014 WL 5285987, at *5 (M.D. Fla. Oct. 15, 2014). Here, Plaintiff has failed to plead any such facts—plausibly or otherwise—and cannot do so consistent with Rule 11.

On the contrary, Plaintiff alleges that The Mosaic Company (a) mines "***through its subsidiaries***," and (b) that the Riverview Complex is operated by "***Mosaic Fertilizer***." (SAC ¶ 13) (emphasis added). Plaintiff does not allege facts showing that The Mosaic Company owed a duty to Plaintiff separate from any duty owed by its subsidiary, Mosaic Fertilizer.

Plaintiff's allegation that The Mosaic Company is the parent entity of Mosaic Fertilizer—which alone operates the facility—does not establish parent liability for the purported acts of the subsidiary. On the contrary, it establishes that the "deeply ingrained" "general principle of corporate law" articulated by the Supreme Court in *Bestfoods* applies. Thus, The Mosaic Company enjoys the liability protections afforded to parent corporations.

> **A.** **Plaintiff fails to allege (a) Mosaic Fertilizer is a mere instrumentality of The Mosaic Company, or (b) The Mosaic Company engaged in improper conduct through Mosaic Fertilizer.**

"Florida law allows a party to pierce the corporate veil and hold a parent corporation liable for its subsidiary's actions [*only*] if it can demonstrate (1) 'that the subsidiary was a 'mere instrumentality' of the parent,' and (2) 'that the parent engaged in 'improper conduct' through its organization or use of the subsidiary.'" *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005). For "the parent corporation, to be liable for its subsidiary's acts under the . . . agency theory, [it] must exercise control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998); *see also Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 120 (Fla. 3d DCA 2011) (to establish an agency relationship, "a 'high and very significant' level of control exerted by the parent over the subsidiary's actions must be demonstrated").

Plaintiff, however, alleges neither mere instrumentality nor improper conduct through the subsidiary. Instead, Plaintiff alleges that The Mosaic Company "was incorporated . . . to serve as the parent company of the business . . . ." (SAC ¶ 4). This is evident from Plaintiff's allegation that Mosaic Fertilizer operates the Riverview Complex—not The

Mosaic Company. (SAC ¶ 2). Plaintiff alleges that "***Mosaic Fertilizer*** is the successor in interest to the fertilizer and crop nutrient operations at the Riverview Complex." (SAC ¶ 6) (emphasis added). And, titles to headings in her SAC refer to "***Mosaic Fertilizer's*** Operations," "***Mosaic Fertilizer's*** Dangerous and Ultra Hazardous Impact," and "***Mosaic Fertilizer's*** Fingerprint." Further, while Plaintiff alleges that The Mosaic Company mines phosphate rock "through its subsidiaries," Plaintiff again alleges only that ***Mosaic Fertilizer*** processes the phosphate rock (SAC ¶ 13), brings in molten sulfur (SAC ¶ 17), creates and stockpiles "phosphogypsum waste" (SAC ¶¶ 15-16), emits sulfur dioxide (SAC ¶¶ 42, 59), emits particulate matter (SAC ¶ 60), and emits "radioactive isotopes" (SAC ¶ 70). It is clear from the SAC that Plaintiff only states claims against Mosaic Fertilizer and fails to allege parent liability as to The Mosaic Company.[1]

Nowhere in the SAC does Plaintiff state that Mosaic Fertilizer was a "mere instrumentality" of The Mosaic Company or that The Mosaic Company engaged in improper conduct sufficient to pierce the corporate veil—let alone allege sufficient facts to make any such claims ***plausible***. Moreover, not only does Plaintiff fail to allege Mosaic Fertilizer had "no separate corporate interests of its own," *Am. Tobacco*, 707 So. 2d at 855, her allegations show exactly the opposite:

> At its Riverview Complex, Mosaic Fertilizer through its manufacturing, chemical processing and handling, and waste disposal, processes and produces among other things, sulfuric

---

[1] Where Plaintiff attempts to allege otherwise she fails. For example, Plaintiff's conclusion—unsupported by any factual allegations—that "THE MOSAIC COMPANY . . . had a duty to exercise reasonable care in the design, operation, and policies implemented to safely produce phosphoric acid, sulfuric acid, fluoride products, ammoniate phosphates and animal feed phosphates and to safely dispose of by-product waste, including phosphogypsum" (SAC ¶ 105) is insufficient to plausibly allege parent liability. See *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

acid, phosphoric acid, fluoride products, ammoniate phosphates and animal feed phosphates.

(SAC ¶ 11; *see also* ¶¶ 2, 3) ("At all times material hereto, Mosaic Fertilizer has actively conducted business operations in . . . Florida"). Courts have not hesitated to dismiss a parent corporation from a lawsuit in these circumstances. *See Gillespie v. HSBC N. Am. Holdings, Inc.*, No. 5:05-cv-362-Oc-10GRJ, 2006 WL 2735135, at *5 (M.D. Fla. Sept. 25, 2006) (dismissing claims against parent where there were no allegations demonstrating control over the subsidiary or vicarious liability); *see also Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1347 (S.D. Fla. 2009) (dismissing claims against parent where plaintiffs failed to allege that subsidiaries were instrumentalities of the parent or that improper conduct was used in subsidiaries' formation).

