UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RHONDA WILLIAMS, a single person,
     Plaintiff,

v.                        Case No. 8:14-cv-1748-T-35TGW

MOSIAC FERTILIZER, LLC, a Delaware
Corporation doing business in Florida
.
     Defendant.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESSES OR ALTERNATIVELY TO COMPEL COMPLIANT DISCLOSURES (DOC. 42)

Plaintiff Rhonda Williams ("Ms. Williams," "Williams," or "Plaintiff"), hereby

responds to Defendant Mosaic Fertilizer, LLC's ("Defendant" or "Mosaic"), Motion to

Exclude Expert Witnesses or Alternatively to Compel Complaint Disclosures, (hereafter,

"Motion"), and states:

### ARGUMENT

On May 1, 2015 Ms. Williams produced her expert disclosures ("Disclosures").

See Exhibit "A" to the Motion.   Ms. Williams' Disclosures specifically identified four

retained and nine non-retained experts.  Mosaic attacks Ms. William's retained experts,

Mr. Ungers and Dr. Mink, on the grounds that neither expert's report purportedly

complies with the requirements of FED. RULE CIV. PRO. 26(A)(2)(B)(I) and (ii).  We note

from the outset that Mosaic does not attack these experts on the basis of insufficient

qualifications as set forth in their expert reports.  Indeed neither Mr. Ungers nor Dr. Mink

have ever been challenged under Rule 26 during the course of their testimonial careers,

nor have they been successfully challenged by motion to exclude testimony pursuant to

*Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed

2d 469 (1993).

Ultimately, Mosaic's Motion must be denied because both experts' reports

comply with the requirements of Rule 26 to describe the bases and reasoning for each

expert opinion.

Separately, Mosaic attacks Ms. Williams' entire non-retained expert Disclosures.

Mosaic's main contention with these non-retained experts is two-fold.  First, that Ms.

Williams did not provide a sufficient "summary of facts and opinions" and second, that

the experts cannot testify as to causation or prognosis without producing a Rule

26(a)(2)(B) report.  See Motion at 10-11.   For the reasons stated herein, both of these

arguments fail.

> **I.       Ms. Williams has Fully Complied with her Rule 26 Reporting
> Obligations as it Concerns Mr. Ungers and Dr. Mink and Defendant
> has Wholly Failed to Demonstrate Otherwise**

Reading Mosaic's Motion, absent the exhibits, one might assume that Ms.

Williams is an egregious actor who wholly disregarded her Rule 26 disclosure

requirements.   Peppered with an assortment of cases where parties completely failed to

disclose, or disclosed experts but no opinions or very sketchy opinions, or disclosed

opinions by referencing interrogatory responses, or made disclosures weeks after the

close of discovery, and so on, Mosaic's Motion has woefully discolored the reality.   In

stark contrast to each of those cases, upon review of the reports by Mr. Ungers and Dr.

Mink, one quickly sees that Ms. Williams has taken her reporting obligations very

seriously and has fully complied with Rule 26.   Without question, Ms. Williams agrees

with the rule stated in *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th

Cir. 2005), that "an expert opinion must set forth facts" and in doing so, "outline a line of

reasoning arising from a logical foundation."  However, Ms. Williams also understands,

as illuminated in other cases cited by Mosaic, that her experts' reports need not "replicate

every word that the expert might say on the stand."  See <u>Porto Venezia Condo Ass'n v.</u>

<u>WB Fort Lauderdale, LLC</u>, 2012 U.S. Dist LEXIS 186963, 10 (S.D. Fla. Aug. 19, 2012),

quoting, <u>Metavante Corporation v. Emigrant Savings Bank,</u> 619 F.3d 748, 762 (7th Cir.

2010).  As set-forth below and as evidenced in the experts' reports themselves, Mosaic's

motion to exclude Ms. Williams' experts falls short and must be denied.

