# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RHONDA WILLIAMS,

    Plaintiff,

v.                              Case No. 8:14-cv-01748-MSS-TGW

MOSAIC FERTILIZER, LLC,

    Defendant.

_____/

## MOSAIC MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Mosaic moves for summary judgment under Federal Rule of Civil Procedure 56 on all claims asserted by Plaintiff in her Second Amended Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiff alleges that emissions from Mosaic's Riverview plant continuously reached her home and have caused her to develop various "adverse health effects." Plaintiff, however, has no scientifically reliable evidence that *any* emissions *ever* reached her home. Further, even if she had been exposed to emissions, Plaintiff has no scientifically reliable evidence that they are capable of causing her "adverse health effects," let alone that they actually caused them. Finally, Plaintiff has no scientifically reliable evidence that even if she had been exposed to emissions that are capable of causing her "adverse health effects," that her adverse health effects were not the result of another potential cause. Accordingly, Plaintiff cannot prove causation, and Mosaic is entitled to summary judgment on all claims.

---

[1] Doc. 24.

Specifically, Plaintiff asserts the following claims:

Count I: Negligence;

Count II: Gross negligence;

Count III: Strict liability (abnormally dangerous or ultra-hazardous activity);

Count IV: Strict liability (failure to warn);

Count V: Strict liability (Florida Statutes section 376.302); and

Count VI: Medical monitoring.

As to each count, Plaintiff is required to establish causation through expert testimony. Plaintiff retained four testifying experts: a toxicologist, an industrial hygienist, a life care planner, and an economist. Two are the subject of *Daubert* motions: (1) the toxicologist, Dr. Franklin Mink, and (2) the industrial hygienist, Mr. Leslie Ungers, who is acting as an exposure scientist.

Plaintiff's retained toxicologist was required to demonstrate (1) general causation; (2) specific causation; and, crucially, was he was required to (3) enumerate and eliminate all potential alternative causes of Plaintiff's alleged injuries. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1303 (11th Cir. 2014).[2] Dr. Mink failed to perform *any* of these required tasks:

    (1)    He relied on "trusted" studies for his opinions that (a) did not analyze air emissions in Plaintiff's neighborhood, (b) directly contradicted his opinions, and, in fact, concluded, the Mosaic Riverview plant does "not impose an elevated cancer risk or health effects to general population,"[3] and (c) spotlighted his failure to enumerate and eliminate alternative causes.

---

[2] *See also* Federal Judicial Center's "Reference Guide on Toxicology," REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (3d ed. 2011).

[3] Hsing-Wang Li, *et al.*, "Impacts of hazardous air pollutants emitted from phosphate fertilizer production plants on their ambient concentration levels in the Tampa Bay area," AIR QUAL ATMOS HEALTH 8:453-467 at 464 (2015).

2

Greenberg Traurig, P.A.

(2) He failed to perform specific dose calculations for the Plaintiff and indeed testified that, "it can't be done."[4]

(3) He failed to enumerate and eliminate any potential alternative causes, which, at minimum, included: (a) natural background, (b) other known emission sources,[5] (c) Plaintiff's morbid obesity, allergies, and sedentary lifestyle, (d) her *three decades* of exposure to secondhand smoke,[6] (e) idiopathic causes, and (f) psychological influences such as somaticism, which was described by Plaintiff's own expert life care planner.[7]

Plaintiff's retained industrial hygienist was required to perform the work of an exposure scientist and (1) demonstrate with "scientifically valid" evidence that Plaintiff was exposed to airborne constituents from the Mosaic Riverview plant more than three miles from her residence; (2) provide a quantitative exposure assessment or point source concentration from which Plaintiff's expert toxicologist could reconstruct dose as an input in a specific causation analysis; and (3) identify and eliminate all alternative sources of potential airborne constituents. *See id.*[8] Mr. Ungers failed to perform *any* of these tasks:

(1) He failed to conduct a fate and transport analysis and testified, "I didn't do any modeling where I would calculate transport."[9]

(2) He failed to calculate exposure and testified, "I didn't conduct an exposure assessment,"[10] "I wasn't asked to do an exposure assessment or dose reconstruction,"[11] and "I don't do a lot of that exposure assessment."[12]

(3) He failed to enumerate and eliminate alternative sources of potential air emissions even though he knew many existed and testified, "We didn't do an

