# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RHONDA WILLIAMS, a single person,

     Plaintiff,

                                Case No. 8:14-cv-01748-MSS-TGW

v.

MOSAIC FERTILIZER, LLC, a Delaware
corporation

     Defendants.

_____/

## MOSAIC'S OPPOSITION TO PLAINTIFF'S RULE 60(b) MOTION

Plaintiff's motion for reconsideration must be denied (Doc. 147).  This Court's well-reasoned 41-page order is unquestionably correct on both the facts and law (Doc. 144).  Disregarding this reality—and disobeying this Court's admonition to "review the applicable rules and related case law that make clear that regurgitation of prior arguments is improper under Rule 60" (Doc. 146)—Plaintiff has done exactly that: she has simply reasserted arguments previously considered and rejected by the Court under the pretext that it "misconstrued" the facts, law, and application of the facts to the law.

The numerous arguments Plaintiff improperly attempts to recast after they were previously made in her opposition to Mosaic's *Daubert* motion directed to Dr. Mink (Doc. 103), or in her opposition to Mosaic's motion for summary judgment (Doc. 102) include the following: (1) the Eleventh Circuit's decision in *McClain* is inapposite (*compare* Doc. 147 at 2-4 *with* 102 at 12); (2) Dr. Mink could properly rely on the $SO_2$ NAAQS regulatory standard to demonstrate general and specific causation (*compare* Doc. 147 at 5-9 *with* 103 at 6-10);

(3) Dr. Mink appropriately relied on IRIS, Li, and Chakraborty (*compare* Doc. 147 at 9-11 *with* 103 at 4, 12-18); (4) Dr. Mink addressed alternative causation (*compare* Doc. 147 at 13-14 *with* 103 at 23-24); (5) Dr. Mink performed a dose/response analysis (*compare* Doc. 147 at 16-17 *with* 103 at 10-18); and (6) exposure to $SO_2$ at the NAAQS, *ipso facto*, causes injury (*compare* Doc. 147 at 18-19 *with* 103 at 6-9). This Court has carefully considered each of these arguments and rejected them. No fact or law justifies a different result.

Had Plaintiff heeded the Court's admonition to review Rule 60 precedent, she would have acted more judiciously:

> What Rule 60(b) . . . do[es] not provide is a means for litigants to obtain the district court's reconsideration of the claims and defenses its judgment adjudicated. *See Am. Bankers Ins. Co. v. Northwestern Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999) ("[T]he law is clear that Rule 60(b) may not be used to challenge mistakes of law which could have been raised on direct appeal[,]" the implication being that all that the Rule provides is a vehicle for attacking the integrity of the district court's judgment); *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985) ("[T]he plaintiff cannot use an independent action as a vehicle for the relitigation of issues."); *Bankers Mortgage Co.*, 423 F.2d at 79 (5th Cir. 1970) ("The independent action can not be made a vehicle for the relitigation of issues."); *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984) ("[Litigants] may not use proceedings seeking relief from or modification of a judgment under F.R. Civ. P. 60 simply to relitigate matters settled by the original judgment. . . ."); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 247 F.Supp.2d 1233, 1235 (D.Kan. 2003) ("Like a motion to reconsider, a motion under Rule 60(b) is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed.").

*Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1295 (11th Cir. 2004) (Tjoflat, J., concurring in part and dissenting in part); *see also, e.g., Jones v. S. Pan Services*, 450 F. App'x 860, 863 (11th Cir. 2012) (improper to use Rule 60(b) "to relitigate old matters decided by the district court"); *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012)

(Rule 60(b) motion "cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment"); *Rease v. Harvey,* 376 F. App'x 920, 921, n.2 (11th Cir. 2010) (improper to use Rule 60(b) to "review of claims previously rejected by this Court, or that could have been raised on direct appeal").[1]  This standard applies to both final and non-final rulings.  *Merrett v. Liberty Mut. Ins. Co.*, No. 3:10-cv-1195-J-12MCR, 2013 WL 5289095, at *1 (M.D. Fla. Sept. 19, 2013).

