## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RHONDA WILLIAMS, a single person,

     Plaintiff,

v.                           Case No. 8:14-cv-01748-MSS-TGW

MOSAIC FERTILIZER, LLC, a Delaware
limited liability company,

     Defendant.

_____/

## MOSAIC'S MOTION *IN LIMINE*
## TO EXCLUDE EVIDENCE OF STIGMA DAMAGES

In accordance with Federal Rules of Evidence 402, 403, and 701, Mosaic moves *in limine* to exclude Plaintiff's testimony and evidence of stigma damages and diminution in value to her property.

## SUMMARY

The Court's summary judgment order left only one claim in this action, a property-damage claim brought under section 376.313 of Florida's Water Quality Assurance Act. (Doc. 144, pp. 38–41.)  As the Court explained, the "Act provides 'a private cause of action to any person who can demonstrate damages *as defined under the statute*.'" (*Id.* at 38 (emphasis added) (quoting *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1222 (Fla. 2010)).  "'Damage,' as used in chapter 376, is defined as 'the *documented extent* of any *destruction to or loss of* any real or personal property . . . as the *direct result* of the discharge

of a pollutant.'" (*Id.* at 144 (emphases added) (quoting Fla. Stat. § 376.031(5)).)[1]  Plaintiff's only claimed basis for damages "is for diminished value of her property"—specifically, for an alleged diminution in her home's value purportedly resulting from a stigma associated with emissions from Mosaic's Riverview facility.  (*Id.* at 39 n.9.)

Plaintiff's home is in Progress Village—a neighborhood where, evidently, property values are on the rise.  Over the course of this action, Plaintiff has disclosed three "appraisals" of her home, each of which assigned it a greater market value than the last.[2] Plaintiff intends to introduce one or more of those appraisals to support her diminution claim. Importantly, however, Plaintiff does not intend to argue that the appraisals are correct and reflect a documented, stigma-induced diminution in market value.  Rather, Plaintiff intends to testify—*herself*—that the professional appraisals are incorrect because they fail to account for an undocumented exposure and stigma.  Specifically, Plaintiff's three-part theory of damages is that: (1) her home and surrounding neighborhood are continually exposed to certain airborne substances in concentrations capable of affecting human health; (2) the market for her home does not presently reflect knowledge of that exposure; and (3) if it did, her home would have no market value whatsoever.

The Court should exclude Plaintiff's testimony for three independent reasons:

First, Plaintiff's testimony is irrelevant.  Her entire theory of damages is geared towards proving undocumented stigma damages, but, as addressed above, undocumented

---

[1] *Accord Curd*, 39 So. 3d at 1221.

[2] More specifically, Plaintiff disclosed two assessments from the Hillsborough County Property Appraiser and one private appraisal, but she considers all three valuations to be appraisals for purposes of her damages calculations.

Greenberg Traurig, P.A.

damages are not recoverable under chapter 376.   For that reason, the existence (or nonexistence) of undocumented stigma damages is not a "fact of consequence in determining [this] action," Fed. R. Evid. 401(b), and therefore evidence offered to prove that fact "is not admissible," Fed. R. Evid. 402.

Second, even if Plaintiff's theory of damages was relevant, her supporting testimony would be inadmissible as an improper lay opinion.   Plaintiff's proffered testimony, at a minimum, involves elements of:

- Exposure science (*e.g.*, an exposure assessment)

- Toxicology (*e.g.*, a dose reconstruction); and

- Real-estate appraisal (*e.g.*, a market evaluation).[3]

And, ultimately, Plaintiff's opinion calls for the hallmark of expert testimony, an answer to a hypothetical question: "How would the market value Plaintiff's home under different conditions?"   Plaintiff, however, does not purport to be, and is not, an expert in any discipline.   To the contrary, she a 49-year-old woman who, following a brief stint as a computer programmer, has not worked in nearly 25 years.   She has no toxicological or real-estate appraisal training.   Having inherited her lifelong home from her parents, she has never purchased real property.   And, as of her deposition last year, she had never attempted to sell or lease her home, nor had she so much as spoken to a real-estate professional about the prospect of doing so.   (*See* Dkt. 102-2, pp. 72, 150–51.)   In short, Plaintiff's proposed testimony requires specialized knowledge that she does not possess, it would turn on market

