**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RHONDA WILLIAMS, a single person,

    Plaintiff,

v.                           Case No. 8:14-cv-01748-MSS-TGW

MOSAIC FERTILIZER, LLC, a Delaware
limited liability company,

    Defendant.
                                     /

## MOSAIC'S TRIAL BRIEF

Mosaic submits this trial brief pursuant to the Court's November 7, 2016 order. Dkt. 161. Below, Mosaic (a) contextualizes Plaintiff's remaining claim; (b) explains why it turns on inadmissible testimony; and (c) offers alternatives to trial.

**I. The Court granted summary judgment in Mosaic's favor on five of six claims after excluding the testimony of Plaintiff's expert toxicologist, Dr. Franklin Mink.**

This toxic-tort action began with a six-count complaint replete with incendiary and unsupportable rhetoric. Plaintiff, a 49-year-old resident of Progress Village, alleged Mosaic slowly "poison[ed]" her and her neighbors through airborne emissions from Mosaic's Riverview fertilizer-production facility three miles from her home. *See, e.g.*, Dkt. 24 at ¶¶ 37, 58.

Stripped of their rhetoric, Plaintiff's personal injury claims were that sulfur dioxide and certain hazardous air pollutants ("HAPs") travelled from the Riverview facility to her home in Progress Village and made her ill. This Court entered granted summary judgment in

Mosaic's favor on those claims because they were unsupported—in fact, refuted—by the proffered scientific evidence. Dkt. 144.

Plaintiff now endeavors to morph her remaining property damage claim into a stigma damages claim while relying on the same health-related foundation the Court rejected for her personal injury claims. Plaintiff "believes her property has no value, because of the contamination in and around her home caused by" Mosaic. Dkt. 24 at ¶ 103. This is based on her perception that her "real property has been invaded by . . . extremely toxic phosphogypsum dust and particulates, toxic and hazardous substances, radio active [*sic*] isotopes, sulfur dioxide as well as dangerous air toxicity levels." *Id.* at ¶ 99.

Plaintiff reasserts this foundation in the parties' Amended Joint Pretrial Statement:

> Rhonda Williams claims that a prohibited discharge or other pollutive condition has occurred at and around her residence and surrounding neighborhood. The prohibited discharge or other pollutive condition includes toxic emissions, like sulfur dioxide, and other hazardous substances, radioactive isotopes, in the air, dust and soils immediately surrounding and including Ms. Williams' home and the Progress Village neighborhood where she has lived her entire life. Ms. Williams contends that the prohibited discharge or other pollutive condition has damaged her property, resulting in stigma damages and diminution in value.

Dkt. 163 at 2.

A critical point this Court confirmed on summary judgment was "[t]his type of proof requires expert testimony." Dkt. 144 at 5 (quoting *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005)). "All substances are poisonous—there is none which is not; the dose differentiates a poison from a remedy." *Id.* at 11 (citation omitted). For that reason, proving that emissions from Riverview reached Plaintiff's home in concentrations

capable of affecting human health would, at a minimum, require a substance-by-substance analysis of the concentrations at which those emissions are harmful and the concentrations to which Plaintiff's home was exposed. "Scientific knowledge of the harmful level of exposure to a chemical plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain plaintiff's burden in a toxic tort case." *Id.* at 26 (quoting *McClain*, 401 F.3d at 1240).

To prove the personal injury claims this Court rejected, Plaintiff offered testimony from a causation expert, a toxicologist, Dr. Franklin Mink. *Id.* at 8. Dr. Mink, however, did not perform *any* calculations of exposure or dose. *Id.* at 12. Instead, he attempted to use regulatory risk-based standards as a proxy for "the harmful level of exposure to a chemical," and he relied on studies conducted by other scientists to show Plaintiff's actual level of exposure. *Id.* at 12-22. As this Court recognized, however, regulatory standards are protective, not predictive; they are not intended to be taken at face value, as Dr. Mink did, to prove general causation in a toxic-tort. *See id.* at 14. Moreover, the studies on which Dr. Mink relied to show Plaintiff's level of exposure actually contradicted the opinions he proffered. *See id*. at 21. This Court observed, "[t]o the extent the studies measure concentrations of any of the constituents, they show that those concentrations fall below regulatory levels." *Id.*

For these reasons and others, Mosaic moved to exclude Dr. Mink's proffered testimony (Dkt. 89), and the Court agreed (Dkt. 144). Accordingly, after a 22-page discussion of the unreliability of Dr. Mink's proffered testimony, the Court concluded that Plaintiff's health-related claims were "nothing more than a hypothesis," and "*[h]ypotheses*

3

*are verified by testing, not by submitting them to lay juries for a vote.*" *Id.* at 33 (emphasis added) (quoting *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1311 (11th Cir. 2014)).

