# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RHONDA WILLIAMS, a single person,
                          Plaintiff,

v.

MOSAIC FERTILIZER, LLC, a Delaware          Case No. 8:14-cv-1748-T-35TGW
Corporation doing business in Florida
                          Defendant.
_____/

### Plaintiff Rhonda Williams' Response to Mosaic's Motion in Limine to Exclude Evidence of Stigma Damages

Plaintiff Rhonda Williams hereby files her response in opposition to Mosaic's Motion in Limine to Exclude Evidence of Stigma Damages ("Motion"), (Doc. 171) and states:

## I.    Summary of Grounds for Opposition

Mosaic's Motion is a waste of this Court's time and resources.   Mosaic's Motion puts forth three primary theories for exclusion: 1) that Ms. Williams' proffered valuation testimony is irrelevant; 2) that Ms. Williams' testimony is inadmissible lay opinion; and 3) that Ms. Williams' testimony should be excluded because any minimal probative value is substantially outweighed by its potential for unfair prejudice.[1]  Misstating rules of law and misapplying others, the Motion provides no valid factual or legal support for the requested relief.[2]  Accordingly, for the reasons demonstrated below, Mosaic's Motion must be denied.

---

[1] See Motion at pp. 9, 10, and 13.

[2] In addition, Mosaic's commentary on its prior oversight of Ms. Williams' claim, is inconsistent with the record.  See Motion at p. 6.  Mosaic has attacked Ms. Williams' claim arising under Section 376.313(3), Fla. Stat., in two dispositive motions, and has separately

## II.     Summary of Claim at Issue[3]

At issue for trial is Ms. Williams' single claim arising under Section 376.313(3),
Florida Statutes.  Under this statute, a plaintiff can recover "all damages resulting from a
discharge or other condition of pollution…"  A plaintiff need only prove the fact of a
discharge or other condition of pollution and that it has occurred.  See *Id.*, and *Curd v.
Mosaic Fertilizer, LLC,* 39 So. 3d 1216, 1222 (Fla. 2010).  Accordingly, there is no burden
on Ms. Williams to prove that Mosaic caused the pollution in question or that Mosaic acted
negligently.  See *Id.* at 1221-1222, relying on *Aramark Uniform & Career Apparel, Inc. v.
Easton,* 894 So. 2d 20, 24 (Fla. 2004).  See also, Section 376.303(3), Fla. Stat; and Doc. 144
at p. 38.  **Importantly,** nothing in the text of this statute requires a plaintiff to prove an
actual health risk; and while Mosaic generally hypothecates that this should be the standard,
it cites no law that supports its theory.[4]

On the issue of damages, the Florida Supreme Court in *Curd* looked to the definition
found at Section 376.031(5), Fla. Stat., which is defined damages in part as, "the documented
extent of any destruction to or loss of any real or personal property…"  Applying that

attacked her property damage disclosures.  See Mosaic's Motion to Dismiss the Second
Amended Complaint, (Doc. 27), and its Motion for Summary Judgment (Doc. 92), and
Motion to Compel (Doc. 26).

[3] Ms. Williams addressed at length the nature of the claim, including its elements and
requisite proof in her Trial Brief, (Doc. 176).  She restates some of the key points herein, but
otherwise incorporates by reference the discussion in the Trial Brief.

[4] See Motion at pp. 3 and 11.  Mosaic's reference to *McClain v. Metabolife Intern.,* 401 F. 3d
1233 (11th Cir. 2005), is to no avail.  *McClain* involved a Daubert challenge to an expert
toxicologist in an FDA, over-the-counter drug case, where the expert relied on a "draft" FDA
proposal that was withdrawn and never finalized because the GAO determined that the FDA
improperly relied on "adverse incident reports without sufficient scientific controls."  *Id.* At
1248.  **Section 376.313(3), Fla. Stat., was not at issue.**  Such a case has no bearing on the
elements of proof arising under Section 376.313(3), Fla. Stat.  (See discussion of *McClain* in
Plaintiff's Rule 60 Motion, Doc. 147).

definition, *Curd* found that the statute permitted a group of fishermen to state a claim against Mosaic due its discharge of pollution and hazardous substances from its phosphogypsum waste stack into the bay; <u>and</u> found that even though the fishermen did not own the damaged property, *e.g.*, the bay waters, they could state a claim to recover loss of income.[5]  Note, it is <u>not</u> the "documented" extent of the loss of income, *e.g.*, the economic damages, but the pollutive discharge that satisfies the property damage element.