### B. Plaintiff fails to allege direct liability as to The Mosaic Company.

As the United States Supreme Court has made clear, only in cases where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management" and "the parent is directly a participant in the wrong complained of," will the parent be "directly liable for its own actions." *Bestfoods*, 524 U.S. at 64-65. Therefore, direct liability is imposed only when the parent has "forced the subsidiary to take the complained-of action in disregard of the subsidiary's distinct legal personality." *Pearson v. Component Tech. Corp.*, 247 F. 3d 471, 487 (3d Cir. 2001).

Plaintiff makes *no allegation*—let alone states a plausible claim—that The Mosaic Company, through its management and personnel, forced Mosaic Fertilizer to take any actions regarding operations at the Riverview Complex. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 945 (S.D. Cal. 2007) (finding direct participation of a parent

Greenberg Traurig, P.A.

corporation not sufficiently alleged where the facts cited in the complaint "merely show[ed] a close business relationship in terms of the entities' close identification with each other"). Indeed, Plaintiff does not allege a single fact regarding how The Mosaic Company forced Mosaic Fertilizer to operate the Riverview Complex in a purportedly negligent manner.

Plaintiff has not alleged—and cannot consistent with Rule 11 allege—parent liability as to The Mosaic Company. Accordingly, this Court should dismiss Counts I, II, and IV of the Second Amended Complaint as to Mosaic Fertilizer's parent corporation, The Mosaic Company.

## II. Plaintiff fails to state a claim for strict liability for failure to warn as to The Mosaic Company.

Plaintiff alleges in SAC Count IV that "Defendants" failed to warn her of the "health risks to Plaintiff and others who are similarly situated, caused by its *operations* at the Riverview Complex." (SAC ¶¶ 130, 132) (emphasis added).[2] Fatal to this claim, however, is that Florida does *not* recognize a claim for strict liability for failure to warn except in a products liability case, which, of course, this is not. *See, e.g., Thomas v. Bombardier Recreational Products, Inc.*, 682 F. Supp. 2d 1297, 1300-01 (M.D. Fla. 2010); *In re Standard Jury Instructions in Civil Cases—Report No. 09-10 (Products Liab.)*, 91 So. 3d 785, 796 (Fla. 2012) (plaintiff stating a cause of action for strict liability must allege that "the foreseeable risks of harm from the *product* could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings

---

[2] Moreover, Plaintiff's allegations in Count IV to the effect that The Mosaic Company conducts "operations" or "activities at the Riverview Complex, SAC ¶¶ 130, 132, are *entirely inconsistent* with a plethora of allegations in the SAC's operative facts—all of which she incorporates into Count IV—that it is, instead, Mosaic Fertilizer that operates the Riverview Complex and conducts its operations and activities. *See, e.g.,* SAC , ¶¶ 2, 3, 4, 11, 13, 15, 16, 17, 37, 42, 59, and 70.

makes the ***product*** unreasonably dangerous") (emphasis added); *McConnell v. Union Carbide Corp.*, 937 So. 2d 148 (Fla. 4th DCA 2006); *Kohler Co. v. Marcotte*, 907 So. 2d 596 (Fla. 3d DCA 2005*); Griffin v. Kia Motors Corp.*, 843 So. 2d 336, 339 (Fla. 1st DCA 2003); *see also Scott v. Thunderbird Indus., Inc.*, 651 P.2d 1346, 1348 (Okla. Civ. App. 1982) (holding that a cause of action for strict liability failure to warn could be brought only by a "user or consumer").

Plaintiff has previously argued that *Baione v. Owens-Illinois, Inc.*, 599 So. 2d 1377 (Fla. 2d DCA 1992), supports her ability to maintain a strict liability cause of action against Mosaic. In *Baione*, the plaintiff, who worked on U.S. Navy ships, alleged injuries from exposure to asbestos. *Id.* at 1378. The defendant in *Baione*, however, was the manufacturer of the asbestos-containing ***product*** that had been installed on the ships. *Id.* at 1378. Contrary to Plaintiff's position, *Baione* supports the exact opposite proposition—that a cause of action for strict liability for failure to warn can only be brought by a user or consumer of a ***product***.

The case on which the Court previously relied in denying Mosaic Fertilizer's motion to dismiss Count IV is similarly distinguishable. *Ferayorni v. Hyundai Motor Co.,* 711 So. 2d 1167 (Fla. 4th DCA 1998) *rev'd and remanded,* 795 So. 2d 126 (Fla. 4th DCA 2001) *decision quashed, cause remanded,* 822 So. 2d 502 (Fla. 2002). In *Ferayorni,* the estate of a deceased brought failure to warn claims against a car manufacturer after the car's seatbelt caused the deceased's death. *Id.* at 503. While Florida's Fourth District of Appeal allowed an implied strict liability failure to warn claim, it only did so in the products liability context. *Id.* at 1170 ("a ***product*** may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning") (emphasis added).

Plaintiff has not—and cannot—allege The Mosaic Company manufactured a product she has used and that harmed her. Accordingly, Plaintiff fails to plead a claim for strict liability for failure to warn as to The Mosaic Company.

## CONCLUSION

For the reasons described above, and because Plaintiff cannot cure her pleadings, this Court should dismiss Plaintiff's claims against The Mosaic Company with prejudice.

Date: March 25, 2015

/s/ David B. Weinstein
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Chelsae R. Johansen (FBN 0106029)
johansenc@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Counsel for The Mosaic Company*

## CERTIFICATE OF SERVICE

I certify that on March 25, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ David B. Weinstein
Attorney

*TPA 512006875*