   **a.**     **Mr. Ungers' Expert Report Complies with Rule 26 Because he
            Sufficiently and Succinctly Describes the Basis and Reasoning for his
            Expert Opinions.**

   Defendant's Motion is quite lengthy with its discussion of the case law under

Rule 26, but very brief with its analysis of exactly how Mr. Ungers' report falls short of

Rule 26's legal standards.  There are only two instances where Mosaic has specifically

compared a statement (or lack thereof) in Mr. Ungers' report to the requirements of Rule

26.  First, Mosaic asserts that "Mr. Ungers's [sic] report fails to disclose the basis and

reasons for his opinions."  Brief, p. 2.  Then, after broadly asserting that Mr. Ungers fails

"in any way" to set forth facts and outline a line of reasoning arising from a logical

foundation, Mosaic cites one (and only one) example of this purported massive failure.

Mosaic first erroneously asserts that Mr. Ungers' comparison between surface soils in Ms. Williams neighborhood and typical Florida soils lacks bases and reasons, the "how" and "why, and is totally unsubstantiated.  To the contrary, Mr. Ungers' scientific underpinning for this statement is, in fact, meticulously presented in a reference cited in Mr. Ungers' expert report titled "Elemental and radiochemistry of settled dust and surface soil in residential communities of central Hillsborough County Florida." Appendix B to Ungers Report, p. 21 and its associated references and worksheets.  A copy of that reference report is attached as Exhibit A to this Memorandum and has been produced to Mosaic.  MINK_000784 -000816.  For clarity, this report will be referred to as the "Unger Soil and Dust Analysis"  or "Analysis."

The Analysis contains an in depth discussion of every aspect of factual data collection Mr. Ungers has done on attic and soil samples in central Hillsborough County including peer-reviewed literature and State of Florida publications that document trace elements in Florida soils that are the background values to compare the levels of the same elements in Ms. Williams neighborhood. See Exhibit B to this Memorandum, which is an example of only one of many analyses.  In preparation for his testimony Mr. Ungers sampled and analyzed elements and radioactive particles in dust in the attic at 8616 Progress Blvd, showing comparison to Florida Residential Soil Target Cleanup Levels, which by the way are the very comparisons Mosaic asserts in its Motion were not actually performed[1].  The documents in support of this Analysis include methods,

---

[1] This analysis shows that two elements found in the attic sample – barium and copper – exceed the Florida Residential Soil Target Clean-Up levels.

analytical results and laboratory records. [2]   This backup documentation unequivocally

demonstrates that Mr. Ungers work is fully supported by quantitative data and analysis.

Ms. Williams can only conclude that Mosaic failed to review this Analysis and

supporting documentation prior to asserting in its Motion that there are "no facts" to

support Mr. Ungers' conclusions regarding the soil and dust in Progress Village

neighborhood.

Second, Mosaic argues in Footnote 9 that Mr. Ungers does not use various

"appropriate comparisons" designated by Mosaic and as a result of this "failure," Mr.

Ungers' opinions lack any basis or reason.  Setting aside the legal issue that conducting

comparisons proposed or endorsed by the Defendant is not appropriate legal test of an

expert's prima facie compliance with Rule 26[3], Mosaic erroneously asserts that Mr.

Ungers failed to use FDEP Soil Target Cleanup Levels in his comparisons. To the

contrary, Mr. Ungers' Appendix B (Reliance Materials) specifically cites the FDEP Soil

Target Cleanup Levels Mosaic references.  As discussed in preceding paragraphs above,

Mr. Ungers literally compared Progress Village soil and dust data he collected (including

---

[2] Here is an excerpt from the Analysis that shows what Mr. Ungers did. "Settled dust was collected from sheltered, undisturbed indoor surfaces (kitchen and attic surfaces). Surface soil was collected from unsheltered surfaces of each property (yards).The settled dust and surface soil samples were obtained using ASTM standards and practices. All field samples, handling blanks, and quality control samples were analyzed by accredited environmental and radiochemistry laboratories using CDC and EPA reference methods. The sampling and analytical results are summarized in tabular format. Elemental analyses of the settled dust and surface soil samples produced results for 37 and 38 elements, respectively. Gross alpha, beta, and gamma radiation and the isotopic makeup of the gamma em1ss10ns are summarized for the surface soil samples. Analysis, p. 2, MINK_00785.