---

[4] *See* Doc. 89 at n.4 and n.24.
[5] *See* Li, "Impacts," AIR QUAL ATMOS HEALTH 8 at 462; Jayajit Chakraborty, *Cancer risk from exposure to hazardous air pollutants: spatial and social* inequities *in Tampa Bay, Florida*, INT'L JOURNAL OF ENVIRONMENTAL HEALTH RESEARCH, Vol. 22, No. 2, 165-183 (April 2012). This also includes, as pled by Plaintiff, the TECO Big Bend facility. *See* Doc. 74.
[6] *See* Doc. 78.
[7] *See* Doc. 89 at n.103.
[8] *See also* Federal Judicial Center's "Reference Guide on Exposure Science," REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (3d ed. 2011).
[9] *See* Doc. 90 at n.70.
[10] *See id.* at n.82.
[11] *See id.* at n.88
[12] *See id.* at n.90.

assessment on other sources,"[13] and "I didn't calculate emission contributions for anything."[14]

Because Plaintiff's retained experts failed to perform any of the tasks required by, among others, the U.S. Supreme Court, the Eleventh Circuit, the Federal Judicial Center's REFERENCE MANUAL ON SCIENTIFIC EVIDENCE'S "Reference Guide on Toxicology" and "Reference Guide on Exposure Science," or the U.S. EPA's EXPOSURE FACTORS HANDBOOK, they failed to proffer reliable scientific evidence on causation, which, of course, is an essential element for each of Plaintiff's claims. Because the proffered testimony of Plaintiff's retained toxicologist and retained industrial hygienist must be excluded under Federal Rules of Evidence 104, 403, and 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Chapman*, Plaintiff cannot prove her claims.

The law is clear: "there [is] no point in going to trial with a claim for which there [is] insufficient evidence to support a verdict for the plaintiff." *Newsome v. Chatham Cnty. Detention Ctr.*, 256 F. App'x 342, 345 (11th Cir. 2007). The exclusion of either expert's proffered testimony makes it impossible for Plaintiff to present evidence of causation to a jury and summary judgment will have to be granted in Mosaic's favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff is a resident of the Progress Village neighborhood in Tampa. Her home is more than three miles from the Mosaic Riverview plant.[15] Mosaic processes phosphate rock and other materials at its Riverview plant and produces fertilizers, feed ingredients, and

---

[13] *See id.* at n.96.
[14] *See id.* at n.98.
[15] *See id.* at Exhibit F.

Greenberg Traurig, P.A.

electrical power in accordance with federal, state, and local permits, laws, and oversight.[16] Plaintiff alleges that air emissions from Mosaic's Riverview facility caused her "adverse health effects."[17]

Plaintiff's retained expert toxicologist, Dr. Mink, asserts that as a result of her alleged exposures, Plaintiff suffered "G6PD associated pulmonary hypertension, asthma and obstructive pulmonary disease,"[18] and "exacerbated [] G6PD symptoms including hemolytic anemia and associated pulmonary hypertension significantly increasing her probability of deep lung tissue alteration/scarring."[19] The chemicals or constituents he alleged she was exposed to are undefined amounts of sulfur dioxide ($SO_2$), particulate matter with a diameter of ten micrometers or less ($PM_{10}$) in the form of fugitive dust, and certain purported elements and radioactive materials contained within the alleged fugitive dust.[20] As an expert toxicologist, Dr. Mink was required to testify on (a) general causation, (b) specific causation, and he was required to (c) enumerate and eliminate alternative causation.

Plaintiff also retained Mr. Ungers, an industrial hygienist, to act as an exposure scientist and opine on "the historic impact of air quality on Ms. Williams in her . . . residence."[21] Mr. Ungers was required to provide (a) a fate and transport analysis to describe the pathway by which the alleged constituents travelled from the Mosaic Riverview plant to Plaintiff's residence and their disposition there, and (b) exposure estimates or point-of-contact exposure concentrations on which Dr. Mink, Plaintiff's retained expert toxicologist,

---

[16] http://www.mosaicco.com/Who_We_Are/locations_directory_locations_by_continent_north_america_locations_riverview.htm.
[17] Doc. 24 at ¶¶ 81-89, 104-35.
[18] *See* Doc. 89 at n.20.
[19] *See id.* at n.21.
[20] *See id.* at n.22.
[21] *See* Doc. 90 at n.8.

5

could prepare dose reconstructions to support opinions on specific causation and the elimination of alternative causes.

## LEGAL STANDARD

A court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden under Rule 56(c), the burden shifts to the non-moving party to produce specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Evidence inadmissible at trial cannot be used to avoid summary judgment." *Chapman*, 766 F.3d at 1313 (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007)).