Then, after being expressly limited to twenty pages, Plaintiff again willfully disobeyed this Court by filing *more than 770 pages* of material containing additional argument cloaked in purportedly proffered affidavit testimony from Dr. Mink and Mr. Ungers.  This included supporting materials that were previously filed, produced in discovery, or referenced by Mr. Ungers.[2]  In addition to the Rule 60(b) prohibition against reargument, Plaintiff's submission of these affidavits was improper: (a) there was no evidentiary hearing at which such testimony could have been elicited in the first place, (b) no evidentiary hearing was ever noticed by the Court (*see* Docs. 130, 131, and 135), and (c) no hearing was required as a matter of law.  *Kumho Tire Co. v. Carmichael*, 526 US 137, 142 (1999) ("the law grants a district court . . . broad latitude when it decides *how* to determine reliability"); *Cook ex rel. Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005) ("no obligation to hold" a *Daubert* hearing).

---

[1]  This continues to be Plaintiff's pattern: *i.e.*, make arguments that fail and then make them more vociferously a second time.  *See e.g.*, Plaintiff's Objection to Magistrate Judge's Order Denying Plaintiff's Motion to Compel (Doc. 101); Plaintiff's Objection to Magistrate Judge's Order Granting Mosaic's Motion to Strike (Doc. 116).

[2]  Demonstrating her ongoing disregard for the Court's admonition, Plaintiff recently filed additional materials and condensed and withdrawn others (Docs. 154 and 155).

There is no science or law under which Plaintiff can prevail on the adjudicated counts in this action. This Court correctly concluded that Dr. Mink's proposed expert testimony was unreliable and properly granted summary judgment.[3] Plaintiff's reargument in the form of misstatements and mischaracterizations of fact, science, and law do nothing to change this.

## ARGUMENT

**I.     Rule 60(b) relief is extraordinary and reserved only for exceptional circumstances.**

As a threshold matter—whether purposeful or not—Plaintiff misstates the Rule 60(b) standard. While Rule 60(b) is given "liberal and remedial construction" as to *which subsection may be applicable* for the relief sought, whether a party is actually entitled to relief under Rule 60(b) is another matter. Among other things, relief under Rule 60(b) is extraordinary and may be based *only* on a clear error or plain misconstruction. *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992) (concluding that Rule 60(b) may apply when "a district court's mistake was 'clear on the record' and involved a 'plain misconstruction' of the law and the erroneous application of that law to the facts").[4] Plaintiff's more vociferous and embellished restatement of arguments already considered and rejected by this Court fail to demonstrate that it made any error, let alone clear error or plain misconstruction of the law.

---

[3]     While not a necessary basis for his exclusion, Dr. Mink's testimony—in his recently filed Affidavit or otherwise—may also be untrustworthy. Dr. Mink was asked at his deposition if he was ever excluded as an expert. He answered, "No, I have not," and "I wasn't excluded." Exhibit A, Mink Dep. Tr. at 228:25-229:13. His testimony, however, is belied by *Agere Systems, Inc. v. Advanced Environmental Technology Corporation*, Case No. 02-3830, 2008 U.S. Dist. LEXIS 91887, *57, n.28 (E.D. Pa. Aug. 18, 2008) ("the Court rejects Dr. Mink's testimony in its entirety due to serious concerns regarding his veracity.").

[4]     Despite this Court's admonition to review the Rule 60(b) caselaw prohibiting reargument, *Nisson* is the only Rule 60(b) case Plaintiff cites.

In reality, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). Put another way, Rule 60(b) is reserved only for exceptional circumstances. *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 690 (7th Cir. 2014) ("Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances.") (quoting *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 131 F.3d 625, 628 (7th Cir. 1997)); *In re Levaquin Products Liability Litigation*, 739 F.3d 401, 404 (8th Cir. 2014) ("Rule 60(b) provides for 'extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances.'") (quoting *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.,* 320 F.3d 809, 815 (8th Cir.2003)). Having failed to demonstrate clear error or plain misconstruction of the law, Plaintiff is also unable to articulate any exceptional circumstances rising to the level of the extraordinary relief contemplated by Rule 60(b).

Finally, "relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (quoting *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund,* 249 F.3d 519, 524 (6th Cir.2001)). Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by *clear and convincing evidence. See Ty Inc. v. Softbelly's, Inc.,* 517 F.3d 494, 498 (7th Cir.2008). "For reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions. . . . There is a badge of dependability necessary to advance the case to the next stage." *Burger King*, 181 F. Supp. 2d at 1370 (citations omitted). There are no close questions here and Plaintiff is incapable of

articulating any clear and convincing basis for relief under Rule 60(b) that can overcome the broad public policy favoring finality.