---

[3]  Arguably, Plaintiff's proffered testimony also involves a legal opinion on *Johnson v. Davis* disclosures, *see* 480 So.2d 625 (Fla. 1985), as well as an understanding of the economic, physiological, and hedonic drivers of market behavior.

assumptions extrapolated from transactions in which she did not participate, and, at bottom, it comes down to naked conjecture about how a hypothetical purchaser would react to a hypothetical sale of her home that is hypothetically exposed to pollutive discharges three miles away.  Plaintiff's proffered testimony is therefore inadmissible under Federal Rule of Evidence 701.  "While lay witnesses may testify about their own immediate perceptions, testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron v. Sec'y of Florida Dept. of Children & Families*, 772 F.3d 1352, 1372 (11th Cir. 2014).

Third, even if Plaintiff's testimony were otherwise admissible, it should be excluded because its probative value is substantially outweighed by its danger of unfair prejudice. Valuation testimony based "solely on speculative factors" or "naked conjecture" has "minimal probative force."  *Dietz v. Consol. Oil & Gas, Inc.*, 643 F.2d 1088, 1094 (5th Cir. 1981).  And, by contrast, testimony regarding alleged contamination is, by nature, "prejudicial"—so much so that the Florida Supreme Court has held:

> An opinion as to a decrease in value cannot be a mere surmise that because property is contaminated, it logically follows that the value of the property is decreased.  *There must be a factual basis through **evidence of sales of comparable contaminated property** upon which to base a determination that contamination has decreased the value of the property.*

*Finkelstein v. Dep't of Transp.*, 656 So. 2d 921, 925 (Fla. 1995); *see also Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1306 n.28 (11th Cir. 1999) ("Florida evidence law governing the relevance of and prejudice created by evidence is essentially the same as the Federal Rules of Evidence.").  As Plaintiff's proffered contamination testimony boils down "a mere surmise that because property is [allegedly] contaminated, it logically follows that

the value of the property is decreased," her testimony has minimal probative value and a material danger of unfair prejudice.  It should therefore be excluded under Federal Rule of Evidence 403.

The rule that an "owner of property is generally qualified to testify as to the value of his own property" does not affect this analysis.  *Levinson v. Landsafe Appraisal Services, Inc.*, 558 F. App'x 942, 945–46 (11th Cir. 2014).  As both the U.S. Court of Appeals for the Eleventh Circuit and numerous Florida courts have held, "the presumption that an owner is sufficiently familiar with property to give an admissible opinion as to its value is a fragile one," and it does not apply where, as here, the opinion testimony "rests on unsupported speculation."  *Id.* at 945–46 (collecting cases).  This should especially be the case when the Plaintiff raises the additional complexities of exposure, health, hedonic damages, market behavior, and the psychology of purchasers.

Finally, to the extent Plaintiff intends to offer any evidence of diminution in value based on a theory or on evidence not previously disclosed, Mosaic moves for its exclusion under the Rule 37(c) automatic-exclusion provision.  *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010).

## BACKGROUND

This was initially a six-count action in which Plaintiff alleged she suffered personal injury and property damages caused by airborne emissions from Mosaic's Riverview facility. (Dkt. 24,¶¶ 104-48.)  At the time Mosaic filed its summary judgment and *Daubert* motions, Plaintiff was claiming $62,912,771 in compensatory and punitive damages for her alleged personal injury and only $39,562 for her alleged property damages.  (Ex. A.)  In other words,

Greenberg Traurig, P.A.

Plaintiff's property claim accounted for only 0.0006% of her calculated damages.  For that reason, Mosaic directed the bulk of its briefing to Plaintiff's personal-injury claims, on which the Court ultimately granted summary judgment in Mosaic's favor after excluding the testimony of Plaintiff's proffered toxicologist as unreliable.  (Dkt. 144.)

Mosaic moved for summary judgment on Plaintiff's section 376.313 property-damage claim on the basis that there was no evidence of property damages, but the Court denied Mosaic's motion based on a footnote in Plaintiff's summary judgment opposition, in which Plaintiff represented that she would testify concerning diminution to the value of her home as a result of emissions from Mosaic's Riverview facility.  (*See* Dkt. 144, p. 39; Dkt. 102, p. 19 n.69.)  Until now, the admissibility of that proffered testimony has gone unchallenged.