Based on the exclusion of Dr. Mink's testimony, the Court granted summary judgment in Mosaic's favor on all of Plaintiff's personal-injury claims (*id.* at 40), but let one survive: Plaintiff's pending property-damage claim brought under section 376.313 of Florida's Water Quality Assurance Act. Dkt. 144 at 38-41. The Court explained, the "Act provides 'a private cause of action to any person who can demonstrate damages as defined under the statute.'" *Id.* at 38 (quoting *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1222 (Fla. 2010)). "'Damage,' as used in chapter 376, is defined as 'the documented extent of any destruction to or loss of any real or personal property . . . *as the direct result* of the discharge of a pollutant.'" *Id.* at 144 (emphasis added) (quoting Fla. Stat. § 376.031(5)). "Although a plaintiff is not required to show causation with regard to the fact of the pollution, she still must prove damage causation, i.e., that the pollution in question caused [her] damages." *Id.* (citation omitted).

At the time Mosaic filed its summary judgment and *Daubert* motions, Plaintiff was claiming approximately $63 million in compensatory and punitive damages for her alleged personal injury claims and $39,562 for her alleged property damages claim. *See* Dkt. 171-1. Accordingly, the parties focused their briefing on Plaintiff's personal-injury claims.

Mosaic moved for summary judgment on Plaintiff's property damages claim on the basis that there was no evidence of property damages, but the Court denied Mosaic's motion based on a footnote in Plaintiff's summary judgment opposition, in which she represented

she would testify concerning diminution to the value of her home as a result of emissions from Mosaic's Riverview facility. *See* Dkt. 144 at 39; Dkt. 102 at 19 n.69. Until Mosaic's timely filed motion *in limine*, the admissibility of that proffered testimony had not been challenged. *See* Dkt. 171.

**II.  Plaintiff now proposes to prove her remaining property damage claim through her own improper lay opinion testimony—including health-related, toxicological testimony that this Court already precluded Dr. Mink from offering.**

Plaintiff's Amended Joint Pretrial Statement representations and supplemental discovery and damages disclosures clarify the theory of her claim and purported proof of damages. *See id.* at 5-8 (collecting disclosures). ***Plaintiff intends to claim damages for a purported diminution in the value of her home attributable to a health-related stigma not yet recognized by or incorporated into the market value of her home***. She proposes to do this through her own testimony, which would necessarily rely on (a) the testimony of Les Ungers, an exposure scientist who failed to perform a fate-and-transport analysis,[1] and (b) Dr. Mink's excluded toxicology testimony. Plaintiff has not disclosed an actual toxicologist or real-estate appraisal exert. Dkt. 163-4.

Plaintiff's home is in Progress Village—a neighborhood where property values appear to be increasing based on Hillsborough County Property Appraiser tax assessments and a recent appraisal Plaintiff commissioned.[2] Importantly, Plaintiff does not intend to argue that the assessments and appraisal are correct and reflect a documented, stigma-induced diminution in market value. Rather, Plaintiff intends to testify—*herself*—that the

---

[1]  And whose late-disclosed purported "fingerprinting" analysis was separately excluded by this Court. *See* Dkts. 76 and 106; *see also* Dkt. 173.

[2]  Mosaic moved to exclude the late-disclosed appraisal. Dkt. 162.

Property Appraiser tax assessments and professional appraisal are all incorrect because they fail to account for Plaintiff's perception of exposure and stigma.  Plaintiff's three-part damages theory is: *(1) her home and surrounding neighborhood are exposed to certain airborne constituents in concentrations capable of adversely affecting human health; (2) the real estate market does not reflect knowledge of that exposure; and (3) if it did, her home would have no market value whatsoever*.

Mosaic moved *in limine* to exclude Plaintiff's proffered testimony.  Dkt. 171.  The proffered testimony is irrelevant and unfairly prejudicial.  Above all, however, it involves several layers of improper lay opinions.  Plaintiff's proffered testimony, at a minimum, requries:

- exposure science (*e.g.*, an exposure assessment requiring the positive identification the alleged constituents, and a fate and transport analysis of those constituents);

- toxicology (*e.g.*, an analysis of general causation and an analysis of specific causation, which requires a dose reconstruction of the specific constituents); and

- real estate market economics (*e.g.*, a real estate market evaluation, which requires an analysis of similarly contaminated and noncontaminated sites).

Ultimately, Plaintiff's opinion requires expert testimony to address the hypothesis: "How would the real estate market value Plaintiff's home under different health-related exposure conditions?"  Plaintiff, however, does not purport to be, and is not, an expert in any of the necessary disciplines.  She has no experience in exposure science, no experience in toxicology, and no experience in real estate markets or economics.  Having inherited her lifelong home from her parents, she has never purchased real property and, as of her

deposition last year, had never even attempted to sell or lease her home. Nor had she spoken to a real estate professional about the prospect of doing so. *See* Dkt. 102-2 at 72, 150-51.

Plaintiff's proposed testimony requires specialized knowledge she does not possess. Her testimony further relies on market assumptions extrapolated from transactions she cannot assess. Perhaps most importantly, her testimony is based on conjecture of how a hypothetical purchaser would react to a hypothetical disclosure involving a hypothetical sale of a home that is hypothetically exposed to hypothetically hazardous doses of constituents from a facility three miles from her home. And, of course, all of this is based on the fundamental assumption that health hazards exist, which this Court has already concluded is unreliable. *See* Dkts. 89 and 144.