Another controlling decision is the Eleventh Circuit Court of Appeals' opinion in *Adinolife v. United Techs. Corp.,* 768 F. 3d 1161 (11th Cir. Oct. 6, 2014).  That court made three key holdings.   First, the court rejected the argument that a plaintiff pursuing a claim under Sec. 376.313(3), Fla. Stat., had to plead and prove a minimum contamination in violation of a regulatory standard.[6]   Stated another way, not only is there no requirement that a plaintiff plead and prove some actual health risk, but a plaintiff does not even have to show that the contamination in any way violated regulatory standards.[7]  This holding completely undermines Mosaic's unsupported health-based theory.

Second, and related to the first holding, the *Adinolife* court looking to the definition of damages pronounced by *Curd,* held that:

> "the plaintiffs here have alleged that P&W contaminated their property, thereby causing their property values to decline. This alleged injury fits within the broad statutory definition of 'loss' or 'destruction,' even if the

---

[5] See *Id.* at 1222.  Contrast *Brottem v. Crescent Resources, LLC,* 2006 WL 1529327, at *5 (M.D. Fla. May 24, 2006), a pre-*Curd* decision where plaintiffs were seeking damages for personal injury stemming from a pollutive discharge.  In that case, the Court held that the plaintiffs would have to prove personal injury damages caused by the pollution.  *Id.* at *5. Post-*Curd* personal injury damages are no longer recoverable.

[6] See *Adinolife* at 1173-1174, rejecting the argument that *The St. Joe Co. v. Leslie,* 912 So. 2d 21 (Fla. 1st DCA 2005), controlled.

[7] See 376.313(3), Fla. Stat., and *Adinolife* at 1173-1175.

> plaintiffs have not alleged contamination above the regulatory standard."
> *Id.* at 1175.

In sum, the "damage" was the existence of the contamination. Last, concerning the "proximity" and "anticipated contamination" class plaintiffs, *Adinolife* reversed the district court's holding that actual contamination of the plaintiffs' property was necessary to state a claim to recover for stigma or diminution in value.  Rather, looking to *Curd*, which noted that "the statute does not specifically list the lack of property ownership as a defense," it found that a plaintiff looking to "recover for economic harm caused by pollution or contamination need not own property that is itself polluted or contaminated." *Adinolife* at 1177-1178. Accordingly, it follows that the "proximity" and "anticipated contamination" plaintiffs could recover stigma damages or damages for diminution in the value of their properties even though the documented contamination did not impact property the plaintiffs owned. *Id.* at 1176 – 1178. Comparably, Ms. Williams will submit evidence at trial of contamination at her real property, and in her surrounding neighborhood of Progress Village.  Both contamination "damage" theories are actionable and allow her to recover economic losses for  "stigma" or "diminution in the value."  Again, it is the documented existence of those contaminates that result in the recoverable economic losses of stigma damages and/or diminution in value. *Adinolife* at 1176-1178.

## III.    The Law on Stigma/Property Value Testimony

Under the broad definition of damages applicable to Ms. Williams' claim, recovery is not limited to cost of remediation, but includes all economic losses such as loss of income, stigma losses and diminution of value.  See *Adinolife* at 1175-1177, *Curd* at 1222, and *Clark v. Ashland, Inc.,* 2015 U.S. Dist. LEXIS 41643, *10 (M.D. Fla. March 31, 2015).   Here, Ms.

Williams submits that evidence will be presented at trial of the continual nature of the

pollution that is contaminating her property as well as the surrounding Progress Village

neighborhood.  This continual bombardment of contamination has permanently damaged her

property, thus, she is seeking the full market value – absent the damage – for her residence.[8]

And Ms. Williams will testify concerning the value of her home.

      Concerning Ms. Williams' testimony, the Federal Rules of Evidence govern the

admissibility of her testimony.[9]   To that point, Eleventh Circuit decisions, including the

binding precedent of the Fifth Circuit, as well as Florida law, hold that a property owner is

competent to testify regarding the value of his/her property, including the diminution thereof;

and expert testimony on this point is unnecessary.  Specifically, "[C]ases binding on this

court have held that 'an owner of property is competent to testify regarding its value…' even

if such testimony is 'self-serving and unsupported by other evidence.'" See *Neff v. Kehoe,*

708 F.2d 639, 644 (11th Cir. 1983).[10]   *Neff* and the cases it relies on are consistent with the

long-standing rule in Florida; that rule is based on a property owner's "presumed familiarity

---

[8] See *United States Steel Corp. v. Benefield,* 352 So. 2d 892, 895, and fn. 11 (Fla. 2nd DCA 1977)(Holding that in the case of permanent injury to property, the proper measure of damages is the <u>full market value of that property,</u> undamaged).

[9] See *LaCombe v. A-T-O,* 679 F.2d 431, fn.3 (11th Cir. 1982), and citation contained therein.