[3] Ms. Williams found no case law that supports this proposition.

samples from Ms. Williams' residence) to these cleanup levels.  See Exhibit B, p. 2 of 4,

UNGERS_003138.  As to Mr. Ungers alleged "failure" to make comparisons to

occupational exposure limits, Ms. Williams notes that the Third Amended Complaint

does not assert that she suffered occupational exposure to Mosaic's pollutants.   Nor is

Ms. Williams a healthy young adult in the military that would be subject to the Army's

TG312 screening tool[4] also referenced in Mosaic's footnote 4.   Mr. Unger's failure to

use Mosaic's proposed comparisons cannot in any way speak to the sufficiency of his

expert report under Rule 26.

Turning now to the legal requirements of Rule 26, Ms. Williams wholeheartedly

concurs with the standard cited by Mosaic in *Brainard v. Am. Skandia Life Assur. Corp.*,

432 F.3d 655, 657 (6th Cir. 2005) that "an expert opinion must set forth facts" and in

doing so, "outline a line of reasoning arising from a logical foundation."  That two step

process is precisely what Mr. Ungers' expert report does.

As this Memorandum establishes, Mr. Ungers' references and analytical work are

comprehensively detailed in Appendix B of his report. Furthermore, his line of reasoning

that forms the foundation of his opinions is carefully constructed in his report in a series

of four specific premises:

1.   Mosaic Operations Are a Major Source of Pollution

---

[4] In the absence of a citation by  Mosaic, here is the title of this document.  U.S. ARMY
CENTER FOR HEALTH PROMOTION AND PREVENTIVE MEDICINE, Technical Guide
312 Health Risk Assessment Methods and Screening Levels for Evaluating Office
Worker Exposures to Contaminants on Indoor Surfaces Using Surface Wipe Data
(June 2009)

2.  Mosaic-Generated Pollution Includes the Emission of Toxic
    Substances and Radioactive Isotopes
3.  Mosaic-Generated Emissions Impact the Surrounding Air Quality
4.  Mosaic-Generated Airborne Pollutants Contaminate Surrounding
    Neighborhoods

Exhibit C to Mosaic's Motion, p.  4-6.

In the section discussing each of these premises Mr. Ungers crafts statements that

support the premise. These statements are supported by direct facts and evidence listed in

the Appendix B (Reliance Materials) of his report.  For example, Mr. Ungers states that,

"toxic substances common to phosphate rock and phosphogypsum are found in the air

surrounding Mosaic and in the vicinity of several residential neighborhoods, including

Progress Village." Turning to the Reliance Materials, for example, Mr. Ungers analyzed

Hillsborough County hazardous air pollutant emission data for 2005, 2010 and 2014 and

identified elements and concentrations. This document is attached as Exhibit C,

UNGERS _00006172-00006174.

In another pertinent example Mr. Ungers states that he has inspected Ms.

Williams' home and neighborhood and conducted surface and soil sampling at various

properties (including Ms. Williams' home) in central Hillsborough County.  "Basis for

Opinions," Report, p. 4.  That sampling effort is discussed in Mr. Ungers Analysis

discussed above.  As a result of those "soil and surface samples collected in the

communities in the vicinity of Mosaic," Mr. Unger concludes that the "degraded air

quality [caused by Mosaic and also documented in his Reliance Materials] contributes to

the pollutant, toxic metal and radioactive burden to soil and surfaces in neighborhood

surrounding Mosaic including those of plaintiff." Conclusions Section, Report, p. 6.   In

summary by examining Mosaic's purported example of Mr. Unger's failure to comply,

such examination demonstrates there is clearly a "line of reasoning arising from a logical (and factual) analysis" consistent with *Brainard*.   Mosaic's motion must be denied.