## ARGUMENT

**I. Mosaic is entitled to summary judgment on all counts because Plaintiff cannot demonstrate admissible expert testimony on (a) general causation, (b) specific causation, or (c) the enumeration and elimination of potential alternative causes.**

In order for Plaintiff to prevail on all Counts of her Second Amended Complaint, she must prove causation. *Rementer v. United States*, No. 8:14–CV–642–T–17, 2015 WL

5934522 (M.D. Fla. Oct. 9, 2015) ("Under Florida law, the Plaintiff in general bears the burden of proving causation.").

Causation is a required element of Plaintiff's negligence claim. *Cover v. Wal-Mart Stores, Inc.*, 812 F. Supp. 1215, 1216 (M.D. Fla. 1993) ("It is axiomatic in Florida that proof of causation is an essential element of negligence.").

Causation is a necessary element of Plaintiff's gross negligence claim. *Giglio Sub S.N.C. v. Carnival Corp.*, No. 12–21680–CIV, 2012 WL 4477504, at *15 (S.D. Fla. Sept. 26, 2012) ("Under Florida law . . . to sustain a claim of negligence, Plaintiffs must prove a duty, breach of that duty, causation, and damages. . . . To establish gross negligence, Plaintiffs must also show that the defendant had knowledge of the existence of circumstances which constitutes a clear and present danger and yet still undertakes a conscious, voluntary act or omission . . . which is likely to result in injury.") (citations omitted).

Causation is an essential element of Plaintiff's strict liability claims. *See, e.g., Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.,* 915 F.2d 641, 647 (11th Cir. 1990) ("Florida has adopted a preponderance standard for causation in . . . strict liability actions; a mere possibility of causation is not enough."); *Brewer v. Stop Stick, Ltd.*, No. 2:04-CV-613-FtM-33-DNF, 2005 WL 2614537, at *2 (M.D. Fla. Oct. 14, 2005) (holding that, under strict liability failure-to-warn, causation must be established); *United States v. Stevens*, 994 So. 2d 1062, 1071 (Fla. 2008) (Wells, J., dissenting) ("[T]he law in Florida is that where an injury is ***proximately caused*** by an ultrahazardous activity, a defendant is liable to another whose person, land or chattels the actor should recognize as likely to be harmed.") (emphasis added).

7

Under section 376.313, Florida Statutes, although "the burden is not on plaintiffs…to prove that the defendant(s) caused the offending pollution", "plaintiffs must . . . demonstrate the existence of a pollutive condition and that their damages were caused by the pollution in question." *Brottem v. Crescent Res., LLC*, Civ. No. 6:06-cv-306, 2006 WL 1529327, at *4-5 (M.D. Fla. May 24, 2006). In other words, Plaintiff must demonstrate damages causation—meaning that Plaintiff must show that her alleged damages were caused by the alleged pollution in question—to succeed under section 376.313. *Id.*

Finally, Plaintiff must also prove causation for her medical monitoring claim. *See Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106–07 (Fla. 3d DCA 1999) (holding that medical-monitoring claims require plaintiffs to, *inter* alia, prove: "(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; [and] (4) *as a proximate result of the exposure*, plaintiff has a significantly increased risk of contracting a serious latent disease" (emphasis added)).

Importantly, the Eleventh Circuit and this Court have made clear that in a toxic tort case, such as this one, plaintiffs must prove both general causation and specific causation, and "this type of proof **requires expert testimony**." *McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (emphasis added); *see also Chapman*, 766 F.3d at 1316; *Evans v. Matrixx Initiatives, Inc.*, No. 3:07-cv-357, 2009 WL 2914252, at *11 (M.D. Fla. Feb. 18, 2009) ("In toxic tort cases, where injury is not readily observable, expert testimony is required.") (citation omitted). Indeed, "[t]oxic tort cases, such as this one, are won or lost on the strength of the scientific evidence presented to prove causation." *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002).

Plaintiff is unable satisfy her burden to demonstrate causation with expert testimony as detailed in Mosaic's motion to exclude Dr. Mink.[22] His proffered testimony must be excluded under Federal Rules of Evidence 104, 403, and 702, *Daubert*, and *Chapman*. As explained in Mosaic's motion, Dr. Mink never performed the tasks necessary to offer an expert opinion on causation. Dr. Mink failed to demonstrate general causation when he relied upon studies directly contradicting his opinions and concluding that the Mosaic Riverview plant does "not impose an elevated cancer risk or health effects to the general population." He failed to demonstrate specific causation when he failed to quantify exposure, reconstruct dose, or show what quantities of constituents caused what illnesses in what way. He also completely failed to enumerate and eliminate potential alternative causes for Plaintiff's large number of illnesses with potential alternative causes, as required by this Circuit in *Chapman*. Accordingly, Dr. Mink's proffered opinion testimony on causation is facially unreliable and must be excluded.