## II.     Plaintiff cannot satisfy the standard for relief under Rule 60(b)(1) and she is not entitled to relief.

This Court provided many well-founded grounds to exclude Dr. Mink's testimony, any of which, standing alone, provided a sufficient basis to exclude his testimony as unreliable.  In the aggregate, however, these grounds did not merely permit exclusion as a discretionary act—the wholesale absence of data and method *demanded* exclusion.  The failures included: (1) improper reliance on *ipse dixit*; (2) failure to offer a dose-response relationship; (3) improper reliance on regulatory standards for causation; (4) failure to account for background risk of disease; (5) failure to calculate any dose to Plaintiff; and (6) failure to perform a differential etiology.

Mosaic warned Plaintiff more than a year ago about Dr. Mink's failure to provide adequate bases and reasons for the opinions he offered in his expert report (Doc. 42). Plaintiff responded that Dr. Mink's report adequately identified the "how" and "why" of his opinions and she refused to correct or supplement his opinions (Doc. 45).[5]  Mosaic then took the deposition of Dr. Mink, which confirmed that he lacked any reliable bases or reasons for his opinions, and, accordingly, Mosaic moved to exclude his testimony (Doc. 89).  Plaintiff cannot now seek relief under Rule 60(b)(1) to avoid the consequences of an ill-advised,

---

[5]     Plaintiff also argued in her response that Dr. Mink had never "been challenged under Rule 26 during the course of [his] testimonial career[], nor [has he] been successfully challenged by motion to exclude testimony pursuant to *Daubert* . . . ."  (Doc. 42 at 2.)  This representation is inaccurate; if not in fact, certainly in spirit. *See* n.3, *supra*.

erroneous, and unsuccessful strategy to rely on unreliable expert testimony.[6]   *See US v. Davenport*, 668 F. 3d 1316, 1324 (11th Cir. 2012) ("[F]ailure to understand or review clear law cannot, as a categorical matter, constitute excusable neglect[.]").   Neither can Plaintiff seek relief under Rule 60(b)(1) to ask the Court to reconsider what it has already considered and properly ruled on:

> [It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court . . . already thought through — rightly or wrongly. . . .   The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.

*ZK Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)).   In fact, [i]n order to reconsider a judgment, there must be a reason why the Court should reconsider its prior decision, and the moving party must set forth facts or law of a *strongly convincing nature* to induce the Court to reverse its prior decision." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994) (emphasis added).   None of Plaintiff's rearguments satisfy the Rule 60(b) standard to grant such extraordinary relief.

---

[6]     Plaintiff's strategy also provides this Court with an equitable basis to reject her claim for relief.  She was afforded an opportunity more than a year ago to correct her expert's reports, but flatly refused.  She cannot now obviate Mosaic's right to finality by seeking to undo what she purposefully did long ago.  *See* Moore *et al.,* 12 MOORE'S FEDERAL PRACTICE § 60.22[5] (3d ed. 2008) ("The relief provided by Rule 60(b) is equitable in nature and, in exercising its discretion under Rule 60(b), a court may always consider whether the moving party has acted equitably.") (collecting cases); Wright *et al.*, 11 FEDERAL PRACTICE AND PROCEDURE § 2857, at 255 (2d ed. 1995) ("Equitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b).").

A.     **This Court properly interpreted and applied *McClain*, which required the exclusion of Dr. Mink's opinions.**

Contrary to Plaintiff's assertion, this Court did not commit substantive error of law or fact in its 41-page order.[7]  First, contrary to Plaintiff's argument—which she describes as the "error . . . at the heart of this Court's opinion" (Doc. 147 at 2)—this Court correctly interpreted and applied *McClain*, which Plaintiff fails to appreciate or accept.   In *McClain*, the Eleventh Circuit opined that the district court "essentially abdicated its gatekeeping role" by admitting unreliable scientific evidence.   *McClain v. Metabolife Int'l., Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).   *McClain* supports this Court's exclusion of Dr. Mink for the following reasons, all of which were correctly expressed in its order:

- He performed "no reliable groundwork for determining the dose-response relationship." *Id*. at 1241.

- He failed to "take into account the background risk." *Id*. at 1243.

- He improperly asked his audience to accept *ipse dixit*. *Id*.

- He improperly relied on studies that do not support his opinions. *Id*. at 1427.