On June 12, 2015, Mosaic propounded a set of interrogatories in which it asked Plaintiff, among other things, to identify "all damages" that she claims to have suffered and to include: (1) "the specific amount" claimed for property damages; (2) "the ***complete calculation*** of the alleged property damages"; and (3) "***any*** criteria, rationale, bases, or grounds (whether reasoned or arbitrary) [on which she] relied on in calculating property damages."  (Ex. B, Interrogatory 8(d)–(e).)  The amount of her claimed damages has increased over time because property values in Progress Village are allegedly rising, but the rationale for the alleged diminution in value has remained essentially the same.  In her most recent answer, Plaintiff explains the "specific amount" of her claim as follows:

> "The greater of i.) the amount of an independent appraisal, ii.) $90,000, based on the most recent sales information of comparable homes (available post the service of Ms. Williams' initial response to Defendant's interrogatories in July of 2015), or iii.) the most recent appraised market value of her home per the Property Appraiser for Hillsborough County.  Ms. Williams

> contends that due to the long-term and on-going nature of the pollutive discharge by Mosaic, remediation is implausible and not possible, and thus, she is entitled to damages for the total loss of value in her property, including diminution in value and/or stigma damages.

(Ex. C, Response 8(d).)  As for the underlying "criteria, rationale, bases, or grounds" for her damages, Plaintiff offers only one:

> Ms. Williams contends the property has **no present value** as any sale would require the disclosure of the toxins found in and around the home and neighborhood, as previously produced in this action, which came directly from Mosaic Fertilizer. Ms. Williams **does not believe** that a rational, educated person, who had knowledge of the presence of the toxic emissions and/or their **long-term health effects** would want to acquire residential property in her neighborhood; and that her property is damaged by the stigma associated with the continual and on-going exposure to Sulfur Dioxide, Arsenic, Cadmium, Chromium, Barium, Radioactive isotopes and other hazardous air pollutants.  Under the law, a seller in Florida must disclose any facts to a potential buyer that would affect the value of the property.  Here, Ms. Williams would be required to disclose the presence of Sulfur Dioxide, Radioactive isotopes and other hazardous air pollutants found at her property and in and around her neighborhood.

(*Id.*, Response 8(f) (emphasis added).)  Plaintiff's Rule 26 disclosures confirm her theory of damages:[4]

> Plaintiff's home and surrounding neighborhood and community has been contaminated by a pollutive discharge of gaseous sulfur dioxide and hazardous air pollutants, which has resulted in stigma damages, and diminution of property values, including the value of Ms. William's primary residence located at 4810 S. 87th Street, Tampa, FL 33619.
>
> Under Florida law a seller of a residence is required to make certain disclosures that he/she knows may impact the value of

---

[4]  By separate motion, Mosaic has moved to exclude the most recent disclosures as untimely and improper.  (Dkt. 162.)

Greenberg Traurig, P.A.

the real property.  Here, Plaintiff would be obligated to make disclosures related to the pollutive discharge, which will have a direct negative impact on the value of her primary residence. This pollutive discharge has created stigma damages, as the pollutive discharge cannot be remediated.

Based upon a residential property appraisal of Ms. Williams' residence located at 4810 S. 87th Street, performed by CMG Appraisals, Inc., and other comparable sales that have occurred in the Progress Village area and surrounding community, the fair market value of Ms. Williams' residence prior to disclosure of the pollutive discharge, *e.g.*, absent the pollutive discharge, is no less than $90,000. The Hillsborough County Property Appraiser's Market Value for 2015 was $49,896. The stigma damages result in making Ms. Williams' property ***valueless***.

(Ex. D (emphasis added).)  Finally, in her response to Mosaic's motion to strike Plaintiff's most-recent disclosures, Plaintiff confirms that she intends to support her diminution theory of damages ***through her own testimony***.  (Dkt. 164, pp. 1-2 (discussing Plaintiff's intent to testify regarding the value of her property).)

## STANDARDS

This is a diversity-jurisdiction case.  "Under this circuit's controlling precedent regarding diversity jurisdiction cases, the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence." *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997).  However, because Florida law controls substantive issues, Florida law "may assist in defining what evidence is material to an issue." *Cortes*, 177 F.3d at 1306.  Moreover, "Florida evidence law governing the relevance of and prejudice created by evidence is essentially the same as the Federal Rules of Evidence." *Id.* at 1306 n.28. Courts have wide discretion in determining the admissibility of evidence. *E.g.*, *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005).