Plaintiff's proffered testimony is inadmissible under Federal Rule of Evidence 701. "While lay witnesses may testify about their own immediate perceptions, testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron v. Sec'y of Florida Dept. of Children & Families*, 772 F.3d 1352, 1372 (11th Cir. 2014).

**III.   If the Court agrees that Plaintiff's proffered testimony is inadmissible, it can resolve this action without a trial.**

If the Court agrees that Plaintiff's proffered testimony is inadmissible, there is no need for a trial on her property damage claim. Plaintiff has no theory of damages than can be proven without the expert testimony that has already been excluded. *See* Dkt. 171 at 17-18. Accordingly, the Court has several options available for resolving this action without a trial, including the following:

First, a "partial summary judgment, dismissing some but not all of the claims, [is] an interlocutory order, and thus [is] subject to revision by the district court." *Bodine v. Fed.*

*Kemper Life Assur. Co.*, 912 F.2d 1373, 1376 (11th Cir. 1990). The Court can revisit a prior order for any reason, including to reconsider evidentiary issues that bear on summary judgment. *Cf. Oliver v. Orange County, Fla.*, 456 F. App'x 815, 819 (11th Cir. 2012) (revisiting a prior summary judgment order and granting summary judgment after exclusion of proffered expert testimony). Here, the Court could reconsider its June 24, 2016 order granting summary judgment in Mosaic's favor on all health-based personal injury claims and grant summary judgment in Mosaic's favor on the section 376.313 claim because (a) Plaintiff's proffered valuation testimony is inadmissible and therefore cannot create a genuine issue of material fact (*see* Fed. R. Civ. P. 56(c)(2)), (b) Plaintiff's proffered testimony is too speculative to create a genuine issue of material fact (*see Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) ("All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.")), or (c) this Court already excluded health-related claims when it excluded Dr. Mink's proffered testimony, which Plaintiff now seeks to try under the guise of a property damage claim (Dkt. 144). Revisiting the summary judgment order is particularly appropriate in this action as Plaintiff's health-based theories have already been addressed and rejected by this Court. Accordingly, revisiting the summary judgment and applying the Court's *Daubert* ruling to the remaining count as Plaintiff now proposes it should be proven would avoid a "costly, time-consuming, and unneeded" trial. *See In re Balderrama*, 473 B.R. 823, 826 (Bankr. M.D. Fla. 2012).

Second, and completely untethered to its prior summary judgment ruling, the Court could grant Mosaic's motion *in limine* directed to Plaintiff's proffered testimony and then

issue an order to show cause as to why summary judgment should not be granted in Mosaic's favor on the section 376.313 claim. *See* Fed. R. Civ. P. 56(f) (permitting the Court to grant summary judgment "on grounds not raised by a party" after giving "notice and a reasonable time to respond"). This procedure is appropriate where, as here, an admissibility issue could leave a plaintiff without any evidence in support of a necessary element of a claim. *Compare Petty v. Metro. Gov't of Nashville & Davidson County*, 687 F.3d 710, 721 (6th Cir. 2012) (affirming a district court's *sua sponte* grant of summary judgment after it excluded dispositive evidence as inadmissible), *with Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (reversing a district court's *sua sponte* grant of summary judgment after excluding dispositive evidence on a motion *in limine* for *non-evidentiary* reasons). In giving Plaintiff an opportunity to show cause as to why summary judgment should not be granted, this procedure also ensures that Plaintiff would have the protections of Rule 56. *Compare Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069–70 (3d Cir.1990) (reversing the grant of summary judgment where nonmoving party had no notice or opportunity to present evidence), *with Howard Johnson Int'l v. Cupola Enters.,* 117 F.App'x 820, 822–23 (3d Cir.2004) (distinguishing *Bradley* and upholding the grant of summary judgment on a motion *in limine* where the nonmovant had notice that the motion was dispositive).

Mosaic respectfully submits that employing one of these procedures in this case would "secure the just, speedy, and inexpensive determination" of this action by avoiding a costly and unnecessary trial based solely on Plaintiff's speculative, inadmissible testimony on health-related matters already addressed and rejected by this Court. *See* Fed. R. Civ. P. 1; Local Rule 1.01(b), and Amended Case Management and Scheduling Order (Dkt. 51 at 2).

## CONCLUSION

Plaintiff's intent to try a property damages claim for a purported diminution in the value of her home attributable to a health-related stigma not yet recognized by or incorporated into the market value of her home is unsupportable by the proffered testimony and is thus wholly improper. Accordingly, Mosaic respectfully requests that the Court exclude Plaintiff's stigma testimony and utilize one of the procedures discussed to avoid a "costly, time-consuming, and unneeded" trial.

Date: December 19, 2016

Respectfully submitted,

/s/ Christopher Torres
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Ryan T. Hopper (FBN 107347)
hopperr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Counsel for Mosaic Fertilizer, LLC*

## CERTIFICATE OF SERVICE

I certify that on December 19, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Christopher Torres
Attorney