[10] Citing *Dietz v. Consolidated Oil & Gas,* 643 F.2d 1088, 1094 (5th Cir), *cert. denied,* 454 U.S. 968, 102 S. ct. 513, 70 L. ed., 2d 385 (1981); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F. 2d 690, 698 (5th Cir. 1978), *cert. denied.* 424 U.S. 943, 96 S. Ct. 1412, 47 L. Ed. 349. <u>Accord</u> *Justice v. Penzoil Co.,* 598 F. 2d 1339, 1344 (4th Cir), *cert. denied* 444 U.S. 967, 100 s. Ct. 457, 62 L. ed. 2d 380 (1979); and *J & H Auto trim v. Bellefonte Insurance Co.,* 677 F. 2d 1368, 1369 (11th Cir. 1982).  See also *LaCombe* at 435-436 (Holding the District Court improperly excluded the plaintiff's only property damage evidence, because as the owner of property he was qualified to testify).

with the characteristics of the property, knowledge or acquaintance with its uses and purposes, and experience in dealing with it."[11]

The *Dietz* court, cited by *Neff,* echoed the "general rule," "that an owner is competent to give his opinion on the value of property."[12]  The appellee in *Dietz*, however, argued that the property owner's testimony as to value was based on "speculative factors," and therefore inadmissible.[13]  Rejecting the appellee's argument, the *Dietz* court held that the record did not support that argument; noting that the property owner had testified that he had knowledge of other sales.[14]  Thus, the *Dietz* court held that the "opinion testimony was based on <u>more</u> than naked conjecture, and we think that the district court acted properly in admitting it."[15]  In comparison, Ms. Williams will testify as to the market value of her property, undamaged, which she believes is roughly $90,000.  That testimony is based on her personal knowledge.  Including, sales in her neighborhood, a neighborhood she has live in her entire life, as well as the county's property appraisal for tax purposes, and recent increases in her home's value.  Following the *Dietz* court, Ms. Williams' submits that her testimony concerning the value of her property is not "naked conjecture," <u>and</u> is admissible.  As to its weight and credibility, that is for the jury to decide.[16]  These binding opinions of the Eleventh Circuit are consistent

---

[11] See *Salvage and Surplus v. Weintraub,* 131So. 2d 515, 516 (Fla. 3rd DCA 1916), citing *Atlantic Coast Line R.Co. v. Sandlin,* 78 So. 667, 668 (Fla. 1918); see also *State v. Hawthorne,* 573 So. 2d 330, 333 n.6 (Fla. 1991).  Note, the *Salvage* court distinguished a property owner from a corporation; noting that an officer must be shown to have knowledge sufficient to qualify him, thus drawing a line between business related property damage and an individual owner's property damage.
[12] See *Dietz* at 1094, and citations contained therein.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] See *Id.,* and citations contained therein.

with Florida law, that a property owner is "generally qualified to testify as to the fair market value of his property."  See *State v. Hawthorne,* 573 So. 2d 330, 333 n.6 (Fla. 1991).[17]

It follows from these decisions that a property owner's testimony is admissible lay testimony under Rule 701, and absent special exceptions,[18] it does not invoke the requirements of expert testimony under Rule 702.[19]   Accordingly, Ms. Williams' testimony concerning her property value and damages is indisputably admissible lay opinion evidence under Rule 701, of the Federal Rules of Evidence.[20]   Importantly, no court has held that a plaintiff is required to put forth evidence of an "exposure assessment," "dose reconstruction," or a "market evaluation" to recover for stigma or diminution under Section 376.313(3), Fla. Stat.   Such a benchmark is contrary to the law and its far-reaching legislative intent.

---

[17] See also *Johnson v. Thor Motor Coach,* 2016 U.S. Dist. LEXIS 40193, *15 (M.D. Fla. March 28, 2016)(Applying Florida law).

[18] See *United States ex rel. TVA v. An Easement & Right-of-Way over 6.09 Acres,* 140 F. Supp. 3d 1218, 1242 (N.D. Ala. 2015)(Explaining that a witness may give a lay opinion on the value of his property, if based on "commonly understood considerations of worth flowing from his perceptions and knowledge of his property.");

[19] See *Neff* at 643-644.  See also *United States ex rel. TVA v. An Easement & Right-of-Way over 6.09 Acres,* 140 F. Supp. 3d 1218, 1242 (N.D. Ala. 2015)(Explaining that a witness may give a lay opinion on the value of his property, if based on "commonly understood considerations of worth flowing from his perceptions and knowledge of his property."); and *Fischer v. Ciba Specialty Chems. Corp.,* 2007 U.S. Dist. LEXIS 76174, 13-38 (S.D. Ala. 2007)(Holding that under the Federal Rules and state law, the plaintiffs' affidavits concerning the respective value of their properties, both prior to and after the contamination contained admissible lay evidence).  See also *Grand Acadian, Inc. v. Fluor Corp.,* 2010 U.S. Dist. LEXIS 29930, *8 (Relying on *Ciba,* explaining that a property owner's land value testimony is not subject to expert disclosure requirements), and *Johnson v. Thor Motor Coach, Inc.,* 2016 U.S. Dist. LEXIS 40193, *15, fn.2 ( M.D. Fla. March 28, 2016)(Applying <u>Florida law</u>, and finding that a property owner's opinion as to damages is "not considered expert testimony.")