Mosaic also complains that the alleged paucity of information in Mr. Ungers report somehow impairs Mosaic's ability to rebut, cross-examine and offer competing reports, if necessary, citing *Porto Venezia Condo. Ass'n, Inc. v. WB Ft. Lauderdale, LLC*, No. 11-60665-CIV, 2012 WL 7636003 (S.D. Fla Sept. 19, 2012).  This supposed "impairment" leads Mosaic to assert that it will be possibly ambushed at trial citing *Saldago v. Gen. Motors Corp.*, 150 F.3d 735 (7th Cir. 1998).  To the contrary each and every one of Mr. Ungers' four premises and their supporting statements are ripe for Mosaic's rebuttal, cross-examination or competing reports.  For example, Mosaic can certainly attempt to rebut Ungers' premise that its Riverview facility is a major source source of sulfur dioxide. Each express statement in his report is clear, concise and available for rebuttal or cross-examination.  There can be no surprise to Mosaic here, especially because Mr. Ungers relies heavily on Mosaic's own emissions data.   Mosaic's Motion attacking Mr. Ungers must be denied.

**b. Dr. Mink's Report Clearly and Unequivocally Identifies How and Why he Reached his Conclusions.  It is Not a Preliminary Report.**

Similar to its approach in this Motion toward Mr. Ungers, Mosaic complains about Dr. Mink's purported failure to identify the "how" and "why of his opinions. Mosaic provides only one purported example of this failure, that is that Dr. Mink did not identify the alleged constituents, the dosages and the exposure pathways that are the bases for his opinions about Ms. Williams health and its connection to pollution by Mosaic in her house and in her neighbor.  Motion, p. 7.

In contrast, a careful reading of Dr. Mink's nineteen page substantive report and its references demonstrates that he listed over a dozen specific chemicals/chemical classes sampled and known to be at Ms. Williams' residence that are associated with Mosaic's operation.[5] He references the elevated concentrations in Ms. Williams home from both the Ungers Soil and Dust Analysis[6] and documents produced by Hillsborough County.  Dr. Mink has identified the exposure routes – inhalation and dermal exposures. Report, P. 2.  Bates No. MINK_000002. Dr. Mink then detailed specific causation by identifying her medical tests and resulting diagnoses and the direct association/causation by the listed chemicals of concern.  See Report, p.13, 14.  He refers to the 1986 EPA Risk Assessment Criteria that he developed and used in this analysis as his methodology. [7] Also listed were medical treatment compounds (iron, NSAIDS, absorbic acid, sulpha drugs) that are known to Dr. Mink to exasperate Ms. Williams' G6PD symptoms.[8]

Finally, there is nothing preliminary about Dr. Mink's report.  It is titled "Summary of Expert Opinions of Franklin L. Mink." It is signed and dated.  While Dr. Mink does use the term "preliminary" on p. 2, Mosaic fails to note Dr. Mink's caveat

---

[5] These chemicals are listed on pgs. 6 and15 of the report and include aluminum (AL), arsenic (AS), copper (Cu), boron (B), chromium (Cr), iron (Fe), calcium (Ca), lead (pb), phosphorus (P), potassium (K) , silica (Si), sodium (Na) and zinc (Zn) along with sulfur dioxide, carbon monoxide, and ammonia.  MINK_000006 and 000015.

[6] Exhibit B shows the results of samples taken in Ms. Williams attic.  Many compounds associated with Mosaic operations – aluminum, arsenic, copper, chromium, iron, calcium, lead, phosphorous, potassium and zinc are present in levels that exceed the calculated baseline, often by orders of magnitude.

[7] Dr. Mink was involved in the formulation of EPA's still used Risk Assessment Guidelines of 1986.  Report, p. 28.