Plaintiff is also unable satisfy her burden to demonstrate causation with expert testimony as detailed in Mosaic's motion to exclude Mr. Ungers.[23] He failed to provide Dr. Mink the necessary information on which he could provide an expert opinion on causation. Mr. Ungers did this when he failed to perform a fate and transport analysis, failed to perform an exposure assessment, and failed to enumerate and eliminate alternative sources of potential air emissions even though he knew they existed. Similarly, Mr. Ungers's proffered opinion testimony is facially unreliable and must be excluded.

---

[22] Mosaic has filed a *Daubert* motion to exclude Dr. Mink's proffered expert testimony. *See* Doc. 89.
[23] Mosaic has filed a *Daubert* motion to exclude Mr. Ungers's proffered expert testimony. *See* Doc. 90.

The Eleventh Circuit has repeatedly held that when a plaintiff's general and specific causation experts are excluded under the Federal Rules of Evidence and *Daubert* in cases involving alleged toxic substances, summary judgment is appropriate. *See, e.g., Chapman*, 766 F.3d at 1316 (affirming grant of summary judgment and explaining that plaintiffs "were ***required*** to have *Daubert*-qualified general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment.") (emphasis in original); *Guinn v. AstraZeneca Pharm., LP*, 602 F.3d 1245, 1256 (11th Cir. 2010) (affirming that the district court did not err by holding that the exclusion of plaintiff's expert's testimony on specific causation was a basis for granting summary judgment in favor of defendant); *Hendrix v. Evenflo Co.,* 609 F.3d 1183, 1203 (11th Cir. 2010) (holding that without the plaintiff's expert testimony on general and specific causation, "there is no genuine dispute of material fact regarding causation" and therefore "the district court's grant of summary judgment . . . was appropriate"); *In re Accutane Prods. Liab.*, 378 F. App'x 929, 931 (11th Cir. 2010) (in toxic tort lawsuit "plaintiffs would not be able to prove liability at trial because, the court having excluded plaintiffs' sole expert, plaintiffs would have no expert testimony as to causation"); *Goldstein v. Centocor, Inc.*, No. 07-13191, 2009 WL 275322, at *1 (11th Cir. Feb. 5, 2009) (affirming summary judgment because plaintiff could not present any expert evidence regarding causation).

District Courts in Florida have, of course, followed the Eleventh Circuit's approach. *See, e.g., Guinn v. AstraZeneca Pharm., LP,* 598 F. Supp. 2d 1239 (M.D. Fla. 2009) (granting summary judgment after exclusion of Plaintiff's specific causation expert testimony); *Craig v. Orkin Exterminating Co.*, No. 99-8931, 2000 WL 35593214, at *6-7

(S.D. Fla. Nov. 22, 2000) (granting summary judgment following exclusion of plaintiff's general and specific causation expert); *Evans*, 2009 WL 2914252, at * 12 ("The exclusion of the testimony of [Plaintiffs' experts] on both general and specific causation necessitates granting the Summary Judgment Motion. Without any proof of causation, Plaintiffs cannot make a prima facie case.").

The exclusion of either expert's proffered testimony makes it impossible for Plaintiff to present evidence of causation to a jury. Accordingly, this Court will have to grant summary judgment in Mosaic's favor on all counts based on the exclusion of Plaintiff's expert testimony on causation proffered by either Dr. Mink or Mr. Ungers.

**II.    Summary judgment must be granted in Mosaic's favor on Count V because Plaintiff failed to present any evidence of destruction or loss of real or personal property.**

In Count V, Plaintiff attempts to state a cause of action under section 376.313, Florida Statutes.[24] The Florida Supreme Court explained that plaintiffs can only recover damages under Chapter 376 for "the documented extent of any destruction to or loss of any real or personal property, or the documented extent, pursuant to [§] 376.121, of any destruction of the environment and natural resources, including all living things *except human beings*, as the direct result of the discharge of the pollutant." *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1221 (Fla. 2010) (citing § 376.031(5)) (emphasis added). In Plaintiff's opposition to Mosaic's Motion to Dismiss the Second Amended Complaint, Plaintiff conceded that she is

---

[24] In her Second Amended Complaint, Plaintiff improperly brings a private cause of action under section 376.302, Florida Statutes. (Doc. 24 ¶¶ 137-38). However, no private cause of action exists under section 376.302. Under that section "any person who commits a violation specified in subsection (1) is liable to the *state* for any damage caused[]." § 376.302(2), Fla. Stat. (emphasis added). Mosaic addresses Count V to the extent that Plaintiff attempts to bring a cause of action under section 376.313, Florida Statutes.