- He improperly relied on public health guidelines as proxies for causation. *Id*. at 1249.

The Court was correct in relying on *McClain*, including its prohibition against using regulatory standards to demonstrate causation.   Plaintiff's argument that *McClain*—the law of this Circuit—is inapposite is inexplicable and, indeed, frivolous.

---

[7]   Recognizing the Court's admonition, and with respect for the careful and substantive analysis the Court performed, Mosaic will endeavor to avoid repeating arguments made in its *Daubert* and summary judgment motions (Docs. 89 and 92), other than to make a few points that address some of the most fundamental of Plaintiff's many errors.  This Court's 41-page order identified these errors in more than sufficient detail.

**B.     This Court properly understood the science and law stating that regulatory health-based standards are not proxies for causation.**

Contrary to Plaintiff's argument, this Court correctly understood and applied the basic scientific and legal principles discussed in David L. Eaton, *Scientific Judgment and Toxic Torts—A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Pol'y 5, 15 (2003), and Margaret A. Berger, "The Supreme Court's Trilogy on the Admissibility of Expert Testimony," in REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, 33 (Federal Judicial Center, 2d. ed. 2000).   These address the fundamental importance of the dose-response relationship—the *sine qua non* of toxicology—and the fact that regulatory health-based standards are *not* proxies for determining causation.   Plaintiff must assess dose.   It "is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."   *McClain*, 401 F.3d at 1242 (quoting Eaton, *Scientific Judgment and Toxic Torts*, 12 J.L. & Pol'y at 15); *see also Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1339 (11th Cir. 2010) (same).   Plaintiff cannot escape this duty, and asking the Court to do so is asking it to abdicate its role as a gatekeeper, which is precisely what the Eleventh Circuit prohibits.   *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1192 (11th Cir. 2010); *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).   Dr. Mink unquestionably failed to assess dose and, instead, attempted to use a proxy that is legally lacking and scientifically unsound.

Having ignored dose, Plaintiff and Dr. Mink ask this Court to accept regulatory risk assessments as proxies for causation.   As this Court correctly concluded, however, regulatory health-based standards cannot be used as proxies.   They are *protective not predictive*. Moreover, contrary to Plaintiff's assertions, the 75 ppb $SO_2$ NAAQS is not causative and

cannot be used as Plaintiff suggests.   As the EPA Administrator concluded when the final

rule was adopted revising the SO$_2$ NAAQS:

> establishing a new [75 ppb] 1-hour standard *will appropriately protect public health with an adequate margin of safety*, and specifically *will afford requisite increased protection for asthmatics and other at-risk populations against an array of adverse respiratory health effects* related to short-term (5 minutes to 24 hours) SO$_2$ exposure.

75 FR 35520-01, *35550, 2010 WL 2481145 (June 22, 2010) (emphasis added).

Plaintiff's repeated misrepresentations that an exposure at the 75 ppb SO$_2$ NAAQS

*causes* respiratory morbidity is inexcusable when EPA Administrator states that it is

protective of "asthmatics and other at-risk populations against an array of adverse respiratory

health effects."   Ignoring this clear summary of the science, Plaintiff, in response to the

*Daubert* motion directed to Dr. Mink, represented that the "Clean Air Act Committee

concluded that exposure to 75 ppb of SO$_2$ causes (not 'may cause' or 'can cause,' but

actually DOES cause) respiratory morbidity in the general population including asthmatics

like Ms. Williams."   (Doc. 103 at 9 (emphasis in original).)   And despite the fact that the

Integrated Science Assessment for Sulfur Oxides (Health Criteria) ("ISA") on which the EPA

Administrator partly relied refutes Plaintiff's assertion, Plaintiff nonetheless cites it in

support of her misguided position.[8]

The ISA on which Plaintiff relies reported a causal connection between short-term

SO$_2$ exposures and respiratory morbidity, but, contrary to Plaintiff's representation, it *did not*

report that connection at 75 ppb.   (Doc. 103-5 at 199-220.)   Instead, the "definitive evidence"

---

[8]    Plaintiff also mistakenly believes the ISA was authored by the Clean Air Scientific Advisory Committee ("CASAC") (Doc. 103 at 6-7 (citing ISA, Doc. 103-5)).   It is authored primarily by EPA researchers and reviewed by CASAC.   Plaintiff should have recognized this in a simple review of the ISA she has repeatedly misrepresented. *See* Doc. 103-5 at 24-31.