## DISCUSSION

**I.      Plaintiff's proffered valuation testimony is irrelevant because it is designed to prove damages not recoverable under section 376.313.**

As addressed above, Plaintiff's sole remaining claim is statutory, brought under section 376.313 of Florida's Water Quality Assurance Act.  As interpreted by the Florida Supreme Court, "[t]he "Act provides 'a private cause of action to any person who can demonstrate damages *as defined under the statute*,'" and the statute defines damages as "'the *documented extent* of any *destruction to or loss of* any *real* or personal *property* . . . as the *direct result of the discharge of a pollutant*.'"  *Curd*, 39 So. 3d at 1221 (citation omitted) (emphases added).  "With regard to statutory interpretation, the United States Supreme Court has stated that it is the duty of a court 'to give effect, if possible, to every clause and word of a statute,'" and to afford terms their plain and ordinary meaning.  *See Vreeland v. Ferrer*, 71 So. 3d 70, 80 (Fla. 2011).  Applying those principles, the Florida legislature's decision to limit available damages under Chapter 376 to the "documented extent" of a loss reflects a decision to exclude undocumented, speculative damages.  *See Curd*, 39 So. 3d at 1221.  Any other reading would render the terms "documented extent" mere surplusage.

Accordingly, any evidence proffered in support of Plaintiff's theory of damages—the central premise of which is that market for her home does not yet reflect a stigma associated with Mosaic's emissions and therefore Plaintiff's stigma damages have not yet been documented—would be irrelevant.[5]  To be relevant, evidence must have a "tendency" to make a "fact . . . of consequence in determining the action" more or less probable than it

---

[5]  Plaintiff's theory is particularly specious in light of the fact that the decades-old Riverview facility is plainly visible and heavily regulated by agencies subject to public review.

Greenberg Traurig, P.A.

would be without the evidence.   Fed. R. Evid. 401.   As undocumented damages are not

recoverable, evidence tending to make their existence more or less probable would have no

consequence in determining this action.   The Court should therefore exclude Plaintiff's

proffered diminution testimony as irrelevant.   *See* Fed. R. Evid. 402 ("Irrelevant evidence is

not admissible.").

## II.   Plaintiff's proffered testimony should be excluded as an inadmissible lay opinion.

The Court should additionally preclude Plaintiff's proffered valuation testimony as an

inadmissible lay opinion.

Federal Rule of Evidence 701 governs the admissibility of lay opinion testimony.

The Rule provides:

> If a witness is not testifying as an expert, testimony in the form
> of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or
> to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized
> knowledge within the scope of Rule 702.

Fed. R. Evid. 701.   Plaintiff does not contend that she is an expert in any discipline.

(*See* Dkt. 163 (omitting herself from her expert list in the pretrial statement).)   Accordingly,

Rule 701 controls whether Plaintiff's opinion testimony is admissible.

As addressed above, Plaintiff's proffered valuation testimony involves three related

assertions: (1) her home and surrounding neighborhood are continually exposed to certain

airborne substances in concentrations capable of affecting human health; (2) the market for

her home does not presently have knowledge of that exposure; and (3) if it did, her home

would have no market value whatsoever.  Each of these assertions amount to improper lay opinions.

To be admissible, Plaintiff's first assertion would require toxicological expertise that Plaintiff does not possess.  Importantly, Plaintiff's stigma claim is ***health-based***.  She intends to testify not only that "toxins" are continually present in her home and neighborhood, but also that they are present in concentrations that would pose "long-term health" concerns to a "rational, educated person."  (Ex. C.)  As the Court thoroughly addressed in its summary judgment order, "[a]ll substances are poisonous—there is none which is not; the dose differentiates a poison from a remedy."  (Doc. 144, p. 11 (citation omitted).)  Accordingly, reliable testimony that Plaintiff's home and neighborhood have been exposed to concentrations of substances that pose a legitimate threat to human health would require, at a minimum, a substance-by-substance exposure assessment and a substance-by-substance general causation assessment.  (*Cf. id.* at 26 ("Scientific knowledge of the harmful level of exposure to a chemical plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain plaintiff's burden in a toxic tort case." (citing *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1240 (11th Cir. 2005)).)  This sort of testimony is so inherently scientific that the Eleventh Circuit requires its submission through a qualified expert.  (*Id.* at 5.)  Allowing this sort of testimony to come in through Plaintiff—especially after the Court excluded Plaintiff's proffered toxicologist, Dr. Mink—would allow precisely the sort of harm Federal Rule of Evidence 701(c) was created to prevent:

> Rule 701 has been amended [to add Rule 701(c)] to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.  Under the amendment, a

> witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson.