[20] See fn. 19, *supra.*

**IV.    Mosaic's argument that Ms. Williams' testimony is irrelevant because it is designed to prove damages not recoverable under Section 376.313(3), Fla. Stat., is a nonsensical misstatement of the law.**

In a nutshell, Mosaic's first argument is based on its misstatement and misapplication of the statutory damages language to Ms. Williams' stigma testimony.  Motion at p. 9.   The Florida Supreme Court in *Curd* found it was the "documented" pollutive condition, *e.g.*, the spill in the bay, which satisfied the "damage" element of claim.  Here, the "documented" extent of the pollutive condition present at Ms. Williams' home and the Progress Village neighborhood is not challenged by Mosaic.  Rather, Mosaic erroneously argues that the "documented" requirement applies to Ms. Williams' economic damages. This misstatement and misapplication of the law dooms Mosaic's argument.

As discussed in Section II, *Curd* looked to the definition of damages in Section 376.031(5), Fla. Stat.   Applying that definitional standard, the *Curd* court inherently court found that the fishermen satisfied the "documented" destruction or loss to property via the allegations of the pollutants that spilled into the bay.  *Id.* At 1218-1222.  Accordingly, *Curd* held that under the statute the fishermen could recover loss of income even though they did not own the "property" that was "damaged" by the pollution.  See *Id.* at 1222.  *Adinolife,* the other controlling case on this point, likewise found that the plaintiffs' satisfied the "damages" pleading threshold by alleging contamination to their property, or contamination in the proximity of their property. *Id.at* 1175-1177.

Like the fishermen in *Curd,* and the plaintiffs in *Adinolife* Ms. Williams' will introduce substantial evidence of the "documented" pollutive discharge or condition, and thus, satisfy the "documented" element.   Separately, like the fishermen in *Curd* who sought

loss of income, and like the plaintiffs if *Adinolife* that sought damages for stigma or

diminution in value, Ms. Williams can recover her economic losses regardless of whether she

owned the property that was damaged by the pollution.

Failing to account for the controlling authority, Mosaic claims that Ms. Williams'

stigma or diminution testimony, is irrelevant because it is "undocumented." Motion at p. 10.

Mosaic's relevance argument is so off target that it unquestionably fails as a matter of law.[21]

Moreover, here, the record is replete with documented evidence of Mosaic's continuous

discharge of pollution, pollution that is not only present at Ms. Williams' home, but blankets

the entire Progress Village neighborhood. Ms. Williams' expert, Leslie Ungers, and Mosaic

company witnesses will present evidence of the documented extent of the pollution.[22]

Accordingly, Mosaic's Motion on this point must be denied.

### V.  Mosaic's second point, that Ms. Williams' testimony must be excluded as an inadmissible lay opinion misstates the issue and misapplies the law.

Mosaic's second argument evidences its failure to acknowledge the fundamentally

different procedural posture this case is now at. No longer is this a personal injury case.

Rather, this case is about a single strict liability count for property damage. And under

Florida law, it is the documented existence of the contaminants or pollution on the property

that is causing the economic losses. Nonetheless, Mosaic has concocted an argument that

Ms. Williams' Rule 701 testimony is inadmissible because it requires her to give improper

---

[21] Mosaic ignores this Court's Summary Judgment Order, Doc. 144, at p. 37, and authority that it relies on. See *Finkelstein v. Dep't of Transportation,* 656 So. 2d 921, 924 (Fla. 1995)(Finding that "contamination can stigmatize 'stigmatize' property.")
[22] Even this Court stated that "[I]n light of the history of Mosaic's emissions, it is certain that Plaintiff could demonstrate a prohibited discharge or other pollutive condition occurred at the Riverview plant." See Summary Judgment Order, Doc. 144, at p. 37.

lay opinion testimony about a "health-based" claim that requires "toxicological expertise." See Motion at p. 11. Ms. Williams does not dispute that she is offering lay testimony under Rule 701. She does contest Mosaic's egregious misstatement of the law; a misstatement that is wholly unsupported by any authority.