[8] Report, P. 15.

on p. 3 that the findings and conclusion are preliminary because they are "subject to modification based on new materials reviewed or provided by the defense or in the open literature as they become available."  This position is required by the text of Rule 26(e) that requires experts to supplement."[9]

For these reasons, Dr. Mink's report complies with Rule 26. Mosaic's Motion must be denied.[10]

## II.      Plaintiff has Fully Satisfied and Complied with Rule 26(a)(2)(C)'s Requirements as it Concerns her Non-Retained Experts.

Ms. Williams Disclosures identified nine non-retained experts; eight of whom are treating physicians, and one is an academic.  For the reasons stated herein, Plaintiff has fully satisfied and complied with her Rule 26(a)(2)(C) reporting obligations and Mosaic's Motion must be denied.

### a.      Ms. Williams did Provide a Sufficient "Summary of Facts and Opinions"

Pursuant to Rule 26(a)(2)(C), Fed. R. of Civ. P., Ms. Williams' summary disclosures must "merely" contain: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 or 705; and a summary of facts and opinions to which the witness is expected to testify."  See Guar. Trust Life Ins. Co. v. Am. Med. & Life Ins. Co, 291 F.R.D. 234, 236 (N.D. Ill 2013). Ms. Williams contends that she has satisfied this reporting obligation.  One case from the

---

[9] Rule 26(a)(2)(B) states: "... the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.
[10] Mosaic's Footnote 3 raises various *Daubert* challenges to Dr. Mink's testimony. Since this Motion is not a *Daubert* motion, so these challenges are irrelevant and should not be considered.

Northern District of Florida that was relied on by Defendant, <u>Faile v. Dillard's Inc.,</u> 2011 WL 7641239 (N.D. Fla. Nov. 4, 2011), strongly supports Ms. Williams' contention.  As noted by Judge Smoak in the <u>Faile</u> decision, the Committee Notes to the 2010 Amendments of Rule26 (a)(2)(C), warn that "[c]ourts must take care against requiring undue detail...," further explaining that "too much detail in the disclosures is not required since these types of witnesses may be less likely to cooperate with counsel." Accordingly, it follows that since the non-retained experts, including Willie Harris, are not on Ms. Williams' payroll, she has satisfied her reporting obligations and is not required by law to provide a more detailed summary of opinions.

The other Florida decision, <u>Blakely v. Safeco Insurance Co. of Illinois,</u> 2014 WL 1118071, (MD Fla. 2014), relied on by Mosaic is to no avail.   In <u>Blakely,</u> the plaintiff identified eleven treating physicians as part of his expert disclosures, however, unlike the case at hand all that the plaintiff provided was the physicians' names a short statement to the effect of, "nature and extent of injuries and treatment."   The court accepted that these physicians could testify concerning their opinions as they arose from their personal observations, but, since absolutely no summary was provided, the plaintiff was found to be out of compliance.  <u>Id.</u>at 3.   Nonetheless, the <u>Blakely</u> court found no prejudice to the defendant as sufficient time remained before trial and ordered the plaintiff to amend the disclosures.   In contrast to the disclosures in <u>Blakely,</u> Ms. Williams identifies with specificity the area of medicine and medical condition that she anticipates each of her treating physicians to cover, consistent with their medical records as produced in this action.  Accordingly, Mosaic's Motion must be denied.

**b.     The Well-Settled Rule is that Non-Retained Experts are Exempted from Rule 26(a)(2)(B)'s Reporting Requirements, Including Opinions on Causation**

Moving forward to causation, Mosaic contends that Ms. Williams' treating physicians may not testify about her health ailments <u>and</u> specifically how those ailments are "influenced by and related to her environment," absent a detailed report. Specifically, Mosaic compares this testimony to "causation or prognosis" testimony, which Mosaic argues requires a retained expert report.   However, a closer review of the authority cited and relied upon by Mosaic in its Motion, demands the opposite result.