11

***not entitled*** to "personal injury [damages] under this particular statutory scheme."[25] Indeed, the Court took note of Plaintiff's stipulation that "she is not entitled to 'lost wages, [and] past and future health care costs'" under Count V, and stated "that these amounts ***shall not*** form the basis for [Plaintiff's] damages."[26] (emphasis added).

While Plaintiff is only entitled to seek damages for the destruction to any real or personal property under Count V, she has not presented *any evidence whatsoever* of any such destruction. Therefore, Mosaic is entitled to summary judgment on Count V.

**III. Mosaic's is entitled to summary judgment on Count IV because Florida does not recognize such a claim outside of the products liability context and even if it did, the undisputed facts demonstrate that Mosaic has not manufactured or distributed a product used by Plaintiff.**

The Court must also grant summary judgment as to Count IV because there is no authority in Florida recognizing a claim for strict liability failure to warn outside of the products liability context—*i.e.*, in a toxic tort case like this. *See, e.g., Thomas v. Bombardier Recreational Prods., Inc.*, 682 F. Supp. 2d 1297, 1300–01 (M.D. Fla. 2010); *Aubin v. Union Carbide Corp.*, No. SC12–2075, 2015 WL 6513924, at *22 (Fla. Oct. 29, 2015); *Griffin v. Kia Motors Corp.*, 843 So. 2d 336, 339 (Fla. 1st DCA 2003); *see also Scott v. Thunderbird Indus., Inc.*, 651 P.2d 1346, 1348 (Okla. Civ. App. 1982) (holding that a cause of action for strict liability failure to warn could be brought only by a "user or consumer").

Moreover, even if a strict liability failure to warn action were permitted outside of the products liability context, the undisputed facts show that Mosaic has not manufactured or distributed a product and put it into the stream of commerce. Under Florida law, "[t]o

---

[25] Doc. 30 at 20.
[26] Doc. 33 at 2.

12

establish strict liability for failure to warn, Plaintiff must prove that [Mosaic] (a) is ***a manufacturer or distributor of the product at issue***, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the ***manufacture and distribution***." *Pinchinat v. Graco Children's Products, Inc.*, 390 F. Supp. 2d 1141, 1146 (M.D. Fla. 2005) (citing *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998) (*reversed on other grounds,* 795 So. 2d 126 (Fla. 4th DCA. 2001)) (emphasis added). In fact, "[s]trict liability… failure to warn cases boil down to three elements that Plaintiff must prove: 1) that the warnings ***accompanying the item*** were inadequate; 2) that the inadequacy of the warnings proximately caused Plaintiff's injury; and 3) that Plaintiff in fact suffered an injury ***by using the product***." *Colville v. Pharmacia & Upjohn Co., LLC*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008) (internal citations omitted); *see also In re Standard Jury Instructions in Civil Cases – Report No. 13-01(Products Liab.)*, 160 So. 3d 869, 875 (Fla. 2015) ("A product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous."). The undisputed facts show that Plaintiff never used a product manufactured or distributed by Mosaic, rather she is alleging adverse medical effects from alleging inhaling Mosaic's emissions.

**CONCLUSION**

For the reasons provided above, the Court must grant Mosaic's request for summary judgment and dismiss Plaintiff's Second Amended Complaint in its entirety.

| | |
|---|---|
| Date: December 11, 2015 | /s/ Christopher Torres |
| | David B. Weinstein (FBN 604410) |
| | weinsteind@gtlaw.com |
| | Christopher Torres (FBN 0716731) |
| | torresch@gtlaw.com |
| | Ryan T. Hopper (FBN 107347) |
| | hopperr@gtlaw.com |
| | **GREENBERG TRAURIG, P.A.** |
| | 101 E. Kennedy Blvd., Ste. 1900 |
| | Tampa, Florida 33602 |
| | Telephone: (813) 318-5700 |
| | Facsimile: (813) 318-5900 |
| | |
| | Counsel for Mosaic Fertilizer, LLC |

## **CERTIFICATE OF SERVICE**

I certify that on December 11, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Christopher Torres
Attorney

TPA 512089116