for the causal connection came from human-exposure studies in which some exercising asthmatics exhibited respiratory morbidity following 5-10 minute $SO_2$ exposures at 200 and 400 ppb, which are between 2.6 to 5.3 times the 75 ppb level.[9]  Significantly, the 200 ppb results were determined to be "not statistically significant at the group mean level," and exposures below 200 ppb (*e.g.*, exposures at 75 ppb) were *never tested at all*.  75 FR 35520-01, at *35527.   Based on those human-exposure studies, and as discussed at length throughout the Final Rule, the EPA Administrator designed the operative $SO_2$ NAAQS largely to limit exposures at the 200 to 400 ppb levels.   *See, e.g.*, *id.* at *35541-42.  Completely belying Plaintiff's NAAQS-based position that 75 ppb exposures "actually" cause respiratory morbidity, the EPA Administrator considered setting the NAAQS as high as 150 ppb.  Ultimately, the 75 ppb level selected reflects "a public health policy judgment entrusted to the Administrator," *id.*at *35546, and includes within it "an adequate margin of safety for susceptible populations."  *Id.* at *35548.   In other words, as the Court itself acknowledged, exposures at 75 ppb are "safe" under EPA standards.[10]   (Doc. 144 at 18.)  Plaintiff has no basis for her misrepresentation that exposure at 75 ppb *causes* respiratory morbidity.

Regardless, Plaintiff now has "doubled down" on this misrepresentation, rearguing that exposure to 75 ppb *causes* respiratory morbidity and that this Court's conclusion to the contrary is "**factually incorrect**" (Doc. 147 at 9 n.19 (emphasis in original)).   Plaintiff's

---

[9]     *E.g.*, the ISA states, "[h]uman clinical studies consistently demonstrate respiratory morbidity among exercising asthmatics following peak exposures (5-10 min) to $SO_2$ concentrations $\geq$ 0.4 ppm [400 ppb], with respiratory effects occurring at concentrations as low as 0.2 ppm [200 ppb] in some asthmatics."  Doc. 103-5 at 208.

[10]    This is, for practical purposes, consistent with the fact that the Clean Air Act provides that attainment can be achieved up to "5 years from the date of nonattainment designation."  42 U.S.C. § 7514a.

verifiably mistaken assertion is contradicted by the plain language of her own authorities. This is indefensibly frivolous.

Purposefully or not, Plaintiff makes the same erroneous assertion for IRIS:

In general, risk values, such as those on IRIS, cannot be used to predict the actual incidence of human disease or the type of effects chemical exposures may have on humans. This is due to the numerous UNCERTAINTIES involved in risk assessment, including those associated with extrapolations from animal data to humans and from high experimental doses to lower environmental exposures. The organs affected and the types of adverse effects resulting from chemical exposure may differ between study animals and humans. In addition, many factors besides exposure to a chemical influence the occurrence and extent of human disease.

Integrated Risk Information System (IRIS); Health Risk Assessment; Guidelines, etc., 53 FR 20162-02 (emphasis in original). The impropriety of using health-based standards as proxies for causation is recognized by both the regulatory community and the courts: "If the level of exposure was below th[e] no observable effect, or threshold, level, a relationship between the exposure and disease cannot be established." REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (3d ed. 2011) at 669. Dr. Mink never reliably suggested that Plaintiff was exposed to a dose above the health-based standard—let alone at or above the no observable effect level, which is almost three times higher.

Plaintiff's assertion that the Court was wrong to reject the well-accepted notion that regulatory health-based standards cannot be used as proxies for causation is an imprudent invitation to this Court to commit reversible error. The Court was correct to exclude Dr. Mink's testimony for failing to assess the dose-response relationship and attempting to use regulatory health-based standards in an effort to mitigate his many failures.

**C.**   **This Court correctly noted that the Li and Chakraborty studies on which Dr. Mink relied directly contradicted his opinions, thus rendering them unreliable.**

Contrary to Plaintiff's argument, this Court correctly understood the Li and Chakraborty studies, which directly refuted Dr. Mink's opinions.  Incredibly, Plaintiff now argues (Doc. 142 at 10) that Dr. Mink disagrees with the studies he once referred to as "trusted."[11]  In fact, Dr. Mink trusted these studies so much that he testified he did not need to perform dose calculations because they had been performed by Li.[12]  What Dr. Mink failed to consider in relying on the Li study, was what this Court astutely observed:

> Ultimately, however, Li concluded that the concentrations of HAPs detected in the study *were below regulatory levels and did not pose health risks to the general population*.  These findings undermine Dr. Mink's conclusion that the Mosaic emissions exposed Plaintiff to unsafe levels of chemicals.