Fed. R. Evid. 701 (advisory committee notes to 2000 amendment). The toxicology inherent in Plaintiff's proffered damages testimony and her lack of an expert toxicologist are reasons enough to exclude Plaintiff's testimony in its entirety.[6]

Similarly, Plaintiff's second and third assertions—that the market for her home does not presently reflect knowledge of the alleged exposure and, if it did, her home would have no market value whatsoever—require real-estate appraisal expertise that she does not possess. Under both Florida and Federal law, "[w]here fair market value is at issue, expert testimony is necessary to prove the value thereof."[7] *Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330, 1334 (Fla. 3d DCA 1985) (holding that "that the trial court erred in entering a judgment for damages based upon testimony and evidence amounting to pure speculation"); *see also, e.g.*, Fed. R. Evid. 701 (advisory committee notes to 2000 amendment) (identifying an appraiser as an expert). One reason for this is that "the selection of comparable properties requires knowledge of the critical characteristics of a given set of properties and how those

---

[6]   Incidentally, Plaintiff's remaining expert, Mr. Ungers, cannot testify regarding the concentrations of airborne constituents allegedly reaching Plaintiff's home and neighborhood because he did not attempt to conduct an exposure-assessment or a dose-reconstruction. (Ex. E, 65:3–66:15, 210:19–23.)

[7]   As addressed below, there is an exception to this general rule for homeowners, but the exception does not apply here.

characteristics are viewed in a given market," and that knowledge would not rationally be related to the witnesses perceptions; rather, it requires "the skills of an appraiser . . . qualified to testify as an expert under Rule 702." *Cuyahoga Metro. Hous. Auth. v. United States*, 60 Fed. Cl. 481, 483 (2004) (collecting cases).  Put another way, a witness's testimony regarding his or her observation of or participation in sales of particular properties might rationally be based on the witness's perceptions, but extrapolating a market's scope and critical characteristics from those sales requires a process of reasoning that is not employed in everyday life. *See id.*; Fed. R. Evid. 701 (advisory committee notes to 2000 amendments) ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." (citation omitted)).[8]  As addressed above, "testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron*, 772 F.3d at 1372.

**III.    Plaintiff's proffered testimony should be excluded because any minimal probative value is substantially outweighed by its potential for unfair prejudice**.

Perhaps most commonsensically, Plaintiff's proffered valuation testimony should be excluded because its speculative nature renders it probatively valueless, and its reliance on an allegation of contamination carries a very real prospect of unfair prejudice.

---

[8]  *See also Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1178–79 (D. Colo. 2006) (holding that real-estate agents could not offer lay opinion testimony of market-wide stigma based experiences selling individual properties "because the agents would then be giving opinions about transactions in which they did not participate, so that their opinions would not be 'rationally based on the perception of the witness,' and because this extrapolation from personal experience to generalized conclusions would require these witnesses to use their specialized knowledge as real estate agents").

Greenberg Traurig, P.A.

Federal Rule of Evidence 403 permits the Court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

The Eleventh Circuit and Florida courts consistently hold that valuation testimony based "solely on speculative factors" or "naked conjecture" has "minimal probative force." *Dietz*, 643 F.2d at 1094; *see also*, *e.g.*, *Sun Bank/N. Florida, N.A. v. Edmunds*, 624 So. 2d 753, 755 (Fla. 1st DCA 1993) ("[S]peculation and conjecture are inadmissible to prove the value of property."). Testimony regarding alleged contamination, however, is so "prejudicial" that it is admissible for valuation purposes only when it is "relevant as an explanation of the reason" for a ***documented*** decrease in a property's value and is supported by "evidence of sales of comparable contaminated property." *Finkelstein*, 656 So. 2d at 924. Put differently, "[a]n opinion as to a decrease in value cannot be a mere surmise that because property is contaminated, it logically follows that the value of the property is decreased." *Id.* at 925. Plaintiff's proffered opinion testimony rests on precisely that sort of unsupported "surmise," and thus it should be excluded under Federal Rule of Evidence 403.