As discussed in Section II, under the controlling statutory scheme, and the cases interpreting it, Ms. Williams' is not obligated to prove that the level of pollution at her home or in her neighborhood constitute a health hazard. To the contrary, Ms. Williams' does not even have to prove that the levels exceed any regulatory standard, health-based or otherwise. See *Adinolife* at 1176-1178. Mosaic's argument that Ms. Williams has to show a "substance by substance exposure assessment" and "substance by substance general causation assessment," completely ignores every controlling authority and this Court's Summary Judgment Order (Doc. 144), and is frivolous at best. See Motion at pp. 11-12. The only case cited in support of Mosaic's concocted theory is *McClain,* which is wholly distinguishable and lacks any application to the property damage claim at issue.[23] Mosaic's argument also ignores the Florida and federal decisions that have been extremely hesitant to expand the affirmative defenses to a private cause of action under Section 376.313(3), Fla.Stat.[24]

Documentary evidence and testimony by Ms. Williams' expert Leslie Ungers, and Mosaic company witnesses, will demonstrate the existence of a pollutive condition, *e.g.*, the presence of contaminates at and around Ms. Williams' home and neighborhood, including,

---

[23] See fn. 4, *supra*
[24] See *Curd* at 1222; *Adinolife* at 1178; and Section 376.308, Fla. Stat.

the "criteria pollutants," sulfur dioxide, (SO2)[25], PM10,[26] both regulated under the Clean Air

Act's by National Ambient Air Quality Standard (NAAQS), the presence of hazardous air

pollutants (HAPs) (also known as "air toxics" and "hazardous substances"),[27] also regulated

by the Clean Air Act, and the presence of radioactive isotopes and daughter products of lead,

polonium, radium, thorium and uranium at higher levels than normal background levels.[28]

Separate from that testimony, a simple Google search of these contaminates turns up multiple

sites, including both the Florida Department of Environmental Protection's, (DEP) and the

U.S. Environmental Protection Agency's (EPA) discussing these contaminates.  For example,

SO2 and PM10 are reported as known lung irritants that are generally know to case a higher

incidence of respiratory disease, and PM10 can result in premature death of people with heart

or lung disease.[29]  Similarly, it is reported that HAPs are known "to cause cancer and other

serious health impacts."[30]  Concerning radionuclides, or radioactive isotopes, it is reported

that "chronic exposure to high levels of radium can result in an increased incidence of bone,

---

[25] See http://www.dep.state.fl.us/air/about_air/pollutants/sulfur.htm (last visited 12/18/16).

[26] See http://www.dep.state.fl.us/air/about_air/pollutants/particlepollution.htm (last visited 12/18/16).

[27] Including, arsenic, cadmium, chromium, lead, manganese, nickel, phosphorous, and zinc. See https://www.epa.gov/haps; https://www.epa.gov/haps/what-are-hazardous-air-pollutants; and https://www.epa.gov/haps/initial-list-hazardous-air-pollutants-modifications (last visited on December 18, 2016).

[28] Ungers' will testify, that these are present in the form of alpha particles and beta particles. Unlike radon, this is not a gas, but particles that can be inhaled.  See also https://www.epa.gov/radiation/radionuclide-basics-radium#tab-3 (last visited on December 19, 2016).

[29] See https://www.epa.gov/so2-pollution/sulfur-dioxide-basics#effects (last visited on December 18, 2016), and http://www.dep.state.fl.us/air/about_air/pollutants/sulfur.htm (last visited on December 18, 2016); and https://www.epa.gov/pm-pollution/health-and-environmental-effects-particulate-matter-pm (last visited on December 18, 2016).

[30] See https://www.epa.gov/haps (last visited on December 18, 2016).

liver, lung or breast cancer."   Ms. Williams does not have to hold any technical, scientific or specialized knowledge or "toxicological expertise," to understand that a prospective buyer might be afraid or apprehensive about potential risks associated with these contaminates. It is the very presence of these contaminates, not proof that one will cause a particular adverse health effect to a potential buyer, that creates actionable stigma damages and/or diminution in value. *Adinolife* at 1176-1178.  Accordingly, Mosaic's argument fails as a matter of law.

Next, Mosaic erroneously contends that Ms. Williams' testimony regarding the value of her home, requires "real-estate appraisal expertise."   In support of its theory Mosaic relies on authority that is wholly inapplicable to the case at hand, and ignores the long-standing rule concerning a "property owner's" ability to testify concerning the value and diminution thereof of.[31]   The first case cited by Mosaic is *Port Largo Club, Inc. v. Warren* 476 So. 2d 1330, 1334 (Fla. 3rd DCA 1985).  *Port Largo*, is a bad-faith breach of contract case, for loss of bargain damages, related to the potential acquisition of a time-share.  The glaringly obvious error by Mosaic in relying on this case is that *Port Largo* does not concern a property owner testifying about the value of his/her property.  In fact, the *Port Largo* plaintiffs never even owned "property", they had contracts to purchase "time-shares" in condominiums that were under construction.[32] Thus, the rule, that a property owner is "generally qualified to testify as to the fair market value of his property,"[33] was never at issue.  Accordingly, the court's holding that expert testimony as to the value of the time-share units at the time of the breach of contract was necessary, is wholly inapplicable here.