To begin, the court in <u>Guar. Trust Life Ins.</u>, 291 FRD at 236-237, a case cited by Mosaic for the proposition of who is a non-retained expert, denied the plaintiff's motion to exclude expert testimony, and illuminated the scope of testimony that is generally permitted by a non-retained expert.  In doing so, the <u>Guar. Trust Life Ins.</u> court explained that a treating physician is <u>not</u> a retained expert,  "even if the treating physician will offer an <u>opinion on causation</u>." <u>Id.</u> at 237, relying on, <u>Coleman v. Am. Family Mut. Ins. Co.</u>, 274 FRD 641 at 645 (N.D. Ind. 2011)[Emphasis added].  In other words, a treating physician is only required to satisfy the requirements of Rule 26(a)(2)(B), Fed. R. Civ. P., when he/she plans to give opinions beyond the scope of his/her on treatment and observations. <u>Id.</u>  Consequently, applying this reasoning here, it is indisputable that Ms. Williams treating physicians may, to the extent it is related to their treatment and observations, testify concerning the influence or relationship of her environment to the respective health issues that they are treating her for.

Similarly, the court in <u>Downey v. Bob's Disc. Furniture Holdings</u>, 633 F.3d 1, 7 (1st Cir. 2011), another case cited by Mosaic, expressly found that a <u>non-retained expert</u> may testify to a causation opinion that he/she arrived at during the course of treatment. On point, the issue in <u>Downey</u> was whether a third party could provide opinion and causation testimony as a non-retained expert.  Comparing the third party to a treating physician the <u>Downey</u> court concluded that yes, "as long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)." <u>Id.</u> at 7, and citations contained therein.  This conclusion, a "sensible interpretation" of the rule, is directly on point and supports a denial of Mosaic's Motion.[11]

In addition, the <u>Kobe v. Haley</u>, 2010 WL 4067921 at 3, (Dist. SC Aug. 12, 2013), decision cited by Mosaic also strongly supports Ms. Williams' contention that her non-retained experts may testify to causation, *e.g.*, how her health is and has been influenced by or is related to her environment.   The <u>Kobe</u> court relied on and cited the <u>Kondragunta v. Ace Doran Hauling & Rigging Co.</u>, 2013 WL 1189493 at 12 (N.D. Ga. Mar. 21, 2013) holding, which stated:

> "[I]f a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required, albeit the Subsection  repot

---

[11] Taking it a step further, the <u>Downey</u> court in footnote three of its decision found that although a few courts have required a report for causation testimony, most courts have not, and the <u>Downey</u> court chose to follow the majority view.  <u>Id.</u> at 7.  Plaintiff asserts that this majority view is the proper and intended approach of Rule 26(a)(2)(C).

discussed above will be required.  If, however, the physician's opinion was based on facts gathered outside the course of treatment, or if the physician's testimony will involve the use of hypotheticals, then a full subsection B report will be required."

Accordingly, the Kobe court held that "hybrid" witnesses, whose opinions are "based on facts learned or observations made in the normal course of duty" were not required to submit an expert report under Rule 26(a)(2)(B); thus it logically follows that this would necessarily include any and all causation opinions based on facts learned or observations made in the normal course of duty.  See Kobe at 4, and citations contained therein.

Last, the remaining cases cited by Mosaic offer no further support to its contention that the non-retained experts must provide Rule 26(a)(2)(B) reports as to their causation and/or prognosis opinions.  See Thomas v. Conrail, 169 FRD 1, (Dist. Mass. Oct. 29, 1996)(A pre-2010 amendment decision wherein the court held that plaintiff's physician witnesses were going beyond their observations and what was necessary to provide appropriate care in the treatment of the plaintiff, to apply their professional expertise as to a causation and/or prognosis opinion, and thus, the physicians stepped into the shoes of a retained expert.); and Daniels v. District of Columbia, 15 F. Supp 3d 62, 67-70 (This case is inapposite as it was undisputed that the plaintiff made no disclosures concerning her medical witnesses, non-retained or otherwise, and the court's analysis focused on whether the witnesses constituted experts, and if yes, whether they were non-retained experts.  In its analysis the court restated the well-settled rule that a physician is

not a specially retained expert, "notwithstanding that the witness may offer opinion

testimony under Fed. R. Evid. 702, 703 and 705."); and Amtrak v. Railway Express,