(Doc. 144 at 19 (emphasis added.))   Regarding Chakraborty, the Court correctly observed that he "did not study emissions specifically from phosphate facilities," and that "industrial facilities . . . contributed the least to cancer risks . . . ."  (*Id*. at 20.)   The Court correctly concluded as to both Li and Chakraborty: "To the extent the studies measure concentrations of any of the constituents, they show that those concentrations fall below regulatory levels." (*Id*. at 21.)  Thus, the Court was correct to conclude that the Li and Chakraborty studies cast Dr. Mink's conclusions under the shadow of unreliability.

---

[11]   Mink Dep. Tr. at 203:14-15.

[12]   *Id*. at 26:9-25.

**D.     This Court correctly recognized that Dr. Mink failed to account for background risk or rule out potential alternative causes.**

Contrary to Plaintiff's argument, this Court correctly observed that Dr. Mink failed to consider background risk and rule out potential alternative causes for Plaintiff's illnesses. There is no question that in addition to failing to address the dose-response relationship between the constituents of concern and the illness Plaintiff alleges were caused by those COCs, Dr. Mink also failed to address alternative causes—be it alternative sources of COCs or alternative causes of disease.   Other than arguing that Dr. Mink reviewed Plaintiff's medical records or that he performed a Bradford Hill causation analysis, which was pure *ipse dixit*, the Court correctly observed that Dr. Mink lacked "knowledge of the background risks of Plaintiff's diseases" (Doc. 144 at 23), and "nowhere in his report is there any indication that [he] attempted to rule out alternative causes of Plaintiff's illnesses." (*Id*. at 30.)   There is no indication in either his report or his deposition testimony that Dr. Mink considered (a) known nearby sources of $SO_2$ emissions; (b) Plaintiff's morbid obesity, allergies, or sedentary lifestyle; (c) Plaintiff's *three decades* of exposure to secondhand smoke, (d) general background risk, or (e) psychological influences such as somaticism.   This Court had correctly identified yet another failure of Dr. Mink demonstrating that his opinions are unreliable.

**E.     This Court correctly observed that Dr. Mink failed to perform the single most important work of a toxicologist—the duty to address the dose-response relationship.**

Contrary to Plaintiff's argument, this Court correctly concluded that Dr. Mink ignored the requirement of addressing a dose-response relationship.   Dr. Mink flatly admitted at his deposition that he never performed any dose-response calculations:

Q.  [S]o you did not perform any dose calculations for Miss Williams because you don't believe you needed to; is that right?

A.  We didn't need to, that's correct.

Q.  Okay.

A.  They've been done.

Q.  They had been done by whom?

A.  They had been done for the general population by IRIS, by US EPA, and by Li, which he applied them specifically to her neighborhood.

Q.  To her neighborhood.  How about to her, did anyone apply any of these calculations directly to her, Miss Williams?

A.  No one has and no one could.

Q.  All right.  And you did not of course?

A.  No, I did not.[13]

As noted above, (a) Dr. Mink could not properly rely on health-based standards as proxies for causation; and (b) Li concluded that the HAPs he studied "did not pose health risks to the general population."  In addition to the admission cited above, this Court observed in a careful reading of Dr. Mink's deposition testimony that he admitted on at least five occasions that he had no knowledge of dose.  (Doc. 144 at 25-26.)  In fact, when asked whether he performed any specific dose calculation for the Plaintiff, Dr. Mink not only admitted he had not, he went even further asserting, "it can't be done."[14]  Plaintiff's assertion that Dr. Mink addressed the dose-response relationship is directly, explicitly, and unequivocally contradicted by his repeated testimony that he did not.

---

[13]  Mink Dep. Tr. 26:9-25.

[14]  Mink Dep. Tr. 27:3.