**IV.     The general rule that homeowners may testify to the value of their property does not apply to Plaintiff's speculative testimony.**

In her recent response to Mosaic's motion to strike her untimely Rule 26 disclosures, Plaintiff argues that the "law of the state of Florida and the Eleventh Circuit" permit homeowners to testify to the value of their property without qualification. (Dkt. 164, pp. 2-3.) Not so. Both Florida courts and the Eleventh Circuit presume that "an owner of property is generally qualified to testify as to the value of his own property." *Levinson*, 558 F. App'x at 945. That presumption, however, "is a fragile one." *Id.*

14

The presumption originally comes from *Atlantic Coast Line Railroad Co. v. Sandlin*, in which the Florida Supreme Court held that an owner of property was qualified to testify to its value because he had *recently* purchased it.   78 So. 667, 668 (Fla. 1918).   The Court explained:

> Having just purchased it, [the owner] necessarily knew the original cost price, and alleges it in his declaration. It has been held that the cost of a thing is some evidence of its value; that ordinarily the owner of personal property is presumed to have such familiarity with it as to know pretty nearly, if not actually, what it is worth; [and] that evidence of the actual price that land brings upon a sale is relevant upon the question of its market value . . . .

*Id.* (citations omitted).   Generalizing from *Atlantic Coast*, Florida courts subsequently held that an owner is qualified to testify to property's value if the *valuation is based* on the owner's "familiarity with the characteristics of the property, knowledge or acquaintance with its uses and purposes, and experience in dealing with it."   *Salvage & Surplus, Inc. v. Weintraub*, 131 So. 2d 515, 516 (Fla. 3d DCA 1961).

However, where a property valuation is based on something other than an owner's familiarity with it, Florida courts do not presume that the valuation is admissible.   *E.g.*, *Trailer Ranch, Inc. v. Levine*, 523 So. 2d 629, 632 (Fla. 4th DCA 1988) ("If it be shown that the owner . . . does not have such familiarity, the opinion evidence is not admissible.").   To the contrary, Florida courts uniformly exclude valuation opinions—even from a homeowner—if the opinion is based on speculation or on information provided by a third party.   *Levinson*, 558 F. App'x 942, 945–46 (holding that federal and Florida law are in

agreement that an owner's valuation testimony is inadmissible if it "rests on unsupported speculation").[9]

The Eleventh and former Fifth Circuit apply the same rationale.  *See id.*  Importantly, this is an issue of ***admissibility***, not weight.  Although the former Fifth occasionally observed that "cross-examination or independent evidence" is the preferred means of attacking "the weight of opinion testimony," it emphasized that, "where the owner bases his estimation solely on ***speculative*** factors, the owner's testimony may be of such minimal probative force to warrant a judge's ***refusal even to submit the issue to the jury***." *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 699 (5th Cir. 1975) (citing *Klapmeir v. Telecheck International, Inc.*, 482 F.2d 247 (8th Cir. 1973); *United States v. Nall*, 437 F.2d 1177, 1187 (5th Cir. 1971)).[10]

In sum, neither the Florida nor federal rules authorize an owner to give inherently speculative valuation testimony simply because of her status as an owner.  Further, "that Rule

---

[9]  *See also, e.g., B & B Tree Serv., Inc. v. Tampa Crane & Body, Inc.*, 111 So. 3d 976, 978 (Fla. 2d DCA 2013) (holding that an owners' rental-value testimony was inadmissible because "he was ***just making an assumption*** regarding the rental value" (emphasis added)); *Craig v. Craig*, 982 So. 2d 724, 729 (Fla. 1st DCA 2008) (holding that the presumption that an owner is qualified to give valuation testimony was "not so broad as to permit [the owner] to ***hypothesize*** the property's net value at a future date after the property is transformed through the application of developmental ***expertise he does not possess***" (emphasis added)); *Tucker v. Tucker*, 966 So. 2d 25, 29 (Fla. 2d DCA 2007) (Altenbernd, J., concurring) ("[T]he husband did not simply offer his opinion of the value of the property as an owner.  He explicitly relied upon a valuation provided by a realtor who was held incompetent to testify as to value."); *Sun Bank/N. Florida, N.A. v. Edmunds*, 624 So. 2d 753, 755 (Fla. 1st DCA 1993) ("***[S]peculation and conjecture are inadmissible to prove the value of property***." (emphasis added)). *Cf. Beasley v. State*, 305 So. 2d 285, 286–87 (Fla. 3d DCA 1974) (holding that "the owner's testimony in the instant case does not qualify as competent proof of market value" because he "could not establish the present market value of the stereo when stolen").