---

[31] See fns. 9 – 17, *supra.*
[32] *Id*. at 1332.
[33] See *State v. Hawthorne,* 573 So. 2d 330, 333 n.6 (Fla. 1991).

The next case, *Cuyahoga Metro. Housing Authority v. U.S.,* 60 Fed. Cl. 481, 483 (2004) is equally unpersuasive and misapplied.  In this Federal Claims case, the issue was whether an employee of HUD, the Director of Multifamily Program Center in Cleveland, was qualified to testify concerning whether the "proposed adjusted rent sought by the plaintiff exceeds the amounts needed to operate comparable projects."[34]  *Cuyahoga* is clearly not a case of a property owner testifying concerning the value of her property.  Rather, it is a case that involves complex questions of rents and operational costs, related to certain low-income housing developments.  Accordingly, the question in *Cuyahoga* was whether the employee's testimony was proper under Rule 701 or Rule 702.[35]  The court found the employee's testimony was not based on "first-hand personal knowledge," required by Rule 701, but was based on "scientific, technical or other specialized knowledge within the scope of Rule 702," because it did not result from a process or reasoning "familiar in everyday life."[36]  Ms. Williams submits that this case has no application to her familiarity with or testimony about the value of her home.[37]

After slapping together a concocted theory built on cases and commentary that fall well outside the scope of the applicable rule of law, Mosaic ends with a cite from *Lebron v. Sec'y of the Fla. Dep't of Children & Families,* 772 F. 3d 1352, 1372 (11th Cir. 2014). *Lebron* concerned warrantless, suspicionless urinalysis drug testing; and in particular, whether lay witnesses, two employees of DCF and one employee of a non-profit that helped persons receiving public assistance to find work, could testify concerning the links between

---

[34] *Id.* at 481.
[35] *Id.* at 482-483.
[36] *Id.*
[37] See fns. 10 - 19, *supra.*

"drug use and poverty or employability," and self-identified substance abuse/drug-users.[38]

*Lebron* held that the district court did not abuse its discretion in rejecting the lay witness testimony, because it was really "expert in lay witness clothing."[39]  And followed with the cite relied on by Mosaic that states in full, "[W]hile lay witnesses may testify about their own immediate perceptions, testimony that blurs into supposition and extrapolation crossing the line into expertise."[40]   *Lebron* unquestionably has nothing to do with a property owner's qualifications to testify about his/her own property. See Section III, and cases cited therein. In fact, *Lebron* could not be further from the applicable and controlling rule of law that clearly allows Ms. Williams to testify to her property value, even if, as the *Neff* court said, "such testimony is 'self-serving and unsupported by other evidence.'" See *Neff v. Kehoe,* 708 F.2d 639, 644 (11th Cir. 1983).   Moreover, the controlling authority has held that a property owner's testimony does not constitute "expert" testimony.[41]   For these reasons, Mosaic's second argument fails as a matter of law.

**VI.    Mosaic's Third Point, that Ms. Williams' Testimony should be Excluded because any minimal probative value is substantially outweighed by its potential for unfair prejudice, is based on misstated and misapplied law**.

The crux of Mosaic's argument is that Ms. Williams' testimony relies on an allegation of contamination, which in and of itself carries a "very real prospect of unfair prejudice."  See Motion at p. 13.  Perhaps Mosaic has not noticed, but the cause of action before this Court arises under Florida's Pollutant Discharge Prevention and Removal Act,

---

[38] *Id.* at 1371.
[39] *Id.* at 1372.
[40] *Id.* at 1372
[41] See fn. 19, *supra.*

Sections 376.30-376.319, Fla. Stat., which creates a private cause of action[42] for a discharge or release of contaminates.  As such, contamination is not only highly relevant, but evidence of its presence is an element of the claim and properly before the jury.  See discussion in Section II.

In support of its contention, Mosaic primarily relies on an eminent domain case, and one sweeping statement with virtually no analysis, that "courts consistently hold that valuation testimony 'based solely on speculative factors' or 'naked-conjecture' has 'minimal probative value.'"  See Motion at p. 14.   To begin, the eminent domain case, *Finkelstein v. Dep't. of Transportation*, 656 So. 2d 921 (Fla. 1995) is to no avail.  Mosaic cites to *Finkelstein* to support its prejudice argument and for the proposition that one cannot surmise that contamination results in a decrease of value.  Motion at p. 14.  A closer look at *Finkelstein* is instructive.  As part of a condemnation proceeding, the Department of Transportation was looking to pay reduced market value.[43]  Specifically presented before the court was the DOT's argument that it should have been able to present evidence at the eminent domain valuation trial as to the property's contamination; the court agreed that it was relevant to the value of the property on the date of taking.[44]  It also found that the burden of proof as to the decreased value was on the condemning authority.[45]  Further, finding that contamination stigmatizes property, the court held that it was proper for an expert to consider