LLC, 268 FRD 211 (Dist. Md. Feb. 24, 2010)(A pre-2010 amendment case, discussing

the "treating physician" exception to the retained expert reporting requirement, and citing

cases that followed the well-settled rule that physicians are not required to provide

reports when testimony is within their area of expertise and related to treatment of the

plaintiff).[12]

### III.   Willie Harris is a Non-retained Expert and Plaintiff has Fully Complied with Rule 26(a)(2)(C)'s Requirements

The plain text of Rule 26(a)(2)(C), Fed. R. Civ. P., makes clear that it applies to

all non-retained experts. Further, as the two cases cited by Mosaic acknowledge, other

jurisdictions have applied the logic of the non-retained expert rule beyond the traditional

category of treating physicians to expert witnesses more generally.  See Guar. Trust Life

Ins. Co. 291 F.R.D. at 236-237(Explaining that a party's current and/or former employees

may qualify as non-retained experts); and Downey v. Bob's Disc. Furniture Holdings,

633 F.3d 1, 5-7 (1st Cir. 2011)(Holding that a pesticide employee who treated the

plaintiff's home was a non-retained expert and allowed to give a causation opinion).  In

those instances, consistent with the rule's treatment of physicians, the rule's reporting

obligations as to other experts turns on whether the expert is expressly retained to review

---

[12] The Amtrak court cited to the pre-2010 amendment Thomas decision and a few others, in noting that some courts had required an expert report when a treating physician went beyond treatment per se and into causation and prognosis. Id. at 216-217.   Plaintiff contends that these references are inapplicable and pre-date the well-settled majority rule that has taken effect post the creation of the non-retained expert disclosure requirement of Rule 26(a)(2)(C).

materials and form an opinion for the purpose of litigation. Id.  In other words, the question presented is: *Does Willie Harris' anticipated testimony, arise out of personal observations made in the normal course of his work or has he reviewed information solely in preparation for litigation*?  See Amtrak v. Ry. Express, LLC, 268 FRD 211, 216 (Dist. MD Feb. 24, 2010).  Ms. Williams contends the former; that is that it arises out of his personal observations.

Here, Willie Harris, a Florida soils expert and academic is not being asked to review materials solely for the purpose of expressing an opinion in this litigation.  To the contrary, Willie Harris has published and co-authored works related to the levels of trace elements and minerals normally found in Florida's soils over the course of his academic career – and his anticipated testimony will center around his work and his observations. He is the quintessential non-retained "percipient" witness concerning Florida's soils.  See Guar. Trust Life Ins., at 237.[13]  Comparatively, Willie Harris is what some courts have termed, a "hybrid-witness." See Amtrak at 216.  Irrespective of what terminology is used, it is clear that Willie Harris is exempt from the additional expert disclosure requirements of Rule 26(a)(2)(B), Fed. R. of Civ. P.

At bottom, if this Court were too interpret "the words 'retained or specially employed' in a common-sense manner, consistent with their plain meaning," as the Downey case did, it is clear that Willie Harris is a non-retained expert.  The source, purpose and timing of Mr. Harris' opinions on the levels of trace elements common to

---

[13] See also, Smith v. State Farm Fire & Casualty Co., 164 FRD 49 (S.D. WV 1999)(There, in a pre-2010 amendment case, the court looked at the plain language of the rule and held that retained meant someone who was entitled to be paid a fee for their testimony.)