**F.     This Court correctly recognized that Dr. Mink failed to establish general causation.**

Contrary to Plaintiff's argument, this Court correctly concluded that Dr. Mink failed to establish general causation.   In its lengthy treatment on Plaintiff's failure to establish general causation, this Court addressed the critical nature of the dose-response relationship, which Dr. Mink admittedly failed to address.   The Court also addressed the fact that Dr. Mink could not rely on regulatory health-based standards to do what he himself failed to do because (a) in some instances regulatory standards did not exist for the COCs in question; (b) health-based standards are improper proxies for causation in any event; and, (c) Dr. Mink relied on "trusted" studies that reached conclusions "that are at odds with" his own.   (Doc. 144 at 21.)  Plaintiff's argument that Dr. Mink established general causation is meritless.

**G.     This Court was unquestionably correct in concluding that Dr. Mink's opinions were speculative and conclusory.**

Finally, contrary to Plaintiff's argument, this Court correctly concluded that Dr. Mink's opinions were speculative and conclusory.   Based on the myriad of reasons provided in the Court's 41-page order, it is surprising that Plaintiff would be so brazen as to argue that the Court committed error, particularly after being warned not to regurgitate arguments already made and rejected.

**III.    Plaintiff has neither attempted nor can she satisfy the standard for relief under Rule 60(b)(6).**

Relief under Rule 60(b)(6) is limited to a showing of exceptional circumstances. *Crapp v. City of Miami Beach Police Dep't.,* 242 F.3d 1017, 1020 (11th Cir. 2001) ("[R]elief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.") (quoting *Griffin v. Swim-Tech Corp.,* 722 F.2d at 680 (citations

omitted)). *See also Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000) ("a Rule 60(b)(6) motion, by which a court has discretion to grant a new trial for 'any other reason justifying relief from the operation of the judgment,' is intended 'only for extraordinary circumstances.'") (quoting *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1288 (11th Cir. 2000)); *Rice v. Ford Motor Co.*, 88 F.3d 914, 919 (11th Cir. 1996) ("relief under Rule 60(B)(6) 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'") (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)); *Matthews v. Watts*, Case No. 2:11-cv-549-FtM-29SPC (M.D. Fla. Sept. 27, 2012) (J. Steele) ("Relief under [Rule 60(b)(6)] is 'exceedingly rare' and 'does not offer an unsuccessful litigant an opportunity 'to take a mulligan.''") (quoting Federal Rules Civil Handbook, Rule 60, Reason 6) (citations omitted)). Moreover, Rule 60(b)(6) relief is not a substitute for an appeal. *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 668 (7th Cir. 2014).

Plaintiff is required to articulate these exceptional circumstances in a manner sufficient to persuade the Court. *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996) ("a Rule 60(b)(6) movant 'must persuade [the court] that the circumstances are sufficiently extraordinary to warrant relief.'") (quoting *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987)); *see also Rease v. Harvey*, 376 F. App'x 921, 921 (11th Cir. 2010) (movant must show "a basis, to the district court or on appeal, as to why he should be relieved from the district court's final judgment or how, absent such relief, an 'extreme' or 'unexpected' hardship will result.") (quoting *Griffin*, 722 F.2d at 680). In fact, Plaintiff "must demonstrate a justification so compelling that the [district] court was required to vacate its order." *Cano*

*v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (quoting *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir.1993)).

Plaintiff's improper relitigation of arguments previously rejected by this Court do not implicate any exceptional circumstances nor do they demonstrate a justification so compelling that this Court would be required to reverse itself. And "[e]ven then, whether to grant the requested relief is . . . a matter for the district court's sound discretion." *Rease*, 376 F. App'x at 921. Plaintiff is not entitled to relief under Rule 60(b)(6). No exceptional circumstances exist and Plaintiff cannot—and does not—even attempt to articulate one. All Plaintiff attempts is to remake arguments this Court considered and rejected.

## IV.    Plaintiff's supplements in the form of affidavits are improper.

In addition to ignoring this Court's admonishment and the law prohibiting use of Rule 60(b) as a vehicle for reargument, Plaintiff also submitted with her Rule 60(b) motion 770 pages of supplemental affidavits and supporting materials from her excluded expert, Dr. Mink, and another Plaintiff expert, Mr. Ungers (Docs. 148, 149, 150, 151, and 152). Just recently, Plaintiff submitted additional materials and withdrew others (Docs. 154 and 155). These submissions purposefully violate this Court's order limiting Plaintiff to 20 pages for her Rule 60(b) motion and are otherwise improper submissions regardless of the Court's clear instructions. It is improper to file supplemental materials without leave and a demonstration of good cause after a disclosure deadline has lapsed.[15] *Pacific Coast Marine*

---

[15]    Both Dr. Mink's and Mr. Ungers's supplements are untimely under this Court's Amended Case Management and Scheduling Order ("ACMSO") (Doc. 51), which also provides, "the parties may not alter the terms of this Order without leave of Court," and "[f]ailure to disclose [expert testimony] may result in the exclusion of all or part of the testimony of the expert witness." (*Id.* at 3.)