Greenberg Traurig, P.A.

701 may authorize a witness to give a lay opinion on the value of his property does not mean that a landowner has *carte blanche* to espouse any opinion he pleases on the value of his land, free from the constraints of Rule 702 and *Daubert*." *United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in Madison County, Alabama*, 140 F. Supp. 3d 1218, 1242 (N.D. Ala. 2015) (collecting cases on property-owner valuation testimony).   Relying as it does naked conjecture and expertise Plaintiff does not possess, Plaintiff's valuation testimony is inadmissible, notwithstanding her ownership.

## V.   The Court should exclude all diminution-in-value evidence other than Plaintiff's testimony under Rule 37(c)(1)'s automatic-exclusion provision.

Finally, to the extent, if any, that Plaintiff intends to prove her diminution through evidence other than her own testimony, the Court should exclude the evidence or testimony under Federal Rule of Civil Procedure 37(c).

Rule 26(e) requires that a "party who has made a disclosure under Rule 26(a) . . . or who has responded to an interrogatory" must supplement timely supplement or correct incomplete or incorrect responses "as ordered by the court." Fed. R. Civ. P. 26(e)(1)(B). Rule 16(b)(3)(B)(1) allows the Court to set the deadline for Rule 26(e) disclosures.   And Rule 37(c) provides for automatic exclusion of evidence not disclosed pursuant to Rules 26(a) and (e):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is ***not allowed to use***

---

[10]   *See also Klapmeier*, 482 F.2d at 253 (holding that an owner's testimony lacked probative value because it "***rested upon circumstances not yet in existence***" and "***speculative factors***" (emphasis added)); *Nall*, 437 F.2d at 1187 ("[W]e hold that the owner's testimony of value alone was insufficient to support the verdicts of guilty because the presumption of the owner's special knowledge of the market value of the stock was so nearly negated by his own testimony as to render that testimony of little probative value.").

Greenberg Traurig, P.A.

> *that information or witness to supply evidence* on a motion, at a hearing, or *at a trial*, unless the failure was substantially justified or is harmless

Fed. R. Civ. P. 37(c)(1) (emphasis added).

As addressed above, Mosaic propounded a set of interrogatories on Plaintiff that required her to disclose "*any* criteria, rationale, bases, or grounds (whether reasoned or arbitrary) [on which she] relied on in calculating property damages."  (Ex. B (emphasis added).)   In all of her responses, Plaintiff's only disclosed ground for her property-diminution claim has been her subjective belief that prospective purchasers would not buy her home.  (*E.g.,* Exs. A, C, D.)  The time for amended disclosures has long-since passed. (*See* Doc. 162, pp. 1–4 (discussing the deadlines).)  Accordingly, to the extent, if any, that Plaintiff intends offer evidence of diminution in value to her home by another witness, Mosaic moves to exclude that evidence under Rule 37.

## CONCLUSION

For the reasons expressed above, Mosaic respectfully requests that the Court exclude Plaintiff's testimony and evidence of stigma damages and diminution to the value of her property as inadmissible under Federal Rules of Evidence 402, 403, and 701.

Greenberg Traurig, P.A.

Date:  December 12, 2016

Respectfully submitted,

/s/ Christopher Torres
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Ryan T. Hopper (FBN 107347)
hopperr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone:  (813) 318-5700
Facsimile:  (813) 318-5900

*Counsel for Mosaic Fertilizer, LLC*

## RULE 3.01(g) CERTIFICATION

The undersigned certifies that he conferred with Plaintiff's counsel who opposes the requested relief.

## CERTIFICATE OF SERVICE

I certify that on December 12, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Christopher Torres
Attorney