---

[42] See Section 376.313(3), Fla. Stat.
[43] *Finkelstein.* at 922 – 925.
[44] *Id.* at 922
[45] *Id.* at 925

the contamination as part of its evaluation,[46] but with a caveat, that because contamination is prejudicial, it could not be the feature of the eminent domain valuation trial.[47]

In stark contrast, this is not an eminent domain proceeding, but a case arising out of Mosaic's contamination.   And yes, contamination stigmatizes property.   But unlike *Finkelstein*, contamination is the front and center issue in this action that must be proven. See Section II, and Section 376.313(3), Fla. Stat.   In addition, *Finkelstein* did not involve the testimony of a property owner; to the contrary, it concerned evidence by a condemning authority's expert.   Moreover, the attorney for the DOT did not even know what facts its expert was basing its valuation opinion on.[48]   At bottom, Mosaic's reliance on this case wholly confuses the issue; and its reliance evidences a complete failure on Mosaic's part to understand the statute being tried or the rule of law concerning a property owner's testimony.

Separately, Mosaic cites to the *Dietz* opinion; but as discussed in Section III, the case fully supports the admissibility of Ms. Williams' testimony.  Last, Mosaic cites to *Sun Bank/N. Fla. Nat'l Ass'n. v. Edmunds*, 624 So. 2d 753.  *Sun Bank* is wholly inapplicable; it concerned testimony in a deficiency judgment proceeding as to the complex business valuation of a Utility. [49]  Noting the general rule, that an owner is presumed to be familiar with the characteristics of the property, unless proven otherwise, the Court found that as to the details of the Utility business, including its net operating loss, the day-to-day management, the financial aspects of the business, the Public Service Commission's regulations and rate calculations, the owner lacked sufficient familiarity to testify to its

---

[46] *Id.* at 923, and citations therein.
[47] *Id.* at 925
[48] *Id.* at 925.
[49]  *Sun Bank* at 756-757.

value.[50]  Ms. Williams' submits that *SunBank,* a case involving testimony of a complex

business valuation in a highly regulated industry, by an owner who had no active role in the

day-to-day affairs of the business lacks relevance here.  In sum, Mosaic's third point fails as

a matter of law.

## VII.    Mosaic's Argument that the General Rule Does Not Apply to Ms. Williams is Contrary to the Law.

In a nutshell, Mosaic's argument is that Ms. Williams' property value testimony is

based on something other than her familiarity with the property.  See Motion at p. 15.  As to

this point, Mosaic spirals through a litany of inapplicable and distinguishable cases, similar

to *SunBank*, to support its bald, unsupported assertion.[51]  Overall, however, Mosaic's Motion

utterly fails to explain why or identify with any level of specificity what Ms. Williams'

testimony is presumably based on, and how that testimony fits into an exception to the

---

[50] *Id.*

[51] The following cases cited by Mosaic are all highly distinguishable, inapplicable and examples of Mosaic's misstatements and misapplication of the law:  *Trailer Ranch v. Levine,* 523 So. 2d 629, 631 (Fla. 4th DCA 1988)(At issue was the loss of business value in a failed joint venture.  The business was a subchapter S corporation.  The business owners did not know how to calculate the company's profits and wrongly relied on tax and other financial statements that predated the loss by 2-years);  *Levinson v. Landsafe Appraisal Servs.*, 558 Fed. Appx. 942, 944 (11th Cir. 2014)(This was fraud case challenging an appraiser's valuation arguing it was intentionally wrong and inflated the price paid by the owners.  At issue was an affidavit that summarily said the appraisal was overvalued, without any allegation of the true value.  Thus, it was insufficient to create an issue of material fact as to fraudulent representation); *B&B Tree Serv. V. Tampa Crane & Body, Inc.,* 111 So. 3d 976 (Fla. 2nd DCA 2013)(A breach of contract case related to the defendant's failure to properly install a hookloader system to a truck.  The owner never looked into renting the truck, what others rented similar trucks for, how much he could earn/charge for renting, so his testimony on what he thought he could rent for was speculative); *Craig v. Craig,* 982 So. 2d 724 (Fla. 1st DCA 2008)(This case involved equitable distribution post-divorce and an improper valuation placed on property; *Craig* held the lower court erred in allowing the husband to hypothesize about the property's net value at some future date, if transformed, subdivided into marketable lots and developed).

property owner's general rule.  Rather, Mosaic in one-line purports that Ms. Williams'

testimony is going to be based on "naked conjecture and expertise that Plaintiff does not

possess."  See Motion at p. 17. Presumably Mosaic's contention arises from its inaccurate

and contorted theory that Ms. Williams is obliged to provide some health-based,

toxicological exposure-assessment for which Mosaic cites no legal authority; but that is

simply not the law.  See Sections II, III, and V.