Florida's soils differs materially from the architecture of an opinion given by an expert

who has been retained specifically to review records related to litigation and to opine on

same.   And while this distinction between retained and non-retained may not "leap off

the page," the <u>Downey</u> court was convinced that this distinction and result is exactly what

the drafters of Rule 26(a)(2)(B) Fed. R. of Civ. P, had in mind.  <u>Id.</u> at 7.  Being that

Willie Harris is a non-retained expert, as defined by relevant law he is not and was not

required to produce a Rule 26(a)(2)(B) report, thus, Mosaic's Motion to exclude Willie

Harris must be denied.

### V.      Mosaic has Shown No Prejudice and No Harm that Would Warrant the Extreme Sanction of Exclusion.

The "exclusion of evidence is a severe sanction and is therefore often

inappropriate unless the failure to disclose or supplement is in bad faith or the resultant

prejudice to the opposing party cannot be cured, because, for example, use of the

evidence is 'imminent or in progress.'"  See <u>Lithuanian Commerce Corp. v. Sara Lee

Hosiery</u>, 177 FRD 245, 254 (Dist. NJ 1997), and citations contained therein.  In the case

at hand, no such bad faith has been shown or nor is resultant prejudice imminent.

Further, Mosaic has suffered no cognizable harm.  Compare <u>Blakely</u> at 3; <u>Faile</u> at

2; <u>Gorrell v. Sneath,</u> 2013 U.S. Dist. LEXIS 122329, 2013 WL 4517909 (E.D. Cal. Aug.

26, 2013); and <u>Kobe v. Haley,</u> 2013 WL 4067921, 4-5 (Dist. S.C. 2013).  Rather, this

case is still in the mid-stage of fact discovery and the early stages of expert discovery.

Moreover, Mosaic has taken <u>no</u> depositions to date and thus, any purported prejudice can

be easily remedied by Mosaic's opportunity to depose the witnesses before the discovery

cut-off.

At bottom, the matter at hand is a far cry from the cases cited by Mosaic where, for example, a party completely failed to produce any Rule 26 expert disclosures even after multiple extensions, or a party sought to claim Rule 26 compliance via interrogatory responses or otherwise through a fact witness list.  No, to the contrary, this is a case of a party that has spent substantial time and effort over the course of one-plus years developing expert testimony and respectively their reports and identifying non-retained experts and their diagnosis, treatment, expertise and/or overall care of Ms. Williams as identified in their respective summary of opinions.  Ms. Williams contends that her Disclosures speak for themselves and demonstrate full compliance with Rule 26. Nonetheless, should this court decide that her Disclosures are not compliant, then Ms. Williams respectfully requests leave to amend to supplement her Disclosures in a manner that is consistent with this Court's direction.

## <u>CONCLUSION</u>

**Wherefore,** for the reasons stated above, Plaintiff respectfully requests that the Defendant's Motion be denied, or alternatively, that she be granted leave to amend her Rule 26 expert disclosures.

Dated: June 10, 2015

 /s/ Laureen Galeoto_____
Laureen Galeoto, Trial Counsel
FBN 0194107
Law Office of Laureen Galeoto, PLLC
511 W. Bay Street, Suite 350
Tampa, FL 33611
P. 813.280.9326
Laureen@laureenlaw.com

Mary Ellen Hogan
The Green Counselor, PLLC
511 W. Bay Street, Suite 350
Tampa, FL 33611
Maryellen@thegreencounselor.com

William P. Walker
Walker Morgan, LLC
135 E. Main Street
Lexington, SC 29072
P. 803.359.6194
bw@walkermorgan.com

### CERTIFICATE OF SERVICE

I CERTIFY that the foregoing has been electronically filed with the Clerk of the

Court pursuant to the CM/ECF on this 10th day of June 2015, which will send electronic

notice to counsel of record.


_____/S/_____

Laureen Galeoto, Counsel for Plaintiff