*Windshields Ltd. v. Malibu Boats, LLC*, Case No. 6:12-cv-33-Orl-28DAB, 2014 WL 4638857, at *5 (M.D. Fla. Sept. 15, 2014).

Further, Dr. Mink's affidavit (a) remains unreliable, (b) is improperly offered as proffered testimony, and (c) merely embellishes testimony previously considered and rejected by this Court as unreliable.  Mr. Ungers's affidavit is (a) superfluous because this Court never had to consider his expert report in order to grant summary judgment in Mosaic's favor, (b) still remains unreliable, (c) is improperly offered as proffered testimony, and (d) restates testimony previously excluded by this Court as untimely served.[16]

Plaintiff's supplements should be struck as improperly submitted in violation of this Court's admonishment, the ACMSO, and guiding case law.

## V.    Plaintiff's willful violation of this Court's order warrants sanctions.

Plaintiff's willful disregard for this Court's order directing her "to review the applicable rules and related case law that make clear that regurgitation of prior arguments is improper under Rule 60" warrants sanctions.[17]  Plaintiff's decision to disobey this Court's order should be sanctioned under this Court's inherent authority to enforce its orders.  This Court may also sanction Plaintiff's counsel under this Court's enforcement of the ACMSO requiring counsel to comply with Rule 1, which is intended to discourage wasteful pretrial activities, and its warning that "[t]he Court will impose sanctions on any party or attorney . . . who otherwise fails to comply with this order" (Doc. 51 at 1 and 12).  These sanctions

---

[16]    *See generally* Mosaic's Motion to Exclude Untimely Expert Disclosures, Or Alternatively, Leave to Serve a Responsive Disclosure (Docs. 76), Order granting motion to exclude as untimely (Doc. 106), and Mosaic's Opposition to Plaintiff's Objection to The Magistrate Judge's Order Granting Mosaic's Motion to Exclude (Doc. 122).  Docs. 76 at 3-5 and 122 at 6-8 address the unreliability of Mr. Ungers's Spearman rank-order correlation coefficient, which is unreliable regardless of how many times Plaintiff repeats it.

[17]    *See* pp. 1 and 2, above, for a list of regurgitated arguments.

"include but are not limited to an award of reasonable attorneys' fees and costs, the striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt of court." *Id*. at 12.  Finally, this Court may sanction Plaintiff's counsel under 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").[18]

All of these grounds for sanctions are appropriate given Plaintiff's decision to willfully disobey this Court's admonition.  Plaintiff's conduct has wasted judicial resources and caused Mosaic to incur fees and costs in responding to a Rule 60(b) motion that should have never been filed.

## CONCLUSION

Plaintiff's request for relief under Rule 60(b) should be summarily denied.  Plaintiff is not entitled to use Rule 60(b) "to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment." *Smith,* 488 F. App'x at 428. Given the fees and costs incurred in compelling Mosaic to prepare this opposition to a frivolous Rule 60(b) motion filed in direct defiance of this Court's express admonition, Mosaic also requests that this Court enter an order obligating Plaintiff's counsel to pay Mosaic's reasonable fees and costs associated with preparing and filing this opposition and granting all other relief this Court deems just and appropriate.

---

[18]    Plaintiff has adopted a practice of unreasonably multiplying proceedings by filing weak and unavailing arguments with this Court and then refiling the same arguments with additional embellishments when the Court advises her of the wrongness of her positions. *Compare* Docs. 60 with 101, and 91 with 116.

Date: August 15, 2016

/s/ Christopher Torres
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Ryan T. Hopper (FBN 107347)
hopperr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone:  (813) 318-5700
Facsimile:  (813) 318-5900

*Counsel for Mosaic Fertilizer, LLC*

## CERTIFICATE OF SERVICE

I certify that on August 15, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Christopher Torres
Attorney

*TPA 512213932*