Citing to *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690 (5th Cir. 1975), Mosaic

agrees with the general rule regarding a property owner's qualification to offer his/her

opinion as to value.[52]   But absent any analysis, Mosaic contends that Ms. Williams'

testimony falls into the exception to the rule.  *Kestenbaum* is instructive.  Citing to *Klapmeier*

*v. Telecheck International, Inc.,* 482 F. 2d 247 (8th Cir. 1973), *Kestenbaum* explains that in

certain instances where owner's value testimony is "**solely on speculative factors**,"

[emphasis added], it may be of such minimal probative force to warrant the judge's refusal.

Ms. Williams does not disagree with this rule of law, but fails to see how this excludes her

property value testimony, and Mosaic has failed to submit any argument or evidence that

would prove that Ms. Williams' anticipated testimony is based "solely on speculative

factors."

---

[52] *Kestenbaum,* an anti-trust case included guidance to the district court in its dicta for
calculating the "good will" value of the distributorship.  The Court explained the rule that an
owner is competent to give his opinion on the value of his property, subject to cross-
examination or independent evidence refuting the estimate. *Id.* at 698-699.

## VIII.   Last, Mosaic's argument under Rule 37(c)(1), is based on speculation and is wholly lacking in authority.[53]

Mosaic here contends that Ms. Williams should be excluded from presenting diminution evidence from any source other than her own testimony.  Motion at 17.  The blanket argument is wholly lacking in specificity and support.   Contrary to Mosaic's assertion, the record is replete with both documentary and testimonial evidence that is relevant to the value of Ms. Williams' property.  This includes, but is not limited to, evidence of the contamination, evidence of Mosaic's lack of notice to the Progress Village community of its contamination, and evidence of tax appraisals of Ms. Williams' property.   While not articulated, perhaps Mosaic wants to exclude Ms. Williams' opinion as to the value of her home, an opinion based on decades of living there.  In particular, Mosaic presumably wants to exclude testimony concerning her personal knowledge of sales in her neighborhood, including on her block, that have occurred in the last several months.   These recent sales are relevant to the present value of her property, absent the stigma damage.  Nor should other lay witnesses be excluded from testifying to their personal knowledge.

Despite all her above presumptions, Ms. Williams is completely in the dark as to what Mosaic is trying to exclude under Rule 37.   But one thing is crystal clear, entry of a blanket order, absent 'solely speculative factors,' excluding evidence on an essential element of this case would result in prejudicial error.[54]  Ms. Williams' contention has been and remains that the contamination that exists at her home and the greater Progress Village neighborhood has

---

[53] To the extent this Motion improperly raises arguments previously raised in Doc. 162, Ms. Wiliams refers this Court her Response to Mosaic's Motion to Exclude Untimely Expert, and Damages and Disclosure, Doc. 164, at pp. 3-5.

[54] See *LaCombe* 679 F.2d at 436.

resulted in permanent damage to her property; and according to Mosaic's own authority, that

contamination has resulted in stigmatization.[55]

      **WHEREFORE,** Ms. Williams seeks an Order Denying Mosaic's Motion *In Limine*

To Exclude Evidence of Stigma Damages, and such further relief this Court deems proper.

Dated December 28, 2016.

| | |
|---|---|
| _____/s/\_\_*Laureen Galeoto*\_\_\_\_ | Mary Ellen Hogan |
| *Laureen Galeoto* | FBN 0065372 |
| Laureen Galeoto, Trial Counsel | The Green Counselor, PLLC |
| FBN 0194107 | 100 S. Ashley Drive, Ste. 600 |
| Law Office of Laureen Galeoto, PLLC | Tampa, FL 33602 |
| 100 S. Ashley Drive, Ste. 600 | P. 813.964.6515 |
| Tampa, FL 33602 | Maryellen@thegreencounselor.com |
| P. 813.397.3800 | |
| Laureen@laureenlaw.com | |

William P. Walker, Jr.
Walker Morgan, LLC
135 E. Main Street
Lexington, SC 29072
P. 803.359.6194
bw@walkermorgan.com


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 28, 2016, that the Plaintiff's Response to
Mosaic's Motion to Exclude Stigma Damages was electronically filed and served via this
Court's CM ECF on counsel for Mosaic Fertilizer, Inc.

\_\_\_\_\_/S/\_\_Laureen Galeoto\_\_\_\_
Laureen Galeoto
Counsel for Ms. Williams

---

[55] See *Finkelstein* at 924.